# EXHIBIT B

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

APR - 8 2008

Stephan Harris, Clerk
Cheyenne

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| | Case No. 06 - CV - 184 - J |
| vs. | |
| MARVIN M. BRANDT REVOCABLE TRUST, and MARVIN M. BRANDT, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on cross motions for summary judgment. The Court, having carefully reviewed the motions and the materials filed in support thereof and opposition thereto, and being fully advised in the premises, **FINDS** that plaintiff's Motions for Summary Judgment on cross claims should be **GRANTED** and defendant's Motion for Summary Judgment should be **DENIED** for the reasons stated below:

1

### BACKGROUND OF CASE

Plaintiff United States (the "Government") brings this action seeking a judicial declaration of abandonment of approximately 66 miles of railroad right-of-way running from Laramie, Wyoming to the Colorado border by way of Fox Park, Wyoming. Upon abandonment, the United States also seeks to quiet title to the abandoned railroad right-of-way in the Government. Defendant, Marvin M. Brandt Revocable Trust and Marvin Brandt, trustee, (collectively "the Trust") assert that the Trust has a vested interest in the railroad right-of-way and opposes the Government's claim. The Trust also seeks to have the title to the railroad right-of-way quieted in its favor. Pursuant to Fed. R. Civ. P. 13(b), the Trust also filed a counterclaim seeking to quiet title to a right-of-way easement for Forest Service Road ("FSR") 512. The Trust claims the easement has been terminated by the United States Forest Service. The road at issue also runs through land owned by the Trust in Fox Park, Wyoming. The Government disputes the road easement has been terminated and alleges that the express conditions of abandonment contained in the original deed have not been met. The Government filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56(b) on the railroad right-of-way and FSR issues and the Trust reciprocated in kind.

2

## PROCEDURAL BACKGROUND

The Government filed its complaint with this Court in July of 2006. It seeks a declaratory judgment that the Wyoming-Colorado ("WYCO") Railroad Company, Inc. right-of-way, lying within the Medicine Bow National Forest in the State of Wyoming, had been abandoned. The Government also initiated this action against twenty-six separate parties who may have claimed an interest in the right-of-way. On August 8, 2006, the Trust filed a counterclaim seeking to quiet title to the railroad right-of-way in the Trust. Also on August 8, 2006, the Trust filed a second counterclaim against the Government seeking to quiet title to a 0.2 mile section of FSR 512. On October 1, 2007, the Trust amended its second counterclaim regarding the 0.2 mile section of FSR 512 to include the entirety of FSR 512 that crosses the Trust's property (approximately 0.7 miles).

On October 10, 2007 the Government filed a motion for summary judgment and a brief in support of its motion against the Trust. Also on October 10, 2007, the Trust filed a motion for and brief in support of summary judgment on its railroad right-of-way counterclaim and its FSR 512 counterclaim against the Government. On November 13, 2007 the Trust filed its "Brief In Opposition" to the Government's motion for summary judgment disputing the Government's interest in the railroad right-of-way and seeking to have all right, title, and interest in the railroad right-of-way quieted in the trust. Further, the Trust argues

3

that to quiet title in the Government would constitute a Fifth Amendment taking requiring just compensation. That same day, the Government filed its response to the Trust's motion for summary judgment on the railroad right-of-way. Since the parties' last motions were filed, all parties but the Trust have settled with the Government. Thus, the current action between the Government and the Trust is the only matter remaining for this Court to decide.

## APPLICABLE FACTS AND PARTIES' ARGUMENTS ON RAILROAD RIGHT-OF-WAY REVERSION
## FACTUAL BACKGROUND

### HISTORY OF THE RAILROAD RIGHT-OF-WAY

In 1908, the Laramie, Hahn's Peak and Pacific Railroad Company ("LHPPR") was granted a right-of-way (ROW) for railroad purposes through the public lands of the United States under the General Railroad Right-of-Way Act of 1875, 43 U.S.C §§ 934-030 ("1875 Act"). The grant was for a two-hundred foot wide ROW, approximately 66 miles long. LHPPR completed construction of the railroad from Laramie to Colorado in 1911. Later, the Trust's predecessor in interest acquired Tract 37, Township 13 North, Range 78 West 6th P.M. by a patent issued from the United States under 16 U.S.C. § 485 for 83.32 acres on February 18, 1976. In November 1987, WYCO became the latest successor to the LHPPR Company.

4

On May 15, 2001, WYCO filed a Notice of Intent to Abandon Rail Service with the Surface Transportation Board ("STB"). The STB approved the abandonment petition subject to satisfaction of certain abandonment conditions. The STB removed the last condition thus effecting its approval of the abandonment of the rail line on December 31, 2003. On January 15, 2004, WYCO notified the Secretary of the STB that it had completed its abandonment of the rail line.

RELEVANT STATUTES

In 1922, Congress passed the Abandoned Railroad Right-of-Way Act, codified at 43 U.S.C. § 912.[1] Section 912 granted to landowners adjacent to previous railroad right-of-way

---

[1] 43 U.S.C. § 912 (1922). Section 912 states in relevant part:

> Whenever public lands of the United States have been or may be granted to any railroad company for use as a right of way for its railroad . . . and use or occupancy of said lands for such purposes has ceased, or shall hereafter cease, whether by forfeiture or abandonment by said railroad company *declared or decreed by a court of competent jurisdiction or by Act of Congress*, then and thereupon all right, title, and interest, and estate of the United States, except such part thereof as may be embraced in a public highway legally established within one year after the date of said decree or forfeiture or abandonment be transferred and vested in any person, firm, or corporation, assigns, or successors in title and interest to whom or to which title of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal subdivision or subdivisions *traversed or occupied* by such railroad or railroad structures.

*Id.* (emphasis added).

5

grants any right and title that the United States would have retained upon abandonment. Congress later modified § 912 by passing the National Trails System Improvement Act of 1988, codified at 16 U.S.C. §1248(c).[2]  By modifying § 912, the United States retained any and all rights and interests in abandoned railroad rights-of-way that would have been otherwise granted to adjacent landowners under § 912 so long as those rights-of-way had not been utilized as a public highway within one year of abandonment.  Section 912 requires a judicial decree or Act of Congress to relinquish the claim the Government retained upon abandonment.  As of the date of this memorandum no judicial decree of abandonment of the railroad ROW has occurred.

---

[2] 16 U.S.C. § 1248(c).  Section 1248(c) states:

> Abandoned railroad grants; retention of rights: Commencing upon October 4, 1988, any and all right, title, interest, and estate of the United States in all rights-of-way of the type described in section 912 of Title 43, shall remain in the United States upon the abandonment or forfeiture of such rights-of-way, or portions thereof, except to the extent that any such right-of-way, or portion thereof, is embraced within a public highway no later than one year after a determination of abandonment or forfeiture, as provided under such section.

*Id.*

6

### THE GOVERNMENT'S ARGUMENTS

The Government contends that Tenth Circuit case law supports its position that, upon abandonment, all right, title, and interest in the railroad ROW reverts to the Government. The Government relies on *Marshall v. Chi. & Nw. Transp. Co.*, 31 F.3d 1028 (10th Cir. 1994); *Phillips Co. v. Denv. & Rio Grande W. RR Co.*, 97 F.3d 1375 (10th Cir. 1996); and *Nicodemus v. Union Pac. R.R.*, 440 F.3d 1227 (10th Cir. 2006).

