# EXHIBIT 2

JOHN R. GREEN
Acting United States Attorney
CAROL A. STATKUS
NICHOLAS VASSALLO
Assistant United States Attorneys
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Facsimile: 307-772-2123
carol.statkus@usdoj.gov
nick.vassallo@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-CV-0184J |
| | ) | and |
| WYOMING AND COLORADO | ) | Consolidated Case No. 06-CV-171J |
| RAILROAD COMPANY, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

## UNITED STATES' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON ITS CLAIMS FOR A JUDICIAL DECLARATION OF ABANDONMENT AND AN ORDER QUIETING TITLE IN FAVOR OF THE UNITED STATES

Plaintiff United States, by and through the United States Attorney for the District of

Wyoming and Assistant United States Attorneys Carol A. Statkus and Nicholas Vassallo,

respectfully submits this brief in support of its motion for summary judgment on its request

for a judicial declaration of abandonment and an order quieting title in favor of the United States.

## Introduction

The United States initiated this action to confirm federal title to a portion of an administratively-abandoned railroad right-of-way. The right-of-way, which runs 66.16 miles from Laramie, Wyoming, south to the Colorado-Wyoming state line, was formerly used by the Wyoming and Colorado Railroad Company ("WYCO"). This action only concerns 28.08 miles of the right-of way, from the boundary of the Medicine Bow-Routt National Forest ("the Forest") near Albany to the Colorado-Wyoming state line.

The majority of this stretch lies on federal land administered by the Forest Service and the Bureau of Land Management. Parts of the right-of-way lie within two tracts owned by the State of Wyoming. Those portions are not included in this action. Three relatively short segments of the right-of-way traverse otherwise-private inholdings at Albany, Fox Park and Mountain Home. The owners of those inholdings are defendants in this action. A judicial declaration of abandonment is necessary to perfect title to the right-of-way in the United States in accordance with the National Trails System Improvements Act of 1988, codified at 16 U.S.C. § 1248(c) and the Abandoned Railroad Right-of-Way Act of March 8, 1922, codified at 43 U.S.C. § 912.

-2-

The right-of-way is 200' wide, extending 100' on each side of the railroad center line. The Forest Service plans to use the right-of-way to develop and operate a public recreational trail. Since this action was filed, many of the defendants have reached settlements with the United States through which the United States has agreed to quitclaim its interest in the right-of-way in exchange for a narrower trail easement on the historic railroad bed. This motion is not directed at those settling defendants. Instead, once the settlements are finalized, the United States intends to file an unopposed motion for entry of judgment in accordance with the settlements. Several other defendants are still actively engaged in settlement discussions and the United States intends to continue its efforts to reach agreements with those parties. Some defendants, however, are not expected to settle.[1]

WYCO has filed a stipulation stating that it does not oppose entry of a judicial declaration of abandonment. It is the understanding of the United States that none of the defendants oppose a declaration of abandonment. Thus, the principal issue before the court is whether, upon entry of a judicial declaration of abandonment, title to the right-of-way reverts to the United States. For the reasons set forth below, and in accordance with the

---

[1] The Marvin M. Brandt Revocable Trust and Marvin M. Brandt have filed a counterclaim concerning title to a road in the Forest. That counterclaim is the subject of a separate motion and brief of the United States.

relevant federal statutes and the law of this Circuit, the Court should rule that title to the

right-of-way does in fact revert to the United States.[2]

**Factual Background**

**1.    History of the Railroad Grant**

The General Railroad Right-of-Way Act of 1875 ("1875 Act") provided for a right-of-

way for railroad purposes through the public lands of the United States.  The grant, which

is for a right-of-way 200 feet in width, contains requirements for filing plats with the

Secretary of the Interior.  The lands subject to this action are within the right-of-way granted

under the 1875 Act to the Laramie, Hahn's Peak and Pacific Railroad Company, as

documented in the BLM Land Status Records (Exhibit 3), the Railroad's Survey Notes

(Exhibit 4), the BLM Serial Register Pages (Exhibit 5) and as shown on the Second

Amended Definite Location Plat of February 4, 1915 and described in that document as

follows:

---

[2] One or more defendants in the Mountain Home Area have structures which encroach
upon a portion of the right-of-way which is owned entirely by the United States.  (See
Exhibits 1 and 2, which show that the fee underlying the right-of-way is vested in the United
States by virtue of quitclaim deeds from Timothy O. Russell and Coralie S. Johnston).  The
encroaching defendants do not have any colorable claim of title to the lands within the right-
of-way.  An order quieting title to this portion of the right-of-way in the United States will
confirm that the structures are in trespass and must be removed.