In *Marshall*, the owners and successors in interest of property adjacent to an abandoned railroad ROW in Natrona County, Wyoming, brought an action to quiet title against Chicago and Northwestern Transportation Company ("CNWT"). *Marshall v. Chi. & Nw. Transp. Co.*, 31 F.3d 1028 (10th Cir. 1994). In 1980, CNWT assigned a 60-foot-wide strip of its 200-foot-wide ROW to an unaffiliated partnership. *Id.* at 1028. The partnership then assigned its interest to Casper Creek Development, Inc. *Id.* CNWT filed an application for abandonment of the ROW with Interstate Commerce Commission, which was approved on November 30, 1988. *Id.* CNWT discontinued its use of the ROW on January 15, 1989. *Id.* In June of 1990, CNWT conveyed the remaining 140 feet width of the ROW to Forgey Ranch Company. *Id.* The company completed track removal near the end of August, 1990. *Id.*

7

In *Marshall*, the Tenth Circuit affirmed this Court's holding that 43 U.S.C. § 912

applies to both pre-1871 and post-1871 grants for railroad rights-of-way.[3] The Tenth Circuit

held in favor of the owners of the adjacent land. The Court reasoned that:

> [Section] 912 provides in essence that when public lands of the United States
> have been granted to any railroad company for use as a right-of-way, and the
> railroad company thereafter ceases to use and occupy the right of way by, for
> example, abandonment, as decreed by a court of competent jurisdiction, then
> all right, title, interest, and estate in the right of way shall be transferred to and
> vested in anyone to whom or to which title of the United States may have been
> granted by way of patent to convey the whole of the legal subdivision
> previously traversed by the right of way.

*Marshall*, 31 F.3d at 1031. The Tenth Circuit also stated that:

> [Section 912] is designed to cover the situation where the United States grants
> a railroad company a right of way over public lands and thereafter conveys .
> . . to another the whole of the legal subdivision[s] . . . traversed or occupied by
> such railroad. [Which] appears to cover the instant case.

*Marshall*, 31 F.3d at 1032 (internal citations omitted). Finally, the Tenth Circuit

stated: "In enacting these statutes, Congress clearly felt that it had some retained interest in

railroad rights-of-way." *Marshall*, 31 F.3d at 1032 (citing *State of Idaho v. Or. Shortline

R.R.*, 617 F. Supp. 207 (D. Idaho 1985). Thus the Tenth Circuit held that § 912 applied to

rights-of-way like those at issue in *Marshall* and that when those rights-of-way are

abandoned, the Government conveys its *retained* interest to the adjacent landowners. *See id.*

---

[3] *See supra* note 1.

8

The Government contends the holding in *Marshall* is significant in the instant case because the Tenth Circuit held that under § 912, the United States retained an interest in abandoned 1875 Act railroad rights-of-ways. The instant case concerns a grant for a railroad ROW made under the 1875 Act. Therefore, under the Tenth Circuit's interpretation of § 912 in *Marshall*, the United States retained an interest in the WYCO ROW.

The Government cites *Phillips* for the proposition that under § 1248(c) any right to an abandoned railroad ROW remains in the United States. *Phillips Co. v. Denv. & Rio Grande W. RR Co.*, 97 F.3d 1375 (10th Cir. 1996). In *Phillips*, the owner of land adjacent to a railroad ROW sought a retroactive determination of abandonment and to quiet title to the ROW pursuant to 43 U.S.C. § 912 in order to avoid the effects of 16 U.S.C. §1248(c). *Id.* The court stated that before § 912 can be given effect it must receive authorization from the Interstate Commerce Commission ("ICC") to abandon the railroad ROW. *Id.* at 1377. The ICC, the agency responsible for approving the abandonment, stated that it had no authority to declare the railroad ROW abandoned retroactively. *Id.* The Tenth Circuit held that it was compelled to defer to the agency. *Id.* (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). The Court also held that once § 1248(c) had been enacted, the reversionary interest was held by the United States and not adjacent landowners. *Id.* at 1376 n. 4.

9

The Government contends *Phillips* is relevant to the instant case because the plaintiff sought a retroactive declaration of abandonment of the rights-of-way in order to circumvent the grasp of 16 U.S.C. § 1248(c). The Tenth Circuit did not address what role § 1248(c) plays in the final analysis of the case. However, based on the language the Court employed, any right an adjacent landowner received under § 912 was removed by Congress's passage of § 1248(c) in 1988. The Government's reasoning seems in accord with this interpretation.

The Government points to the Tenth Circuit's decision in *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227 (10th Cir. 2006). In *Nicodemus*, landowners sued Union Pacific Corp. for trespass and unjust enrichment arising from the railroad's grant of subsurface easements to telecommunications providers for the right to install fiber-optic cables in its railroad ROW. *Nicodemus*, 440 F.3d 1227. The District Court of Wyoming dismissed the action for lack of federal question jurisdiction. *Nicodemus v. Union Pacific Corp.*, 204 F.R.D. 479, 493 (D.Wyo. 2001) (holding the interpretation of federal land grants to railroads is not a substantial question of federal law so as to afford federal question jurisdiction over state law claims). The Tenth Circuit disagreed with this Court's decision. *Nicodemus*, 440 F.3d at 1229 (10th Cir. 2006). It held that the interpretation of federal land grants involved a substantial federal issue deserving of the federal forum for resolving the issue. *Id*.

The Tenth Circuit stated that under 43 U.S.C. § 912:

> [L]and given by the United States for use as a railroad right-of-way in which
> the United States retained a right of reverter under *N. Pac. R.R. v. Townsend,*
> 190 U.S. 267 (1903) must be turned into a public highway within one year of
> . . . abandonment or be given to the adjacent land owners.

*Nicodemus*, 440 F.3d at 1236. The *Nicodemus* court further explained that:

> Subsequently Congress enacted the National Trails System Improvement Act
> of 1988, 16 U.S.C. § 1248(c), under which those lands not converted to public
> highways within one year of abandonment revert back to the United States, not
> adjacent private landowners.

*Id.* Thus, that court held that "the United States has a reversionary interest in the lands

when no longer used for the designated purposes . . . [t]hus the government has a direct

interest in the determination of property rights granted to the railroad." *Id.* The Government

relies on the holding in *Nicodemus* to support its claim of a reversionary interest in the

railroad ROW at dispute in the instant case.

Finally, the Government denies the Trust's assertion that to quiet title in the

Government constitutes a Fifth Amendment taking requiring just compensation. The thrust

of the Government's argument seems to be that (1) under *Marshall* and *Phillips,* the United

States retained a reversionary interest to all railroad rights-of-way; (2) under § 912, if the

ROW was abandoned by the railroad then the United States conveyed its reversion to the

adjacent landowner; (3) section 912 as modified by § 1248(c), retains the reversion held by

11

the United States under § 912 and does not convey it to adjacent landowners; (4) following

the reasoning of the Tenth Circuit, the United States never relinquished its reversion prior

to abandonment, the railroad ROW never vested in the adjacent landowner, and having never

vested, retention of the reverter cannot be viewed as a taking, i.e., you cannot lose what you

never possessed. Retaining this reversionary interest, the Government asks this Court to

decree the ROW abandoned and to quiet title in the ROW in the Government.