> Beginning at the intersection of the existing centerline of said railroad with the north line of the SE1/4NW1/4 of Section 14, Township 14 North, Range 78 West of the 6th P.M., Albany County Wyoming, which is the boundary line between National Forest System lands and private land; Thence in a southerly direction along the existing centerline of said railroad to the intersection with the Wyoming-Colorado State Line in the W½ of Section 24, Township 12 North, Range 79 West of the 6th P.M. Albany County, Wyoming.
>
> EXCEPT, that portion of the right-of-way lying in State of Wyoming lands in sections 13 and 14, Township 14 North, Range 78 West and W½ of section 16, Township 13 North, Range 78 West of the 6th Principal Meridian, Albany County, Wyoming; and
>
> SUBJECT to an easement of the Department of Transportation for the Wyoming State Highway Department recorded at Book 387, Pages 774-790 in the land records of Albany County, Wyoming.

(Exhibit 6).

LHPPR completed construction of the railroad from Laramie to the Colorado state line in 1911. *See* Hollenback, *The Laramie Plains Line*, Sage Books, Denver, 1960, p. 38. On May 15, 1996, LHPPR's successor, WYCO, filed a Notice of Intent to Abandon Rail Service with the Surface Transportation Board (STB),[3] seeking to abandon 66.16 miles of its Coalmont Branch in Albany County, Wyoming, from milepost 67.47 at the Colorado state line to milepost 1.31 near Laramie. The STB approved the abandonment petition subject to

---

[3] The STB was formerly the Interstate Commerce Commission.

certain conditions related to protecting historic integrity of sites and structures along the right-of-way, protecting geodetic station markers, and consulting with the Forest Service regarding salvage activities.  On December 31, 2003, the STB removed the last of the conditions, thus effecting its approval of the abandonment of the rail line (Exhibit 7).[4]  On January 15, 2004, WYCO notified the Secretary of the STB that it had completed its abandonment of the 66.16 mile rail line (Exhibit 8).

2.   **Adjacent Land Ownership Interests of the United States and Others**

Prior to 1902, all the land on the sixty-six mile, 200-foot right-of-way was public domain land under administration of the General Land Office of the Department of the Interior, except for a school section tract owned by the State of Wyoming. On May 22, 1902, the Medicine Bow Forest Reserve was reserved from the public domain by Presidential Proclamation. 32 Stat. 2003.  On March 2, 1907, an additional 200,000 acres was added to the Forest Reserve.  34 Stat. 3303.  Aside from the State of Wyoming inholding, the forest

---

[4] The administrative decision by the STB to approve abandonment, while a necessary step in the abandonment process, is not in itself sufficient to effect an abandonment of the right-of-way under the 1922 Act.  See *Phillips Company v. Denver & Rio Grande Western RR Co.*, 97 F.3d 1375 (10th Cir. 1996) (holding that ICC authorization is a necessary prerequisite to abandonment) and *Marshall v. Chicago and Northwestern Transportation Company,* 31 F.3d 1028, 1031 (10th Cir. 1994) (noting that under 43 U.S.C. § 912, there cannot be abandonment "until such is decreed by a court of compenent jurisdiction or by Act of Congress").

-6-

reservations preceded all other private land patents and acquisitions along the railroad right-of-way within the Medicine Bow National Forest.

The defendants in this case acquired lands on and along the right-of-way through various means. Several were homestead entries under the public land laws, and others were lands patented through land exchanges with the Forest Service. As discussed below, title to the abandoned railroad right-of-way reverts to the United States regardless of the method by which any of the defendants derived title to the adjacent and underlying land.