### THE TRUST'S ARGUMENTS

The Trust argues that the Government did not retain a reverter in rights-of-way

granted under the Act of 1875. Citing recent federal decisions in support of its argument, the

Trust contends that this Court should hold consistent with these decisions and grant summary

judgment in favor of the Trust. The Trust also offers its line of decisions to support its

argument that to quiet title in the Government constitutes a taking requiring just

compensation.

The Trust argues that WYCO received only an easement in the Act of 1875. The

Trust claims that the Patent reserved a reversion to the owner of the surrounding land and its

predecessor-in-interest and reserved nothing for the United States. Citing *Hash v. United

States*, 403 F.3d 1308 (Fed. Cir. 2005), the Trust argues that 43 U.S.C. § 912:

require[d] the United States to convey any rights it may have, to the patentee of the land traversed by the abandoned ROW; it does not say what rights the United States had after the land patent was granted. Indeed, if the United States did have residual rights despite the patented land grant, then the statute, [43 U.S.C. § 912], required that the rights be conveyed to the private owner.

*Hash*, 403 F.3d at 1318. In *Hash*, landowners brought a class action against the United States challenging the conversion of an abandoned railroad ROW. The district court held in favor of the United States and the plaintiffs appealed. The plaintiffs argued on appeal that the ROW across their land was simply an easement. When the railroad abandoned the ROW the easement would have reverted to them but for the 1983 provisions of the National Trails System Act.

Citing to the United States Supreme Court's reasoning in *Presault v. I.C.C.*, the Federal Circuit Court of Appeals concluded that the land at issue was owned in fee by the landowners, subject to a railway easement.[4] Upon the railway's abandonment of its ROW,

---

[4] *Preseault v. ICC*, 494 U.S. 1,4-5 (1990) (holding that *if* abandonment of railway *and* application of the Trails Act effects a taking when the easement would otherwise revert to the owner of the servient estate, the landowner may sue for compensation under the Tucker Act). *See also* 28 U.S.C. § 1491(a)(1) (1982). The Tucker Act provides that the United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive

13

the burdened estate owners were "disencumbered of the railway easement, and upon conversion of this land to a public trail, these owners' property interests were taken for public use, in accordance with the principles set forth in the *Preseault* cases." *Hash*, 403 F.3d at 1318. The *Hash* court remanded the case to the district court to determine just compensation on the taking. *Id.*

The Trust also points to *Beres v. United States*, 64 Fed.Cl. 403 (2005), decided shortly after *Hash*. In *Beres*, the plaintiffs were fee owners of land that was patented subject to a railroad ROW. *Beres*, 64 Fed.Cl. at 403 (2005). The ROW at issue was transferred pursuant to § 1247(d) to a land conservancy. *Id.* at 407. Looking to legislative history, statutory construction, precedent, and the patent at issue, the *Beres* court held inapposite to this Court and the Tenth Circuit.[5] In essence, the *Beres* court held that when Congress passed 43 U.S.C. § 912 it did so to confirm the absence of any reversionary interest in the United States and that the land, in agreement with congressional intent, was reserved for homesteaders and for educational purposes. *Id.* at 425-27. Moreover, the *Beres* court held that when Congress passed 16 U.S.C. §1248(c) in 1988, the federal government no longer held any reversionary

department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. *Id.*

[5] *See e.g. Marshall*, 31 F.3d 1028 (10th Cir. 1994).

14

rights in the land granted to the plaintiff's predecessor-in-interest and that 16 U.S.C. § 1248(c) should not apply to the 1875 Act which "intentionally omitted any words to create a reversionary right in the United States." *Id.*

Finally, the Trust refutes the arguments and case law the Government offers as support relying instead on *Beres* and *Hash.* In essence, the Trust lobbies this Court to find the favorable holdings in *Beres* and *Hash* persuasive even though the controlling Tenth Circuit's reasoning was rejected in those cases.

**STANDARD OF REVIEW**

Summary judgment is proper when there is no genuine issue of material fact to be resolved at trial. FED. R. CIV. P. 56(c); *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993). Thus, a district court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Nelson v. Geringer*, 295 F.3d 1082, 1086 (10th Cir. 2002). "An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment." *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 797 (10th Cir. 1997).

15

In applying these standards, the district court will view the evidence in the light most favorable to the party opposing summary judgment. *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996). The movant bears the initial burden of demonstrating the absence of evidence to support the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the non-moving party bears the burden of proof at trial, the burden then shifts to it to demonstrate the existence of an essential element of its case. Id. To carry this burden, the non-moving party must go beyond the pleadings and designate specific facts to show there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Ford v. West*, 222 F.3d 767, 774 (10th Cir. 2000). The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient to create a "genuine" issue of disputed fact. *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

## DISCUSSION

Three points seem significant in analyzing the parties' arguments. First, the case law offered by the Government is the law of this circuit. Second, the case law offered by the Trust is inapposite to the law of this circuit. In fact, the Tenth Circuit's reasoning is expressly rejected in both *Hash* and *Beres*. Third, the conditional statement proffered by the United States Supreme Court in *Preseault*, which *Hash* relies on, does not result in a finding for the Trust.

16

Points one and two illustrate that there is an obvious split in decisions among the federal circuit courts. The Ninth Circuit has held that the United States retains a reversionary interest in ROW grants. *See Vieux v. East Bay Regional Park District*, 906 F.2d 1330, 1335 (9th Cir. 1990) (holding that § 912 applies to grants made both before and after 1871 and the United States retains a reversionary interest in those grants of ROW). The Tenth Circuit has held that the United States retains a reversionary interest in all 1875 Act ROWs. *See e.g. Marshall*, 31 F.3d at 1032 (10th Cir. 1994) (holding that § 912 was specifically enacted to dispose of the United States retained interest in 1875 Act rights-of-way). The Seventh Circuit also has held that § 1248(c) "modifies § 912 to the extent that now those lands not converted to public highways . . . revert to the United States." *Mauler v. Bayfield County*, 309 F.3d 997, 999 (7th Cir. 2002) ("Clearly Congress assumed the United States retained a reversionary interest in railroad rights-of-way, else it would make little sense for Congress to have passed laws like § 912 . . . [and] § 1248(c)). Interestingly, the Tenth Circuit points directly to *Mauler* as a guide to the statutory framework regarding disposition of railroad ROWs. *Nicodemus*, 440 F.3d at 1236 n. 9 ("For a general overview of this statutory scheme, see *Mauler v. Bayfield County*.").

Conversely, the Federal Circuit and the Federal Claims Court have held that unless the patent granting the adjacent land expressly retains a reversion, no reversion can be

17

inferred. *See e.g. Hash*, 403 F.3d at 1314 (stressing the "well-recognized rule that property rights that are not explicitly reserved by the grantor cannot be inferred to have been retained"). Even in light of the split in the circuits, this Court is bound to follow the law promulgated by the Tenth Circuit and to hold that the government retained a reversionary interest in 1875 Act rights-of-way even in light of the language contained in § 912.