## Argument

1.   **Federal Statutory Law Supports the United States' Assertion of a Reversionary Interest in the Right-of-Way**

In 1922, with the enactment of the Railroad Right-of-Way Abandonment Act, 43 U.S.C. § 912, Congress specifically intended to address forfeitures or abandonments of rights-of-way granted under the 1875 Act.[5] The 1922 Act provided that whenever a railroad ceased use and occupancy of a right-of-way granted to it from the federal public lands,

> all right, title, interest, and estate of the United States in said lands shall, except such part thereof as may be embraced in a public highway legally established within one year after the date of said decree or forfeiture or abandonment, be transferred to and vested in any person . . . to whom or to which title of the

_____

[5] *See* S. Rep. No. 388, 67th Cong., 2d Sess. (January 6, 1922), at 1 (referencing section 4 of the 1875 Act "under which most of the rights of way over public lands have been granted") and at 2 (explaining how the statute operates on 1875 Act rights-of-way).

> United States may have been or may be granted, conveying or
> purporting to convey the whole of the legal subdivision or
> subdivisions traversed or occupied by such railroad or railroad
> structures of any kind as aforesaid . . . .

43 U.S.C. § 912.

By enacting this provision to affirmatively transfer the United States' rights in

abandoned 1875 Act rights-of-way to the owners of property traversed by them, Congress

expressed its understanding that the 1875 Act retained a reversionary interest in the

rights-of-way in the United States.   If the United States retained no interest in the

rights-of-way, no affirmative action by Congress to convey them to the surrounding

landowner would be required.

In 1988, Congress effectively repealed those portions of the 1922 Act which allowed

the government to relinquish its interest in these rights-of-way to adjacent landowners,

instead requiring that the reversionary rights remain in the United States upon their

abandonment or forfeiture. The National Trails System Improvements Act of 1988, codified

at 16 U.S.C. §1248(c), provides:

> (c) Abandoned railroad grants; retention of rights. Commencing upon the date
> of enactment of this subsection [enacted Oct. 4, 1988], any and all right, title,
> interest, and estate of the United States in all rights-of-way of the type
> described in the Act of March 8, 1922 (43 U.S.C. § 912), shall remain in the
> United States upon the abandonment or forfeiture of such rights-of-way, or
> portions thereof, except to the extent that any such right-of-way, or portion

thereof, is embraced within a public highway no later than one year after a determination of abandonment or forfeiture, as provided under such Act.

It is well established that "federal land grants are to be construed strictly in favor of the United States." *California ex rel. State Lands Comm'n v. United States*, 457 U.S. 283, 287 (1982). In construing public land grants, courts must apply "'the established rule that land grants are construed favorably to the Government, that nothing passes except what is conveyed in clear language, and that if there are doubts they are resolved for the Government, not against it.'" *Watt v. Western Nuclear Inc.*, 462 U.S. 36, 59 (1983) (quoting *United States v. Union Pacific R. Co.*, 353 U.S. 112, 116 (1957)); see also *Caldwell v. United States*, 250 U.S. 14, 20, 21 (1919). This canon has been repeatedly applied in construing 19th century statutes granting railroad rights-of-way, including the 1875 Act at issue here. *See, e.g., Great Northern Ry. Co. v. United States*, 315 U.S. 262, 272 (1942); *Union Pacific, supra*, at 116.

All of the defendants to whom this motion is directed took their land subject to the railroad right-of-way (See Exhibits 9-11). The 1875 Act contained no language conveying an interest in railroad rights of way to owners of property traversed by the rights-of-way, including any reversionary rights, upon abandonment. Because conveyances by the United States are strictly construed in favor of the United States, any reversionary rights in the right-of-way were retained by it. This retention of any reversionary rights is consistent with the

-9-

stated purpose of the 1875 Act, which was to provide for a transportation corridor. *Great Northern*, 315 U.S. at 272.  It is up to the United States to decide – if the rights-of-way are forfeited or abandoned – whether they are still needed for transportation purposes or should be conveyed to the owners of the surrounding lands.