Point three illustrates how the Federal Circuit's *Hash* decision relies on the United States Supreme Court's holding in *Preseault v. United States* for the general rule that where a taking occurs, just compensation should be received. *See Hash*, 403 F.3d 1308 (Fed. Cir. 2005); *Beres*, 64 Fed. Cl. 403 (2005). However, while the Supreme Court does offer that "even if the rails-to-trails statute gives rise to a taking, compensation is available to petitioners," the primary issue that faced the Court was whether reversions under the Rails-to-Trails act were constitutional under the Commerce Clause. *See generally Preseault*, 494 U.S. 1 (1990). The issue was not whether they constituted a compensable taking. *See id.* Further, the *Preseault* Court noted that The Tucker Act, 28 U.S.C. § 1491(a)(1), provides exclusive jurisdiction in the United States Claims Court "for any claim against the Federal Government to recover damages" in excess of $10,000. *Id.* at 11. The Court also held that the Federal Claims Court has jurisdiction over any 16 U.S.C § 1247(d) takings claims in light

18

of the Tucker Act. *Id.* Thus the Court failed to address the takings issue as the petitioner had

not exhausted all available remedies. *Id.*

Finally, *Preseault* is distinguishable from the instant case. At issue in *Preseault* was

16 U.S.C § 1247(d).[6]  Conversely, 16 U.S.C. § 1248(c) is the section at issue in the instant

case. This is significant because under § 1247(d) no reversion or abandonment ever takes

place prior to ROW being retained and employed as a trail. *See Preseault*, 494 U.S. at 7.

---

[6] *Compare* 16 U.S.C. § 1247(d) *with* 16 U.S.C. § 1248(c).  § 1247(d) states in relevant part:

> Consistent with the purpose of this Act, and in furtherance of the national policy to
> preserve established railroad rights-of-way for future reactivation of rail service, to
> protect rail transportation corridors, and to encourage energy efficient transportation
> use, in the case of interim use of established railroad rights-of-way pursuant to
> donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter,
> if such interim use is subject to restoration or reconstruction for railroad purposes,
> such interim use shall not be treated, for any purpose of any law or any rule of law,
> as an abandonment of the use of such rights-of-way for railroad purposes. If a State,
> political subdivision, or qualified subdivision is prepared to assume full
> responsibility for management of such rights-of-way . . . then the Commission . . .
> shall not permit abandonment.

16 U.S.C. § 1247(d).  While § 1248(c) states:

> Abandoned railroad grants; retention of rights: Commencing upon October 4,
> 1988, any and all right, title, interest, and estate of the United States in all rights-
> of-way of the type described in section 912 of Title 43, shall remain in the United
> States upon the abandonment or forfeiture of such rights-of-way, or portions
> thereof, except to the extent that any such right-of-way, or portion thereof, is
> embraced within a public highway no later than one year after a determination of
> abandonment or forfeiture, as provided under such section.

16 U.S.C. § 1248(c).

19

Unlike § 1247(d), § 1248(c) pursuant to § 912 requires a judicial declaration of abandonment as a prerequisite to the United States' retention of its § 912 ROW reversionary interest. This difference seems to highlight the inapplicability of the reasoning in *Preseault* and subsequently *Hash* to the instant case.

**CONCLUSION ON RAILROAD RIGHT-OF-WAY REVERSION**

For the reasoning enumerated above, the Court concludes that the Government has met its burden in proving that it retains a reversionary interest in the Fox Park railroad ROW pursuant to 43 U.S.C. § 912, 16 U.S.C. § 1248(c), and previous decisions of the Tenth Circuit. However, this Court is aware that there is a split among the circuit courts. As the Trust points out, the Federal Circuit and the Federal Court of Claims, under *Hash* and *Beres* held that the conversion from a railroad ROW to public trail as mandated under 16 U.S.C. § 1248(c) constituted a taking. The Trust's argument relies predominantly on this line of cases as support for its argument. However, these decisions are not consistent with the prevailing authority in this circuit. Moreover, the Court finds that *Preseault*, and subsequently *Hash*, are distinguishable from the instant case. In light of the controlling Tenth Circuit case law, the Government's Motion for Summary Judgment is **GRANTED** and title to the railroad ROW is quieted in the Government.

On a final note, should the Trust decide to pursue a takings claim, under the Tucker Act, 28 U.S.C. §1491(a)(1), the Federal Claims Court would have exclusive jurisdiction provided that the compensation sought is greater than $10,000.00.[7] With this in mind, any takings issues brought before this Court would be dismissed for want of subject matter jurisdiction. *See* 28 U.S.C. § 1491(a)(1); *Preseault*, 494 U.S. at 11-14.

### APPLICABLE FACTS AND PARTIES' ARGUMENTS ON FOREST SERVICE ROAD COUNTERCLAIM
### FACTUAL BACKGROUND

As stated *supra*, the predecessors of the Trust were granted "land with all the rights, privileges, immunities, and appurtenances, of whatsoever nature, thereunto belonging, unto said claimants . . . forever."[8] Prior to October 21, 1996, Marvin M. Brandt contacted the

---

[7] 28 U.S.C. § 1346. The Little Tucker Act provides concurrent jurisdiction to the Federal District Courts for claims of $10,000.00 or less. *Id.*

[8] Patent No. 49-76-0031. The patent also contains the following excerpted provisions:

EXCEPTING AND RESERVING TO THE UNITED STATES from the land granted a ROW thereon for ditches or canals constructed by the authority of the United States; and

RESERVING TO the United States, and its assigns, a ROW for the existing Platte Access Road No. 512 over and across Tract No. 37 . . . approximately 420 feet [in length and] with a ROW width 10 feet to the left of the centerline and 20 feet to the right of the centerline.

Provided, that if for a period of five years, the United States, or its assigns, shall

21

Laramie Ranger District of the Medicine Bow-Routt National Forest ("MBRNF") in Albany County, Wyoming, and requested that Forest Service Road ("FSR") 512 be closed through Fox Park, Wyoming for safety reasons.

On October 2, 1996, the Laramie Ranger District of the MBRNF published a Decision Memorandum closing FSR 512 from its junction with FSR 517 through Fox Park, Wyoming. Specifically, the Decision Memorandum provides that the Forest Service is "closing and obliterating roughly 0.2 miles of FSR 512 from the junction of FSR 512 and FSR 517 to the Fox Park Resort.[9] Subsequently, the Forest Service closed FSR 512 and opened Access Road 512-C in its place. Access Road 512-C runs west of Fox Park and joins with the remaining unclosed portion of FSR 512 to the north of the Trust's property. Since at least October 21, 1996, the 0.2 mile portion of FSR 512 has been gated and used as a private road. The Forest Service employees installed barricades preventing access to FSR 512 from FSR 517.

---

> cease to use the above roads, or any segment thereof, for the purposes reserved, or if at any time the Regional Forester determines that the roads, or any segment thereof, is no longer needed for the purposes reserved, the easement traversed thereby shall terminate. In the event of such nonuse or such determination by the Regional Forester, the Regional Forester shall furnish to the patentees or, their heirs or assigns, statement in recordable form evidencing termination.