### 2.   Tenth Circuit Case Law Supports the United States' Claim to the Reversionary Rights in Rights-of-Way Granted under the 1875 Act

The significance of 16 U.S.C. § 1248(c), which provides for the reversion of abandoned railroad rights-of-way to the United States, was acknowledged by the Tenth Circuit Court of Appeals in *Phillips Company v. Denver & Rio Grande Western RR Co.*, 97 F.3d 1375 (10th Cir. 1996), cert. denied 521 U.S. 1104 (1997).  In *Phillips*, the owner of land adjacent to an 1875 Act railroad right-of-way sought to quiet title to the right-of-way under 43 U.S.C. § 912. In order to avoid the effect of 16 U.S.C. § 1248(c), the landowner sought a determination that the right-of-way had been abandoned prior to the effective date of that statute.  The Tenth Circuit affirmed the district court's entry of summary judgment against the landowner.  In doing so, it observed that the landowner was "hard pressed to assert a present reversionary interest in the right of way, in light of 16 U.S.C. § 1248(c), and instead seeks a retroactive determination that the right of way reverted to it prior to the effective date of §1248." *Id.* at 1377-78.  Thus, the Tenth Circuit realized that once Section 1248(c) had been enacted, the reversionary interest was held by the United States and not adjacent landowners.

-10-

In *Marshall v. Chicago and Northwestern Transportation Company,* 826 F.Supp. 1310 (D. Wyo. 1992), this Court was called upon to quiet title to an abandoned 1875 Act railroad right-of-way in Natrona County, Wyoming. The case arose between the successor in interest to the original patentee of land underlying the right-of-way and the successor to a grant by the railroad. This Court ruled in favor of the patentee's successor, and against the railroad grantee. Interestingly, the United States was not a party to the lawsuit and 16 U.S.C. §1248(c) was not mentioned in the opinion. Relying only upon 43 U.S.C. § 912, and apparently without considering 16 U.S.C. §1248(c), this Court quieted title in the patentee's successor. The case is significant here because in affirming this Court's decision, the Tenth Circuit clearly ruled that the 1922 Act pertaining to railroad abandonment, 43 U.S.C. § 912, applied to 1875 Act rights-of-way and it indicated that the United States retained an interest in those rights-of-way. *Marshall v. Chicago and Northwestern Transportation Company,* 31 F.3d 1028 (10th Cir. 1994). The court quoted and expressly adopted the following "result and rationale" from *State of Idaho v. Oregon Short Line R.R. Co.,* 617 F. Supp. 207 (D. Idaho 1985):

> This Court has the obligation to interpret § 912 (and §§ 913 and 316) in a such a way to fully effectuate congressional intent: These statutes would be rendered null if this Court were to find them inapplicable to 1875 Act rights-of-way, *for they were specifically enacted to dispose of the United States' retained interest in 1875 Act rights-of-way.* See H.R. 217 and 843, *supra.* ***In enacting these statutes, Congress clearly felt that it had some retained interest in***

*railroad rights-of-way.* The precise nature of that retained interest need not be shoe-horned into any specific category cognizable under the rules of real property. Based on [*Northern Pacific Ry. Co. v.*] *Townsend* [citation omitted], *Stringham*, and other decisions, congressional committeemen in the early 1920's spoke of this retained interest in terms of an "implied condition of reverter." *Regardless of the precise nature of the interest, Congress clearly believed that it had authority over 1875 Act railroad rights-of-way. Sections 912, 913, and 316 evince an intent to ensure that railroad rights-of-way would continue to be used for public transportation purposes,* primarily for highway transportation. With the relatively recent advent of the automobile, the 66th and 67th Congresses obviously perceived the rising importance of highway transportation; and acted to preserve, where possible, railroad rights-of-way for such use. For primarily that purpose §§ 912, 913 and 316 were enacted.

In conclusion, the Court finds that §§ 912 and 316 apply to 1875 Act rights-of-way.