*Id.*

[9] *See* Exhibit 2. The Decision Memorandum also provides: "The Forest Service currently has an easement allowing access across the road. By implementing this proposal, the Forest Service would relinquish the easement and access would be provided on National Forest Service lands." *Id.*

22

Additionally, the Forest Service employees removed and graded the paved road surface and planted native grasses over the 0.2 miles of FSR 512 that crosses the Trust's property on November 1, 1996.

Each party has filed numerous briefs in support/opposition to the other party's motion for summary judgment. Rather than go through each parties' arguments and counterarguments in serve-volley manner, the Court has reorganized their arguments for the sake of clarity and brevity.

The parties rely on varying interpretations of the language in the patent which granted the Trust its property subject to the road easement. This disparity revolves around the express conditions for termination of the easement in the patent and the argument of whether these conditions have been triggered/satisfied. The patent reads in relevant part:

> Provided, that if for a period of five years, the United States, or its assigns, shall cease to use the above roads, or any segment thereof, for the purposes reserved, or if at any time the regional Forester determines that the roads, or any segment thereof, is no longer needed for the purposes reserved, the easement traversed thereby shall terminate. In the event of such nonuse or such determination by the Regional Forester, the Regional Forester shall furnish to the patentees or, their heirs or assigns, a statement in recordable form evidencing termination.

Def.'s Statement of Undisputed Fact at Ex. 1. Both parties agree that the patent states two conditions for termination. These conditions are (1) non-use of the road by the United

23

States for a five-year period or (2) a determination by the Regional Forester that the road or a segment of it is no longer needed for the purposes reserved.

### THE TRUST'S ARGUMENTS

#### CONDITION NUMBER 1:

The Trust contends that the first termination condition has been triggered and as a result the easement has terminated. The Trust claims that the Forest Service has not used FSR 512 since at least 1996 when it took steps to obliterate the 0.2 mile segment. Further, according to the Trust, upon removing the portion of FSR 512, the Forest Service instructed Marvin Brandt to install a gate at the south end of the road. At their behest, Brandt installed a gate and posted "No Trespassing" signage. He also enclosed the Trust's property with a "Buck-and-Pole" fence. In addition to claiming he acted upon the Forest Service's request, Brandt has also stated that to "the best of his knowledge, the Forest Service has not used that portion of [FSR] 512 that it closed through Fox Park, Wyoming." Decl. of Marvin Brandt (Ex. 3) at ¶ 17. The Trust also claims that the Forest Service has performed no maintenance on the road since 1996.

In light of the instructions Brandt received from the Forest Service combined with removal of the 0.2 mile segment of FSR 512 and the claim that Brandt has no knowledge of

24

the presence of the Forest Service on the land since the time of the Decision Memorandum, the Trust argues that the United States has not used the easement in at least the required five-year period. Thus, the Trust claims the second condition of the patent has been triggered and the easement has terminated.

In addition to the initial claim, the Trust argues that the words "any segment thereof," as contained in the patent indicate that when the Forest Service obliterated the 0.2 mile segment of FSR 512 it triggered the non-use condition for both FSR 512 and FSR 517.[10] The Trust asserts that if the Court should find that the easement for FSR 512 has terminated, based on the language of the patent, the easement for FSR 517 also must necessarily terminate. However, this contention was not included in the Trust's initial counterclaim.

CONDITION NUMBER 2:

On the issue of whether the second condition of the patent has been met, the Trust contends that the Decision Memorandum published by the District Ranger triggered the second condition in the patent and terminated the easement. The Trust relies on the language in the Decision Memorandum which expressly relinquished the easement. The memorandum

---

[10] Def.'s Statement of Undisputed Fact at Ex. 1. The patent states in relevant part that "if for a period of five years, the United States . . . shall cease to use the above roads, or any segment thereof . . . the easement traversed thereby shall terminate." *Id.*

25

stated: "The Laramie Ranger District . . . is proposing to re-route the transportation system in the vicinity of Fox Park." Def.'s Statement of Undisputed Fact at Ex. 1. The memorandum also states: "The proposal includes closing and obliterating roughly 0.2 miles of FSR 512 from the junction of FSR 512 and FSR 517 to the Fox Park Resort." *Id.* "The purpose of the project is to reduce traffic concerns next to the Fox Park Resort . . . [and] [t]he proposed reroute would alleviate these problems." *Id.* "By implementing this proposal, the Forest Service would relinquish the easement and access would be provided on National Forest System lands." *Id.*

Additionally, the Trust argues the growth of the Forest Service since 1976 (the year the patent was issued) has required a delegation of authority from the Regional Forester to lower levels of authority. In light of this growth, the Trust argues the Decision Memorandum issued by the District Ranger and later implemented by the Forest Supervisor is within the scope of authority for these individuals.[11] Being within the scope of authority for these

---

[11] *See* http://www.fs.fed.us/im/directives/fsh/7709.59/20.1-23.23.txt. The relevant part of the handbook states:

> The Chief, Regional Foresters, Experiment Station Directors, the Administrator of the Lake Tahoe Basin Management Unit, and Forest Supervisors are authorized to issue orders closing or restricting the use of any Forest development road (36 CFR 261.50). See also FSM 1013, which covers policy and responsibilities for issuance of such orders.

*Id.*

26

officials, their actions trigger the second condition of the patent. Thus, the Trust argues that the Decision Memorandum satisfies the patent's second termination condition and that the easement for FSR 512 (and apparently FSR 517) has been terminated.

WYOMING'S ABANDONMENT LAW APPLIES TO THE INSTANT CASE:

The Trust also argues that federal statutory law is inapplicable. It claims the Federal Property and Administrative Service Act of 1949, as triggered by the Government's reliance on *United States v. 434.00 Acres*, 792 F.2d at 1009-10, is inapplicable because the purpose of the act is inconsistent with the instant case. Specifically, the Trust points to the stated purpose of the act as "disposing of surplus property." 40 U.S.C. § 101. Under the act, property is defined as "any interest in property except [] land reserved or dedicated for national forest or national park purposes." 40 U.S.C. § 102(A)(ii). The Trust argues that since the land at issue was previously reserved for national forest purposes the Federal Property and Administrative Services Act does not apply. Further, the Trust argues that since no federal statute makes state law controlling in the instant action, federal common law should govern. However, since there has been little federal common law developed under these facts, Wyoming's law should prove instructive. *See United States v. Standard Oil Co. of Cal.*, 332 U.S. 301, 309-10 (1947).