*Marshall*, 31 F.3d at 1032 (quoting *Oregon Short Line*, 617 F. Supp. 2d at 212-213)(Emphasis supplied).[6] Accordingly, the law in this Circuit is that the United States holds reversionary

---

[6] *Oregon Short Line* contains the following additional discussion regarding the 1875 Act:

> Congress, in granting the 1875 rights-of-way, did not intend to convey to the railroads a fee interest in the underlying lands. Congress did, however, intend to give the railroads an interest suitable for railroad purposes – a right-of-way, which, by definition, carried with it the right to exclusive use and occupancy of the land. . . . Congress had authority, by virtue of its broad power over interstate commerce, to grant such easements subject to its own terms and conditions . . . . Congress could pre-empt or override common-law rules regarding easements, reversions, or other traditional real property interests. In other words, even if the 1875 Act granted only an easement, it does not necessarily follow that Congress would or did not intend to retain an interest in that easement.

-12-

rights in railroad rights-of-way granted under the 1875 Act, and disposition of those reversionary rights is subject to the will of Congress.[7]

As the Tenth Circuit recognized in *Phillips, supra*, Congress determined in 1988 that the United States' reversionary rights "shall remain in the United States upon the abandonment or forfeiture of such rights-of-way, or portions thereof." 16 U.S.C. § 1248(c). The Tenth Circuit reiterated this principle more recently in *Nicodemus v. Union Pacific Corporation,* 440 F.3d 1227(10th Cir. 2006). In *Nicodemus*, several individuals sued Union Pacific after it allowed telecommunications providers to install fiber-optic cables in the railroad rights-of way. The rights-of-way at issue had been granted to the railroad under "numerous federal land-grant statutes, which dated from 1852 to 1875." *Id*. at 1233. At the district court level, this Court ruled that it had no subject-matter jurisdiction over Plaintiffs' claims. *Nicodemus v. Union Pacific Corporation,* 204 F.R.D. 479 (D.Wyo 2001). On appeal, the Tenth Circuit reversed, finding that a substantial federal issue was presented. The court described the federal interest in the following terms:

---

*Id.,* 617 F. Supp. at 210-211.

[7]See also, *Hamilton v. King County*, 2000 WL 1772525 (Wash. App. Div. 1 2000) (unpublished opinion); *Whipps Land & Cattle Co. v. Level 3 Communications, LLC*, 658 N.W.2d 258 (Neb. 2003). A case holding to the contrary is *City of Aberdeen v. Chicago and North Western Transp. Co.*, 602 F. Supp. 589 (D.S.D. 1984), but the Tenth Circuit declined to adopt the *City of Aberdeen* analysis in *Marshall.* See *Marshall,* 31 F.3d at 1031 n. 2.

The statutes at issue granted to Union Pacific the right to construct a railroad and telegraph line in order to "secure the safe and speedy transportation of the mails, troops, munitions of war, and the public stores" to the West. *See, e.g.,* Act of July 1, 1862, ch. 120, § 3, 12 Stat. 489. Under subsequently enacted statutes, the United States has a reversionary interest in the lands when no longer used for their designated purposes. *See* 43 U.S.C. §§ 912, 913 and 16 U.S.C. § 1248(c). Thus, the government has a direct interest in the determination of property rights granted to the railroad.

*Nicodemus,* 440 F.3d at 1236. Specifically citing Section 1248(c), the court noted that

[u]nder the Abandoned Railroad Right of Way Act, 43 U.S.C. § 912, enacted in 1922, land given by the United States for use as a railroad right-of-way in which the United States retained a right of reverter under *N. Pac. Ry. Co. v. Townsend,* 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044 (1903), must be turned into a public highway within one year of the railroad company's abandonment or be given to adjacent landowners. Subsequently, Congress enacted the National Trails System Improvement Act of 1988, 16 U.S.C. § 1248(c), under which those lands not converted to public highways within one year of abandonment revert back to the United States, not adjacent private landowners.

*Id.* at n. 9.