27

Should this Court hold that neither condition has been satisfied, the Trust asserts that Wyoming law requires this Court to find that the easement has been abandoned. *See Mueller v. Hoblyn*, 887 P. 2d 500 (Wyo. 1994). The Trust offers *Mueller* for the rule that abandonment of an easement requires intentional relinquishment indicated by conduct which discloses intent to surrender the right to use the land. *Id.* The Trust offers another Wyoming decision for the proposition that abandonment is a question of intent and conduct. *See Seven Lakes Development v. Maxson*, 144 P.3d 1239, 1248 (Wyo. 2006) (holding that the question of abandonment is one of fact, depending on intention and conduct). Under *Mueller*, Wyoming law states that "[e]asements may be terminated by abandonment." *Mueller*, 887 P.2d at 505. "Abandonment of easements requires an intentional relinquishment indicated by conduct which discloses the intention to surrender the right to use the land authorized by the easement." *Id.* The Trust argues that by its actions, the United States clearly indicated its intention to abandon the 0.2 mile segment of road. Further, the Trust argues this Court should adopt the standard set forth by the Supreme Court of Wyoming in *Mueller* and quiet title to FSR 512 through Fox Park in favor of the Trust.

Applying these rules to the instant case, the Trust claims that the Decision Memorandum is indicative of the Forest Service's intention to abandon the easement. Further, obliterating the 0.2 mile segment of FSR 512 and the installation of gates at the

28

behest of the Forest Service is conduct required to effectuate the abandonment of the easement. The Trust claims a simple syllogism: (1) if the Government has intent to abandon and does abandon the easement then the easement is terminated; (2) the United States expressed its intent to abandon and it did abandon the road easement; (3) therefore, the easement has been terminated by abandonment.

### ESTOPPEL SHOULD BAR THE GOVERNMENT:

The Trust argues the Government should be estopped from asserting any claim to the FSR 512 against the Trust because the Trust relied on the Decision Memorandum and the subsequent actions of the Forest Service officials. The Trust cites a United States Supreme Court decision for the proposition that estoppel may be asserted against the United States. *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51 (1984). The Trust points to this language of the United States Supreme Court:

> Estoppel is an equitable doctrine invoked to avoid injustice in particular cases. While a hallmark of the doctrine is its flexible application, certain principles are tolerably clear . . . (b) to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired . . . thus, the party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse.

29

*Id.* Applying this to the instant case, the Trust argues its estoppel claim is proven against the Government. For example, when the Forest Service requested that Brandt install locking gates at the south end of FSR 512, he obliged at his own expense. Also, once the Decision Memorandum was published, Brandt enclosed the entirety of the property in a "Buck and Pole" fence to keep out wandering livestock, again at his own expense. The Trust contends that these facts prove that it relied upon the actions of the Forest Service and to deny quieting title in favor of the Trust would be an injustice. Thus, estoppel should bar the Government's claim of a continued ownership of FSR 512.

CONCLUSION OF THE TRUST:

The Trust argues the Government has failed to provide a shred of evidence for its claim that the segment of road at issue has been in continuous use. Additionally, the Trust claims that the Decision Memorandum by the District Ranger and subsequent actions by the Forest Supervisor are equivalent to a decision by the Regional Forester. The Trust also argues that Mr. Brandt installed a fence around the property, a gate at the south end, etc., which indicates non-use. Further, should this Court find that the patent's conditions have not been triggered the Trust argues that Wyoming law compels a finding the easement has been

30

abandoned. Finally, if this Court refuses to adopt state law in this action, then the Government should be estopped from claiming any right or title to FSR 512.

### THE GOVERNMENT'S ARGUMENTS

The Government argues against the Trust's second counterclaim asserting that neither condition set forth in the patent has been met. The Government also contends that before the easement reserved to the government can be extinguished at least one of these conditions must be satisfied. In essence, the Government argues "if neither condition has occurred the easement for the road through Fox Park is still extant." The Government rebuts the Trusts arguments that state law should apply. Similarly, the Government asserts the Trust has failed to meet its burden to prove an estoppel claim against the Government.

### CONDITION NUMBER 1:

As to the first condition, non-use by the United States for five years, the Government contends that factual evidence suggests that the non-use condition has not occurred. The Government presents the affidavits of Jerry Schmidt, Pete Winters, and Curtiss Orde as proof of the continuous use of FSR 512 and to refute the testimony of Brandt that "to the best of his knowledge the Forest Service has not used" FSR 512.

31

Jerry Schmidt states that as Forest Supervisor he issued the travel order closing FSR 512 to public traffic. However, according to Schmidt, this order was not intended to prohibit federal personnel from using the road. Rather, the order was solely intended to exclude public access to FSR 512. Furthermore, Schmidt states that the Forest Service never abandoned the road. The Government argues that had the road been abandoned, the Forest Service would have no authority to close the road, i.e., you cannot close a road that you do not own.

Pete Winters, a long time Forest Service employee, states that he gained access to FSR 512 through the unlocked gate. He also states that in the last decade he has used FSR 512 to inspect the condition of the easements for Forest Service use and for encroachments. Finally, Curtiss Orde, another long term Forest Service employee, states that he knew of the planned re-route of FSR 512. He also claims that he has used FSR 512 for a number of reasons over the past ten years including law enforcement and livestock retrieval.

In essence, the Government claims that the testimony of these individuals show the intention and actions of the Forest Service are consistent with the retention of the easement for FSR 512. Moreover, the Government contends these individuals prove that the Forest Service has not ceased to use FSR 512 for the required five-year period and the non-use condition has not been met.

32

The Trust has argued that to abandon any "segment thereof" of FSR 512 abandons the entirety of the easement. The Government claims that in pursuing this argument the trust is advocating for a broad interpretation of the language contained in the patent. It argues that federal grants are to be strictly, not broadly, construed. *Delaware Nation v. Commonwealth of Pennsylvania,* 446 F.3d 410, 418 (3d Cir. 2006) (holding that where the terms of the patent are unambiguous there is no need to look beyond the four corners of the document and any ambiguities in a public land grant must be resolved strictly against the grantee and in favor of the Government). Accordingly, unless the Court finds the language of the patent ambiguous, under the cases cited, the grant will be narrowly construed.

Likewise, the Government claims there is no ground for the Trust to assert a claim over FSR 517 at this juncture. The Trust has not attempted to amend the complaint under Fed. R. Civ. P. 15. Further, FSR 517 was not at issue in the 1996 Decision Memorandum and has remained open for public access. *See Forman v. Davis*, 371 U.S. 178, 182 (1962) (holding that a district court may deny a motion to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment."); *see also Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) (holding that denial to amend is appropriate solely

33

on un-timeliness where the party requesting the addition of new claims has no adequate explanation for delay). Under these Tenth Circuit decisions, the Government contends that the Trust's "failure to follow the proper procedure is another reason to prohibit a new claim at this juncture." Reply Br. of Pl. at 11 n. 2. The Government asks that any claim regarding FSR 517 should be barred.

The Government contends there is no material factual dispute regarding the usage of FSR 512. It asserts that in disputing the facts the Trust is merely attempting to fabricate a genuine issue of material fact to overcome the Government's motion for summary judgment. As an example of alleged overstatement, the Government points to the Trust's description that FSR 512 has been obliterated and is now non-existent. The Government contends that the Forest Service only *altered* 0.1 mile of FSR 512 through Fox Park at the north end. A $1/10^{th}$ mile segment is 528 feet in length whereas the whole segment of the road is 1825 feet. The altered section of the road is less than one third of the entire road and the remainder of the road remained useable and used. Further, the Government offers the statements of Casey Hull, another Forest Service Employee. According to Hull, FSR 512 is "still visible on the ground and if the wood barricades were removed, it could be easily re-opened and used." Hull Decl. at ¶¶ 5, 6. Finally, the Government offers photographs of the "obliterated" segment of FSR 512. The Government contends these photos "belie [the Trust's]

34

exaggerated assertions about the road, e.g., that for one to travel that segment would require an off-road adventure through the existing tall grasses and over, or around, the trees planted by the Forest Service." Reply Br. of Pl. at 21.