Thus, the Tenth Circuit has expressly recognized that, by virtue of 16 U.S.C. § 1248(c), abandoned railroad rights-of-way which formerly reverted to landowners under 43 U.S.C. § 912 now "revert back to the United States, not adjacent private landowners." According to the analysis set forth in *Oregon Short Line, supra,* adopted by the Tenth Circuit in *Marshall,* this principle applies to the 1875 Act rights-of-way at issue in this case. Accordingly, the

-14-

United States is entitled to summary judgment declaring that the railroad right-of-way has

been abandoned and confirming that title to the right-of-way is in the United States.[8]

### Conclusion

For the foregoing reasons, the United States respectfully requests that summary

judgment be entered in its favor and that the Court enter an order declaring the right-of-way

abandoned and quieting title to the right-of-way in the United States.[9]

---

[8] In a marked departure from *Marshall*, the United States Court of Appeals for the Federal Circuit has opined that the vesting in the United States of reversionary rights in an abandoned railroad established under the 1875 Act has effected a taking of the reversionary rights of property owners who were owners of land patented subject to the right-of-way. *Hash v. United States*, 403 F.3d 1308 (Fed. Cir. 2005). The *Hash* court found that the reversionary rights transferred to the underlying landowner upon patenting. Under this ruling, the United States would not own the reversionary right and, as a result, the conversion of the right-of-way to trail uses would effect a compensable taking. This rationale has been followed by several other recent decisions of the Court of Federal Claims. *See, e.g., Beres v. United States*, 64 Fed.Cl. 403 (2005); *Blendu v. United States*, 75 Fed. Cl. 543 (2007); *Phillips v. United States*, 2007 U.S. Claims LEXIS 213; 2007 WL 1991435 (Fed.Cl.). These decisions directly conflict with the analysis adopted by the Tenth Circuit, discussed above. In any event, in this case the issue of title and the issue of taking have been bifurcated and the taking issue has been stayed. *See* Order on Initial Pretrial Conference. It is worth noting that *Hash* and its progeny do not question the fact that title vests in the United States under the terms of the National Trails System Act.

[9] Regardless of how the Court decides the issue of reversionary interests in the right-of-way, the United States is undeniably entitled to a declaration of abandonment and an order quieting title in the United States for all portions of the right-of-way which traverse only lands owned by the United States. This includes the area of public land administered by the BLM and all the National Forest lands where private landowners have no interest in the land underlying the right-of-way. In the Mountain Home area, this includes the lands underlying

Respectfully submitted this 10th day of October, 2007.

JOHN R. GREEN
Acting United States Attorney

By:

Carol A. Statkus
Digitally signed by Carol A. Statkus
DN: cn=Carol A. Statkus, c=US, o=U.S.
Attorney's Office, ou=Assistant United States
Attorney
Date: 2007.10.10 17:32:35 -06'00'

CAROL A. STATKUS
NICHOLAS VASSALLO
Assistant United States Attorneys

---

the right-of-way described as the N2SE4SE4 of section 17, Township 12 North, Range 78
West, 6th Principal Meridian, Albany County, Wyoming, containing 2.5 acres, more or less,
which were acquired by the United States by deeds dated January 25, 2006 (See Exhibits 1
and 2).

-16-

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2007, I served the foregoing *UNITED STATES' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON ITS CLAIMS FOR A JUDICIAL DECLARATION OF ABANDONMENT AND AN ORDER QUIETING TITLE IN FAVOR OF THE UNITED STATES* upon the following by the methods indicated below:

Charles Michael (Steve) Aron     [   ] By Facsimile
Aron and Henning, LLP       [   ] By U.S. Mail - postage prepaid
1427 North Fifth Street, Suite 201    [   ] By Hand Delivery
Laramie, WY 82072        [   ] By Overnight Courier
cma@a-hlaw.com        [X] By Electronic Filing
*Attorney for Lawrence and Ginny Otterstein*

William Perry Pendley      [   ] By Facsimile
Joshua D. McMahon       [   ] By U.S. Mail - postage prepaid
Mountain States Legal Foundation   [   ] By Hand Delivery
2596 South Lewis Way      [   ] By Overnight Courier
Lakewood, CO 80227       [X] By Electronic Filing
wppendley@mountainstateslegal.com