The Government rebuts the declaration of Marvin Brandt that he has no knowledge of the Forest Service using the FSR 512 since at least 1996 by pointing to the suspiciousness of such a self-interested statement. *See, e.g., Argo v. Blue Cross and Blue Shield of Kansas*, 452 F.3d 1193, 1199-2001 (10th Cir. 2006) (citing *Tavery v. United States*, 32 F.3d 1423, 1427 n. 4 (10th Cir. 1994) for the proposition that statements of mere belief in an affidavit must be disregarded by the Court under the personal knowledge standard and that a self-serving affidavit is insufficient to defeat summary judgment). For the reasons aforementioned, the United States claims that the Trust has failed to prove satisfaction of the first condition and that no genuine issue of material fact exists.

CONDITION NUMBER 2:

On the second termination condition, the Government argues that the Decision Memorandum issued by the District Ranger simply closed FSR 512 to the public and that it did not end the Forest Service's use of the road. First, the Government claims that the District Ranger did not have authority to relinquish the easement. The language of the patent

35

specifically states the only official with the authority to terminate the easement was the

Regional Forester. *See United States v. California*, 332 U.S. 19 (1947) (holding government

officers who do not have authority to dispose of property cannot do so). To bolster its

argument, the Government offers the proposition that absent strict compliance with federal

law there can be no disposition of property. *See U.S. v. 434.00 Acres*, 792 F.2d 1006 (11th

Cir. 1986). Additionally, the Government contends if this Court finds the Decision

Mcmorandum was an attempt to dispose of FSR 512, the Government cannot be bound by

the Decision Memorandum because neither the District Ranger nor the Forest Supervisor had

authority to dispose of the road. *Id.* Further, as the District Ranger is two tiers lower than

the Regional Forester, his Decision Memorandum could only be a recommendation.

The Government also offers the affidavit of the Regional Forester, Rick D. Cables,

to show that neither the District Ranger nor the Forest Supervisor had the authority to

terminate the easement for FSR 512. *See* Decl. of Rick D. Cables ¶¶ 3, 4. Cables states:

> [T]here are no implied authorities within the Forest Service to dispose of any Federal real property interest.
>
> Where rights-of-way are reserved in the United States in federal land patents with provisions for termination by the Regional Forester when no longer needed for public purposes, those termination authorities have not been delegated to Forest Supervisors or District Rangers. A decision to terminate a right-of-way is reserved to the regional office so that broader policy implications and regional needs may be considered above the exigencies and

36

conveniences of a local management situation.

*Id.* Applied to the instant case, the Government asserts that the unambiguous language of the patent reserves the right to terminate the easement to FSR 512 in the Regional Forester. Further, the Government claims that no such determination was ever made by the Regional Forester. *Id.*

The Government acknowledges the Forest Service handbook cited by the Trust which states that the Forest Supervisor has the authority to *close* or *restrict* the use of Forest Service roads.[12] However, the Government contends that an action by the Forest Supervisor to close a road does not equate to an action by the Regional Forester to terminate a real property right reserved to the United States in a federal land patent.

---

[12] http://www.fs.fed.us/im/directives/fsh/7709.59/20.1-23.23.txt. The relevant part of the handbook states:

> The Chief, Regional Foresters, Experiment Station Directors, the Administrator of the Lake Tahoe Basin Management Unit, and Forest Supervisors are authorized to issue orders closing or restricting the use of any Forest development road (36 CFR 261.50). See also FSM 1013, which covers policy and responsibilities for issuance of such orders.

*Id.*

37

WYOMING LAW DOES NOT ADVANCE THE TRUST'S POSITION:

The Government does not believe there is any reason to look beyond the four corners

of the patent in deciding this case. According to the Government, the decision cited by the

Trust necessarily requires this Court to find against the Trust. *See Mueller v. Hoblyn*, 887

P.2d 500 (Wyo. 1994). In *Mueller*, Mueller owned a single undivided tract of property that

was subject to a road easement granted prior to his acquisition of the parcel. *Id.* at 502-03.

Subsequently, the benefited parcel was subdivided and the divided parcels continued to use

the road easement. *Id.* However, the road easement was improperly located. *Id.* When

Hoblyn, the owner of the benefited land, approached Mueller about relocating the road,

Mueller claimed that he had been using the easement for agricultural purposes and that he

had installed a well on the easement. *Id.*

Mueller filed an action to quiet title to the easement on adverse possession grounds.

*Id.* The district court held that only the section of the easement utilized for the well had been

extinguished. *Id.* Mueller appealed and the Wyoming Supreme Court reversed the district

court holding the adverse possession period (ten years in Wyoming) is not tolled until the

holder of the easement seeks to use it. *Id.* at 504. Moreover, the *Mueller* court held the

burden to show abandonment of a road easement is high and the evidence must be strong and

convincing. *See id.* at 508-10. The Court held that in the absence of evidence of a

38

permanent obstruction, such as a building, the drilling of the well and planting of crops were
not inconsistent with the rights held by the owners of the dominant estates. *Id.* Thus, there
was no portion of the easement that was terminated by adverse possession and the easement
remained extant. *Id.*

In the instant case as in *Mueller*, there were no permanent structures blocking the
route of the easement, only gate-like barriers. While the Trust relies on *Mueller* for the
proposition that abandonment requires intent and conduct, the Government asserts that as in
*Mueller*, the Trust's use of the easement has not been inconsistent with the Government's
interest in the road. Thus, the Government contends that *Mueller* is inapplicable to the
instant case. Moreover, applying *Mueller* to the instant case necessitates a ruling in favor of
the Government because the obstructions to FSR 512 are not permanent.

### THIS COURT SHOULD NOT APPLY ESTOPPEL AGAINST THE GOVERNMENT:

The Government contends the instant case is inappropriate for estoppel. The
Government states that "equitable estoppel is an extraordinary remedy and [the United
States] may not be estopped on the same terms as other litigants." Reply Br. of Pl. at 22
(citing *Board of Comm'rs v. Isaac*, 18 F.3d 1492, 1498 (10th Cir. 1994)). Further, the
Government offers that it is "far from clear that the Supreme Court would ever allow an

39

estoppel against the government under any set circumstances." *See DePaolo v. United States ex rel. IRS (In re DePaolo)*, 45 F.3d 373, 376 (10th Cir.1995); *See also FDIC v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994). The Government claims that in addition to the usual criteria of estoppel, applying estoppel to the Government requires a showing of affirmative misconduct or concealment of a material fact. *Sweeten v. U.S. Dep't of Agriculture*, 684 F.2d 679, 682 (10th Cir. 1982); *DePaolo*, 45 F.3d at 377. Moreover, affirmative misconduct is a high hurdle for the asserting party to overcome. *Id.*

Relying on these cases, the Government contends that there was no misconduct or concealment by the Forest Service. There being no legal obligation to close the road to public access, the Forest Service did so at the Trust's behest and at public expense. Further, the installation of the gate and fence around the Trust's property were not in reliance on the Government's actions. Rather, the Trust was simply taking full advantage of the opportunity it was given by the rescindable closure of FSR 512. Moreover, the Government claims the only error by the Forest Service in this matter was the District Ranger's erroneous belief that closing FSR 512 terminated the reserved easement. While this error was a mistaken belief, it was not misconduct or concealment of material facts. "Mere negligence, delay, or failure to follow agency guidelines does not constitute affirmative misconduct." *DePaolo*, 45 F.3d at 377; *Isaac*, 18 F.3d at 1498. Finally, the Government asserts the plain language of the

40

patent requires the Regional Forester to record the action in the county register.    The

Regional Forester never made such a recording.  Thus, under the terms of the patent, there

has never been a relinquishment of the easement through Fox Park.