*Attorney for Marvin M. Brandt*

Richard C. Bohling       [   ] By Facsimile
Albany County Attorney's Office    [   ] By U.S. Mail - postage prepaid
525 Grand Avenue, Suite 304     [   ] By Hand Delivery
Laramie, WY 82070        [   ] By Overnight Courier
rbohling@co.albany.wy.us      [X] By Electronic Filing
*Attorney for Albany County Commissioners*

James P. Schermetzler      [   ] By Facsimile
Albany County Attorney's Office    [   ] By U.S. Mail - postage prepaid
525 Grand Avenue, Suite 100     [   ] By Hand Delivery
Laramie, WY 82070        [   ] By Overnight Courier
jschermetzler@co.albany.wy.us    [X] By Electronic Filing
*Attorney for Albany County Commissioner*

Karen J.Budd-Falen                                    [ ] By Facsimile
Brandon Lee Jensen                                    [ ] By U.S. Mail - postage prepaid
Budd-Falen Law Offices LLC                            [ ] By Hand Delivery
P.O. Box 346                                          [ ] By Overnight Courier
Cheyenne, WY 82003-0346                               [X] By Electronic Filing
main@buddfalen.com
*Attorney for Roger L. Morgan;*
*Marilyn & David Yeutter; and Ronald B. and*
*Helen D. Yeutter*

Philip A. Nicholas                                    [ ] By Facsimile
Anthony, Nicholas, Goodrich & Tangeman                [ ] By U.S. Mail - postage prepaid
P.O. Box 928                                          [ ] By Hand Delivery
Laramie, WY 82073                                     [ ] By Overnight Courier
nicholas@wyolegal.com                                 [X] By Electronic Filing
*Attorney for Daniel & Susan McNierney and*
*Breazeale Revocable Trust*

Theodore C. Preston                                   [ ] By Facsimile
Prehoda, Leonard & Hanack, LLC                        [ ] By U.S. Mail - postage prepaid
P.O. Box 789                                          [ ] By Hand Delivery
Laramie, WY 82073-0789                                [ ] By Overnight Courier
tpreston@laramielaw.com                               [X] By Electronic Filing
*Attorney for Patrick R. and Lynda L. Rinker;*
*and Patricia A. Rinker Flanigin*
*DuWayne & Elizabeth Keeney*
*Kenneth R. Lankford Sr.*
*Kenneth R. Lankford, II*

Mason F. Skiles                                       [ ] By Facsimile
Skiles & Rodriguez                                    [X] By U.S. Mail - postage prepaid
502 South 4th Street                                  [ ] By Hand Delivery
Laramie, WY 82070                                     [ ] By Overnight Courier
*Attorney for Gary & June Williams and*               [ ] By Electronic Filing
*Edmund L. and Donna Ellen Gruber*

| | |
|---|---|
| Gay Vanderpoel Woodhouse | [ ] By Facsimile |
| Gay Woodhouse Law Office | [ ] By U.S. Mail - postage prepaid |
| 211 West 19th Street, Suite 308 | [ ] By Hand Delivery |
| Cheyenne, WY 82001 | [ ] By Overnight Courier |
| gaywoodhouselaw@aol.com | [X] By Electronic Filing |
| *Attorney for Donald & Wanda Graff* | |

| | |
|---|---|
| Karl Morell | [ ] By Facsimile |
| Ball Janik, LLP | [ ] By U.S. Mail - postage prepaid |
| 1455 F Street N.W., Suite 225 | [ ] By Hand Delivery |
| Washington, D.C. 20005 | [ ] By Overnight Courier |
| kmorell@dc.bjllp.com | [X] By Electronic Filing |
| *Attorney for Wyoming & Colorado Railroad Company, Inc.* | |

| | |
|---|---|
| Juan and Susan Torres | [ ] By Facsimile |
| 3513 Linestone Court | [X] By U.S. Mail - postage prepaid |
| Fort Collins, CO 80525 | [ ] By Hand Delivery |
| | [ ] By Overnight Courier |
| | [ ] By Electronic Filing |