CONCLUSION OF THE GOVERNMENT:

For the aforementioned reasons the Government argues that there are no genuine

issues of material fact.  Thus, summary judgment should be held in favor of the Government

and title to the road should be quieted in the Government.


## DISCUSSION ON THE COUNTERCLAIM

Several road issues are appropriate for summary judgment.  These are the estoppel

argument, the issue of whether state law should apply to the instant action, and whether the

"any segment thereof" clause terminates the easements for FSR 512 and 517.

The Trust claims the Wyoming Supreme Court's decision in *Mueller* compels this

Court to find the Government has shown the necessary intent and conduct to abandon the

FSR 512 easement.  However, a close reading indicates the Supreme Court of Wyoming

required more than just a superficial relinquishment of an easement. *See Mueller*, 887 P.2d

at 507.  Under *Mueller*, abandonment requires the construction of permanent structures

41

which obstruct the easement for enough time to satisfy the adverse possession period. *Id.* Further, the *Mueller* Court held the statutory period is not tolled until the easement holder asserts their right to the easement. *Id.*

Applied to the instant case, the construction of wooden barricades at one end of the FSR 512 and the installation of the gate at the south end of the road would not satisfy the permanent structure requirement of *Mueller*. Similarly, according to the affidavit of Hull, the supposed obliteration of the 0.2 mile segment of FSR 512 is easily remediated. Under these facts, this Court fails to see how the Trust has carried its burden. The Court agrees with the Government that to apply *Mueller* to this case necessarily requires a holding in its favor.

While the Trust's installation of the gate and the buck and pole fence are indicative of reliance on the actions of the Forest Service, the Court fails to see how it matters whether FSR 512 is deemed closed or whether the easement has terminated. Either way, the Trust retains the benefit of the closure. By closing the road to public access, the Forest Service has effectuated the increased safety result sought by the Trust in its initial letter to the District Ranger. Therefore, the Court fails to see how the Trust's reliance was in any way detrimental to it.

Furthermore, the Government cites controlling Tenth Circuit law that plainly states that the asserting party must prove the Government engaged in behavior that qualifies as

42

affirmative misconduct *or* concealment of a material fact. *See Sweeten v. U.S. Dep't of Agriculture*, 684 F.2d 679, 682 (10th Cir. 1982); *DePaolo*, 45 F.3d at 377. The Government is correct in its reliance on this case law. The District Ranger's error does not meet the affirmative misconduct standard. The facts do not show any indication that an inference could be drawn to support an assertion of concealment of material facts.

Only one issue remains for analysis: whether either condition of the patent has been triggered terminating the easement. The Government fairly and succinctly stated these conditions in its brief as (1) non-use of the road by the United States for a five-year period *or* (2) a determination by the Regional Forester that the road or a segment of it is no longer needed for the purposes reserved. The Court will deal with the conditions in reverse order.

The second condition states that the easement terminates in the event the Regional Forester determines the road is no longer needed. The only evidence the Trust offers in support of its argument that the Decision Memorandum by the District Ranger satisfies this condition is a citation to an online Forest Service handbook which states that the Forest Supervisor and the District Ranger may close roads. However, the handbook fails to mention the authority of these officials to terminate easements. Absent the express authority to terminate the easement, the Trust has failed to meet its burden in proving the Decision Memorandum qualifies as a relinquishment of the easement by the Regional Forester.

43

Conversely, the Government offers significant support for its assertion that the only person with authority to terminate the easement is the Regional Forester. For example, the Government offers the affidavit of the Rocky Mountain Regional Forester Rick Cables to clarify that where a federal land grant specifies the Regional Forester is the position with the authority to terminate real property rights held by the Government, there can be no delegation of that authority. The Government also offers case law in support of its position that only the Regional Forester has such authority. *See United States v. California*, 332 U.S. 19 (1947) (holding government officers who do not have authority to dispose of property cannot do so). Given the weight of the arguments offered by the Government, this Court agrees that the patent's second termination condition has not been met.

The first condition presents a more difficult problem to resolve. In order to prevail on the first condition the Trust must show that the Government has not used FSR 512 for a period of five years.[13] In support of its position the Trust offers the testimony of the trustee, Marvin Brandt, for the assertion that "to the best of his knowledge the Forest Service has not used" FSR 512. In response the Government submits the affidavits of several Forest Service employees who describe their use of FSR 512 on multiple occasions.

---

[13] *See supra* note 8.

44

If we rely on the testimony of Brandt and the Forest Service employees alone, it seems that there is a genuine issue of material fact making summary judgment inappropriate on the second counterclaim of the Trust. The lack of knowledge of Trustee Brandt fails to contradict the Forest Service affidavits of continued use of the closed sections of the road. However, as indicated *supra*, the Government offers Tenth Circuit case law, the gist of which is that a statement made by a self-interested party is insufficient to overcome a motion for summary judgment. *See, e.g., Argo v. Blue Cross and Blue Shield of Kansas*, 452 F.3d 1193, 1199-1201 (10th Cir. 2006) (holding that statements of mere belief in an affidavit must be disregarded by the Court under the personal knowledge standard and that a self-serving affidavit is insufficient to defeat summary judgment). Applied to the instant case, the statements of Marvin Brandt are clearly self-serving. When considered against the affidavits of the employees the conclusion that the Forest Service has not used the road easement fails.

### CONCLUSION ON FSR 512

The Trust has failed to present a genuine issue of material fact on the second condition. However, the Trust has attempted to present an issue of material fact on the first (non-use) condition of the patent with Brandt's belief that the Government has not used FSR 512 since 1996. In consideration of this statement alone, neither the Government nor the

45

Trust has met its burden for summary judgment. However, since the issue of fact arises from the self-serving statement regarding Brandt's belief, under Tenth Circuit case law, this statement must be disregarded at the summary judgment stage and the Government must prevail on its motion. *Argo*, 452 F.3d at 1200 (citing *Tavery*, 32 F.3d at 1427 n. 4 (10th Cir. 1994)). Accordingly, under the Tenth Circuit's decision in *Argo*, it is therefore **ORDERED** that the Government's motion for summary judgment shall be, and is, **GRANTED** on the FSR 512 counterclaim.

Dated this _____ day of April, 2008.


ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE

46