| | |
|---|---|
| Bunn Family Trust | [ ] By Facsimile |
| Debra R. Hinkel, Trustee | [X] By U.S. Mail - postage prepaid |
| P.O. Box 1010 | [ ] By Hand Delivery |
| Laramie, WY 82073 | [ ] By Overnight Courier |
| | [ ] By Electronic Filing |

| | |
|---|---|
| Ralph L. Lockhart | [ ] By Facsimile |
| P.O. Box 36 | [X] By U.S. Mail - postage prepaid |
| Laramie, WY 82073 | [ ] By Hand Delivery |
| | [ ] By Overnight Courier |
| | [ ] By Electronic Filing |

| | |
|---|---|
| Duane and Patricia King | [ ] By Facsimile |
| 1802 Arnold Street | [X] By U.S. Mail - postage prepaid |
| Laramie, WY 82070 | [ ] By Hand Delivery |
| | [ ] By Overnight Courier |
| | [ ] By Electronic Filing |

| | |
|---|---|
| Marilyn Flint and Marjorie Secrest<br>17200 West Bell Road, Lot 2146<br>Surprise, AZ 85374 | [  ] By Facsimile<br>[X] By U.S. Mail - postage prepaid<br>[  ] By Hand Delivery<br>[  ] By Overnight Courier<br>[  ] By Electronic Filing |
| Glenna Louise Marrs Trust<br>Glenna Marrs and Rondal Wayne, Trustees<br>376 Gilmore Gulch<br>Laramie, WY 82070 | [  ] By Facsimile<br>[X] By U.S. Mail - postage prepaid<br>[  ] By Hand Delivery<br>[  ] By Overnight Courier<br>[  ] By Electronic Filing |
| Snowy Range Properties, LLC<br>1148 State Highway 11<br>Laramie, WY 82070 | [  ] By Facsimile<br>[X] By U.S. Mail - postage prepaid<br>[  ] By Hand Delivery<br>[  ] By Overnight Courier<br>[  ] By Electronic Filing |
| Ray L. Waits<br>8736 S. Carr Street<br>Littleton, CO 80128-6914 | [  ] By Facsimile<br>[X] By U.S. Mail - postage prepaid<br>[  ] By Hand Delivery<br>[  ] By Overnight Courier<br>[  ] By Electronic Filing |
| Michael and Sally Palmer<br>715 S. 11th Street<br>Laramie, WY 82070 | [  ] By Facsimile<br>[X] By U.S. Mail - postage prepaid<br>[  ] By Hand Delivery<br>[  ] By Overnight Courier<br>[  ] By Electronic Filing |
| Robert S. and Dorothy M. Pearce<br>David M. Pearce, Steve M. Pearce and<br>Kathlynn A. Lambert<br>2990 Plateau Drive<br>Salt Lake City, UT 84109 | [  ] By Facsimile<br>[X] By U.S. Mail - postage prepaid<br>[  ] By Hand Delivery<br>[  ] By Overnight Courier<br>[  ] By Electronic Filing |

Steven P. And Janis A. Taffe                [  ] By Facsimile
4062 Hwy 230                                [X] By U.S. Mail - postage prepaid
Laramie, WY 82070                           [  ] By Hand Delivery
                                            [  ] By Overnight Courier
                                            [  ] By Electronic Filing


Billy M. and Tobin L. Ratliff              [  ] By Facsimile
719 South 4th Street                       [X] By U.S. Mail - postage prepaid
Laramie, WY 82070                          [  ] By Hand Delivery
                                           [  ] By Overnight Courier
                                           [  ] By Electronic Filing


**Kelli R. Kozeal**  Digitally signed by Kelli R. Kozeal
DN: cn=Kelli R. Kozeal, o=US, o=U.S.
Attorney's Office, ou=Legal Assistant
Date: 2007.10.10 17:32:54 -06'00'

Kelli R. Kozeal
For the United States Attorney's Office