# EXHIBIT 3

JOHN R. GREEN
Acting United States Attorney
CAROL A. STATKUS
NICHOLAS VASSALLO
Assistant United States Attorneys
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone:  307-772-2124
Facsimile:  307-772-2123
carol.statkus@usdoj.gov
nick.vassallo@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No.  06-CV-0184J |
| | ) | and |
| | ) | |
| WYOMING AND COLORADO | ) | Consolidated Case No. 06-CV-171J |
| RAILROAD COMPANY, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' REPLY BRIEF

The United States, by and through the Acting United States Attorney for the District

of Wyoming and Assistant United States Attorneys Carol A. Statkus and Nicholas Vassallo,

submits its reply brief in this matter as follows:

1

I.    **UPON   JUDICIAL   DECLARATION   OF   ABANDONMENT,   THE
REVERSIONARY INTEREST IN THE RAILROAD RIGHT-OF-WAY VESTS
IN THE UNITED STATES.**

Brandt's arguments concerning title to the railroad right-of-way should be rejected.

Brandt urges this Court to follow the reasoning of the Court of Federal Claims in *Beres v.*

*United States*, 64 Fed.Cl. 403 (2005) and the Federal Circuit in *Hash v. United States*, 403

F.3d 1308 (Fed. Cir. 2005), and he argues that the United States "offers no explanation as to

why this Court should not adhere to those decisions." Brandt response brief at 1. Actually,

the United States has provided the Court with at least two compelling reasons not to follow

*Beres* and *Hash*. First, the Court should not follow those decisions because they are in direct

conflict with controlling authority of the Tenth Circuit. Second, the Court should not follow

*Beres* and *Hash* because they are wrongly decided.

While *Beres* and *Hash* represent one line of authority, the Tenth Circuit has adopted

a contrary position. The *Beres* court recognized this, discussing the Tenth Circuit's *Marshall*

decision and then declining to follow it. The Beres court summarized *Marshall* as follows:

> In *Marshall v. Chicago and Northwestern Transportation Company*, 31
> F.3d 1028 (10th Cir. 1994), the court also applied 43 U.S.C. § 912 to the 1875
> Act. In *Marshall*, the right-of-way granted to the railroad company through
> public land occurred in 1905 under the 1875 Act, and the United States Court
> of Appeals for the Tenth Circuit wrote:

2

> In this regard, we note that the statute [43 U.S.C. § 912] is designed to cover the situation where the United States grants a railroad company a right-of-way over public lands and thereafter conveys or purports to convey to another "the whole of the legal subdivision or subdivisions traversed or occupied by such railroad or railroad structures . . . " That would, to us, appear to cover the instant case.

*Marshall v. Chicago and N.W. Transp. Co.*, 31 F.3d at 1032.

> The landowners in *Marshall* argued that, by its own terms, 43 U.S.C. § 912 applied only when the United States had some "right, title, interest and estate" in the underlying land which could revert to the patentee of that servient estate, and that in its land patent to Marshall's predecessor in interest, the United States had retained no interest in the land, other than in the minerals. Id. at 1032. The Tenth Circuit rejected the argument, also offered by the plaintiffs in this case, that the United States retained no reversionary interest when the government subsequently patents land to a private or other party after previously granting a railroad right-of-way over that land, because 43 U.S.C. § 912, as modified by 16 U.S.C. § 1248(c), applies to rights-of-way granted under the 1875 Act, as well as the earlier acts that granted land to railroads for railroad purposes.

*Beres*, 64 Fed. Cl. at 424.  The *Beres* court then went on to disagree with the Tenth Circuit's

*Marshall* analysis.  *Id.* at 425-29.  By asking this Court to follow *Beres* instead of *Marshall*,

Brandt is urging this Court to overrule a higher court, the Tenth Circuit.  This Court should,

of course, decline that invitation.  If Brandt wishes to have *Marshall* overruled, he should

address that argument to the Tenth Circuit.

3

In addition, the *Beres* and *Hash* decisions should not be followed by this Court because their analysis is flawed. Both cases fail to explain how the United States could direct several alternative dispositions of abandoned rights-of-way in the 1922 Act if it had no reversionary interest in those rights-of-way. The *Beres* and *Hash* courts thus purport to do what the Tenth Circuit said it would *not* do in *Marshall,* which is to "render null" 43 U.S.C. §§ 912, 913 and 316. *Marshall, supra* at 1032 (quoting *Oregon Short Line, supra,* at 212-213).

Brandt continues to argue that the United States retained no interest in 1875 Act rights-of-way. In *Marshall* , however, the Tenth Circuit clearly and unequivocally adopted the conclusion, first stated in *Oregon Short Line,* that 43 U.S.C. §912 "was specifically enacted to dispose of the United States' interests in 1875 Act rights-of-way." *Marshall,* 31 F.3d at 1032. The Tenth Circuit in *Marshall* also adopted the conclusion that "Congress clearly felt that it had some retained interest in railroad rights-of-way." *Id.*

Brandt describes as "inapposite" the Tenth Circuit's observation, in *Phillips Company v. Denver & Rio Grande Western RR Co.,* 97 F.3d 1375 (10th Cir. 1996), that "once Section 1248(c) had been enacted, the reversionary interest was held by the United States." Brandt response at 6-7. Brandt argues that Section 1248(c) does not provide a federal reversionary interest here because, according to Brandt, the United States "possessed no interest" in the

4

right-of-way when Section 1248(c) was enacted in 1988. This premise is faulty. As explained at pp. 11-16 of the United States' responsive brief, the United States did not convey away its reversionary interest when it issued the patent to Brandt's predecessor in 1976. In *Marshall*, the Tenth Circuit expressly rejected the argument Brandt makes here, and ruled that Section 912 applied to an 1875 Act right-of-way even where the patent did not include an explicit reservation of the right-of-way in favor of the United States. The Tenth Circuit stated: "[C]ounsel argues . . . the statute has effect only if the United States has some 'right, title, interest and estate' in the lands in question, and that in its patent to Marshall's predecessor in interest the United States retained no interest of any sort, other than minerals. We do not read the statute as counsel does." *Marshall*, 31 F.3d at 1032. Thus, under the Tenth Circuit's analysis, Section 912 directs the disposition of the right-of-way here regardless of how one interprets the 1976 patent. Section 912, as amended by Section 1248(c) in 1988, directs that the right-of-way vests in the United States upon entry of a judicial decree of abandonment.[1]

---

[1] In *Marshall*, the patents apparently made no mention at all of the railroad right-of-way (see Attachments A and B to this brief, which were obtained from this Court's file in the *Marshall* case), yet the Tenth Circuit still ruled that disposition of the right-of-way was controlled by Section 912 because that statute was "designed to cover the situation where the United States grants a railroad company a right of way over public lands and thereafter conveys or purports to convey to another 'the whole of the legal subdivision or subdivisions traversed or occupied by such railroad or railroad structures.'" *Marshall*, 31 F.3d at 1032. Here, the argument that Section 912 (as amended by Section 1248(c)) governs the disposition of the

In its opening brief, the United States pointed out that the Tenth Circuit, in *Nicodemus v. Union Pacific Corporation,* 440 F.3d 1227(10th Cir. 2006), expressly recognized that, by virtue of 16 U.S.C. § 1248(c), abandoned railroad rights-of-way which formerly reverted to landowners under 43 U.S.C. § 912 now "revert back to the United States, not adjacent private landowners." Brandt argues that the Tenth Circuit was only referring to railroad grants made under the Act of 1862. Brandt response at 9. Brandt's reading of *Nicodemus* is far too narrow. As the Tenth Circuit explained, the *Nicodemus* defendant, Union Pacific, "was granted railroad rights-of-way over Plaintiffs' property under numerous federal land-grant statutes, which dated from 1852 to 1875." *Id.* at 1233 (emphasis supplied). The court stated:

> The statutes at issue granted to Union Pacific the right to construct a railroad and telegraph line in order to "secure the safe and speedy transportation of the mails, troops, munitions of war, and the public stores" to the West. *See, e.g.,* Act of July 1, 1862, ch. 120, § 3, 12 Stat. 489. Under subsequently enacted statutes, the United States has a reversionary interest in the lands when no longer used for their designated purposes. *See* 43 U.S.C. §§ 912, 913 and 16 U.S.C. § 1248(c). Thus, the government has a direct interest in the determination of property rights granted to the railroad.

*Nicodemus,* 440 F.3d at 1236 (emphasis supplied). As the quoted language indicates, while the court referred to the 1862 Act as an example of one of the land-grant statutes at issue (as

---

abandoned right-of-way is even stronger than in *Marshall,* because here the patent *does* mention the railroad's interest and expressly provides that the conveyance is "subject to" that interest.

indicated by the use of the term "*e.g.*"), the court's discussion applies to the "statutes at issue." *Id.* (emphasis supplied). The "statutes at issue" in *Nicodemus*, as noted above, were the "numerous federal land-grant statutes, which dated from 1852 to 1875." *Id.* at 1233 (emphasis supplied). Thus, the court's recognition of a federal reversionary interest was not limited to 1862 Act rights-of-way. This is not surprising, as the Tenth Circuit had already observed in prior decisions (*Marshall* and *Phillips*) that the United States has a reversionary interest in 1875 Act rights-of-way and that under Section 1248(c), that interest no longer passed to adjacent landowners but rather to the United States.

Brandt further argues that this Court should disregard the Tenth Circuit's analysis in *Nicodemus* because "[t]he issue in *Nicodemus* is purely jurisdictional." This argument misses the mark. Granted, the issue before the Tenth Circuit in *Nicodemus* was one of subject-matter jurisdiction, but the court resolved the jurisdictional issue by interpreting the substantive effect of the "numerous federal land-grant statutes" at issue (which included the 1875 Act.) Brandt's attempt to distinguish *Nicodemus* is unpersuasive.

Brandt quotes language from a House Report regarding Section 912 which, he argues, supports his position. The quoted language includes the following statement:

> It seemed to the committee that such abandoned or forfeited strips are of little
> or no value to the Government and that in case of lands in the rural
> communities they ought in justice to become the property of the person to

> whom the whole of the legal subdivision had been granted or his successor in
> interest.

H.R. Rep. No. 217 at 1-2. Rather than suggesting that no federal reversionary interest

existed, these comments merely represent a justification for disposing of the federal

reversionary interest. As discussed elsewhere, Section 912 also provided for alternative

dispositions of the rights-of-way under which they did <u>not</u> go to the adjacent landowners.

If there was no federal reversionary interest, Congress would not have been able to make

those choices.

Finally, Brandt again argues that the 1988 Act cannot apply here because it would

have a "retroactive effect" on the 1976 patent. Again, Brandt relies on *Beres* for this

argument. As noted above, the *Beres* analysis is incompatible with, and in fact rejects, the

jurisprudence of the Tenth Circuit. Under Tenth Circuit precedent, there is no retroactive

effect because the United States always had control over, and the ability to direct the

disposition of, its reversionary interest. Moreover, it is questionable whether even the *Beres*

court would describe the federal reversion in this case as a "retroactive" event. The land

patent in *Beres* was issued in 1892, thirty years before Section 912 was enacted. The *Beres*

court evidently found this significant, stating that

> all of these explanations included in statutes and cases which acknowledge a
> reversionary interest in the United States occurred after the United States had

issued a land patent to Mr. Cowie in 1892.  If these subsequent statutory directions or court interpretations were to be followed, they would retroactively impact the property rights Mr. Cowie thought he had obtained, based upon a reasonable, contemporaneous understanding of the 1875 Act and the land patent issued to him.

*Beres*, 64 Fed.Cl. at 425.  In contrast to the patentee in *Beres*, Brandt's predecessor received

his patent in 1976, more than half a century after Congress expressed its view in Section 912

that it could direct the disposition of reversionary interests in the rights-of-way.

Accordingly, there is no retroactivity issue even under the analysis employed by the *Beres*

court.

## II.   TITLE TO THE EASEMENTS FOR FOREST ROADS 512 AND 517, WHICH WERE RESERVED BY THE UNITED STATES IN THE PATENT, SHOULD BE QUIETED IN THE UNITED STATES.

### A.   Forest Development Road 517 is not, and never has been, part of Brandt's counterclaim and Brandt's unexplained attempt to insert a new claim relating to that road at the late stages of briefing should be disallowed as both untimely and futile.

In his original counterclaim, Brandt sought quiet title to a .2 mile segment of Forest

Development Road ("FDR") 512 through Fox Park.   Answer and Counterclaims of

Defendant Marvin M. Brandt, Second Counterclaim for Quiet Title ¶ 14 (August 8, 2006).

In his amended counterclaim, Brandt has sought quiet title to "the section of Forest Service

Road 512 that crosses the [Brandt] Trust's property."   First Amended Answer and

Counterclaims of Marvin M. Brandt, Second Counterclaim ¶ 14 (October 1, 2007); see also

¶ 15.   Since FDR 512 through Fox Park is more than .2 miles long, the amended counterclaim expanded Brandt's original claim.   However, both versions of Brandt's counterclaim pertained only to FDR 512.

Now, in his response brief on cross-dispositive motions, for the first time, Brandt tries to add another road and another easement reserved in the patent to the United States for that road - namely, Forest Development Road ("FDR") 517- to his counterclaim.   See Brandt's response brief at 16-18.   Brandt did not raise a claim pertaining to FDR 517, even though he had more than a year to do so between the filing of his original counterclaim in August 2006 and his amended counterclaim in October 2007.   There is *no* claim whatsoever pertaining to FDR 517 in Brandt's amended counterclaim.   Brandt has filed no motion under Fed. R. Civ. P. 15 to amend the pleadings.   Brandt has offered no explanation for the delay in asserting a claim pertaining to FDR 517.   FDR 517 is not part of the 1996 decision memo or the 1997 road closure order which pertained only to FDR 512.   See attached Second Declaration of Clinton D. Kyhl ("Second Kyhl Declaration") ¶ 4.   FDR 517 has been continually open to public use. *Id.*

Under these circumstances, it is both untimely and futile for Brandt to amend to add a claim regarding FDR 517 and his attempt to amend in his response brief (and any reply brief) should be stricken.   See *Foman v. Davis,* 371 U.S. 178, 182 (1962) (A district court

may deny a motion to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment."); see also *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) (Denial of leave to amend is appropriate based solely on untimeliness where the party requesting the addition of new claims has no adequate explanation for the delay.)[2]

**B.    The patent does not provide that the easements for both forest roads 512 and 517 terminate in their entirety if a condition for termination is met on a segment of one of those roads.**

Brandt argues that termination of the easements for both roads - FDR 512 and 517 - can be accomplished through Forest Service action limited to a segment of one of the roads and states that the proviso language of the patent supports this argument.   See Brandt's response brief at 15-16.  First of all, on its face, that argument makes no sense.  If applied, it would work a forfeiture of two entire road easements, reserved separately in the patent, if the Court were to find, for example, that the Forest Service did not use a small segment of one of the roads for a five-year period.   Secondly, the proviso language of the patent does

_____

[2]In *Smith,* the Tenth Circuit also stated that the court expected a formal motion to amend the pleadings if a party wanted to add entirely new claims to their case, citing prior Tenth Circuit authority for the proposition that "normally a court need not grant leave to amend when a party fails to file a formal motion."  462 F.3d at 1285.  Brandt's failure to follow the proper procedure is another reason to prohibit a new claim at this juncture.

not support that argument. A careful reading of the proviso language shows that if one of the conditions for termination were met as to a segment of road, the easement as to that segment only would be terminated -- not the *entire* road easement and not *both* road easements.

Brandt's argument is based on too broad a reading of the patent -- something federal law does not allow. Brandt must realize the law does not support this argument because, in making it, he cites absolutely no law to the court in support of it.

The fact is that federal land grants are construed differently than property transactions between private parties. In transactions between private parties, instruments that affect real property rights are construed against the drafter. This is just the opposite of the rule of construction that applies to public land grants. Federal land grants are construed in favor of the United States -- the grantor and drafter of those grants. In addition, Federal land grants are strictly, not broadly, construed.

> In interpreting grants of land by the government,
> intent of the government is a prominent consideration,
> and the language of the grants is to be strictly construed.

*Delaware Nation v. Commonwealth of Pennsylvania*, 446 F.3d 410, 418 (3d Cir. 2006)(citation omitted).

Where the terms of the land patent are unambiguous, there is no need to look beyond

the four corners of the patent. See *id.* at 418-19. And, any ambiguities in a public land grant are, as a general rule, resolved strictly against the grantee and in favor of the government. 3 Norman J. Singer, Sutherland Statutory Construction § 64:7 at 357-58 (6th ed. 2001 rev.). A grantee cannot claim a broader meaning than was expressed or necessarily implied in the grant. See *id.* at 359.

The United States, in the Federal land patent issued to Brandt's predecessors in interest, reserved access rights across Fox Park through two separately described road easements. The length of each of the two road easements across Fox Park is set forth separately in the patent. The United States clearly intended to retain access rights across Fox Park over two different roads. The United States did not intend to lose those access rights over both roads in their entirety based on action that might affect a part of one of the roads. The language of the patent, strictly construed in favor of the United States as the law requires, so indicates.[3] Action regarding a segment of one of the roads, under the language of the patent, would affect an easement only as to that particular segment. Brandt's argument

---

[3]The pertinent part of the patent reads logically as follows: "[I]f for a period of five years the United States or its assigns, shall cease to use any segment [of the roads]; or if at any time the Regional Forester determines that . . . any segment [of the roads] is no longer needed for the purposes reserved, the easement traversed [by the segment] shall terminate.

to the contrary must fail.[4]

**C.    The District Ranger's October 1996 re-route decision did not terminate the easement(s).**

Brandt argues that the District Ranger's 1996 decision memo, as ratified by the Forest Supervisor's 1997 Travel Management Order, satisfied a condition of termination in the patent for FSR 512 and FSR 517.  Brandt's response brief at 18, 20.  As set forth in Section A above of this brief, FDR 517 has not been, is not now, and in the future cannot be a part of this case for a number of reasons.  In addition, the District Ranger's 1996 decision memo and the Forest Supervisor's 1997 Travel Management Order do not pertain to FDR 517 at all.  Brandt simply has no claim pertaining to FDR 517 based on these actions.

The United States' position regarding these actions is that through them the Forest Service officials involved (the District Ranger and the Forest Supervisor) could close the segment of FDR 512 through Fox Park and re-route traffic around Fox Park but could not terminate the easement for that road reserved to the United States in the patent.  See attached Declaration of Rick D. Cables ("Cables Declaration") ¶¶ 3, 4.

Rick D. Cables is Regional Forester of the United States Forest Service, Rocky

_____

[4]Of course, as the United States has argued throughout its briefing, the government maintains that the conditions for termination have not been met for the whole or for any part of either road.

Mountain Region.  He states:

> [T]here are no implied authorities within the Forest Service to dispose of any Federal real property interest.
>
> Where rights-of-way are reserved in the United States in federal land patents with provisions for termination by the Regional Forester when no longer needed for public purposes, those termination authorities have not been delegated to Forest Supervisors or District Rangers.  A decision  to terminate a right-of-way is reserved to the regional office so that broader policy implications and regional needs may be considered above the exigencies and conveniences of a local management situation.

*Id.*

In the present case, a determination to terminate because the road easement for FDR 512 through Fox Park was "no longer needed for the purposes reserved," by the unambiguous language of the patent, could only be made by the Regional Forester, and the Regional Forester never made such a determination.   The termination authority held by the regional office alone, for important reasons, has not been delegated down to the local forest level.  See Cables Declaration, *supra.*

Brandt cites no law to the court for the proposition that a District Ranger or Forest Supervisor has delegated authority to terminate a federal property right reserved to the United States in a federal land patent.  He cites a Forest Service handbook provision giving a Forest

Supervisor authority to close or restrict the use of forest development roads, Brandt's response brief at 20, but the United States has already acknowledged such authority.[5] But, action by the Forest Supervisor to close a road does not, as Brandt argues it does, equate to action by the Regional Forester to terminate a real property right reserved to the United States in a federal land patent.   In arguing that action by the Forest Supervisor to close a segment of FDR 512 satisfies the patent requirement of action by the Regional Forester to terminate the easement, Brandt cites inapplicable law to the court. He cites a Wyoming case, *Collins v. Finnell,* 29 P. 3d 93, 100 (Wyo. 2001), for the proposition that ambiguity in a contract is construed against the drafter of the agreement. Brandt's response brief at 20-21.

   First of all, the land patent is not at all ambiguous on the matter of whose action within the Forest Service hierarchy is required for termination.   The patent specifically states not once, but twice, that such a decision is for the Regional Forester.   Second of all, the applicable legal principle is provided by federal law, not state law, and it is precisely the

_____

   [5]The United States' opening brief on the FDR 512 issue at pages 10-11 states in pertinent part:   "The 1997 order [of the Forest Supervisor] is *prima facie* evidence of the United States' continuing ownership of the reserved road right-of-way.   Had the road been abandoned in 1996, the Forest Supervisor would have had no jurisdiction to close the road [quoting and citing the regulation at 36 C.F.R. § 261.50(b) giving authority to the Forest Supervisor to close or restrict use of forest system roads within areas over which he has jurisdiction].   Instead, the Supervisor did have jurisdiction and closed the road to public traffic,..."

16

reverse of the state law rule pertaining to private property transactions. 3 Norman J. Singer,

Sutherland Statutory Construction § 64:7 at 357-59 (6th ed. 2001 revision) (Any ambiguities

in a public land grant are, as a general rule, resolved strictly against the grantee and in favor

of the government and "this is just the reverse of the rule controlling the construction of

grants or conveyances by private grantors"). *See also Delaware Nation v. Commonwealth*

*of Pennsylvania*, 446 F.3d at 418.  Under the rule of construction that requires federal land

grants to be strictly construed in favor of the government, it is clear that the condition for

termination based on action by the Regional Forester, expressly required by the patent, has

not occurred, and the easement for FDR 512 reserved to the United States in the patent

remains in existence.

> **D.    There has been no termination from non-use.**

Brandt has tried in vain to create a factual dispute on the use/non-use of the part of

FDR 512 that crosses Fox Park in order to preclude the issuance of summary judgment in the

United States' favor with respect to the road easement matter.  In his second declaration, filed

with his response brief, Brandt disputes some of the entries Mr. Orde stated in his declaration

he made for the Forest Service on FDR 512 within Fox Park Estates during the relevant time

period.  *Compare* Second Declaration of Marvin M. Brandt, ¶¶ 3, 4 *with* Declaration of

Curtiss J. Orde, ¶¶ 7, 8.  However, even if this were to create a genuine factual

17

dispute as to those entries, which the United States doubts,[6] Brandt does not dispute the vast majority of the entries, including numerous patrols, listed by Orde.  Since the undisputed entries show that there was continuous use by the Forest Service and that there was no five-year period after 1996 when there was no use, summary judgment in the United States' favor is appropriate.

Moreover, Brandt's hyperbole defeats his credibility on this issue.  For example, Brandt's response brief at page 24, states: "Because the Forest Service obliterated and closed a portion of one of the roads over the Trust's Property, for one to travel that segment would require an off-road adventure through the existing tall grasses and over, or around, the trees planted by the Forest Service."   One look at the photographs submitted with the attached Declaration of Casey B. Hull ("Hull Declaration") reveals that Brandt does not have his facts straight.  The road remains visible, level, and free of permanent obstructions.  See Hull Declaration ¶¶ 6, 14, Exhibits A & B (photographs).  Another example of overstatement is Brandt's response brief, also at page 24, where Brandt describes the subject road as "now non-existent."  The Forest Service physically altered only .1 mile of FDR 512 through Fox

_____

[6]*See, e.g., Argo v. Blue Cross and Blue Shield of Kansas,* 452 F.3d 1193, 1199-2001 (10th Cir. 2006). (statements of mere belief in an affidavit must be disregarded by the Court under the personal knowledge standard and a self-serving affidavit is insufficient to defeat summary judgment).

Park at the north end.  Hull Declaration ¶ 7.  A 1/10th mile segment is 528 feet in length whereas the whole segment of FDR 512 through Fox Park, according to the patent, is 1825 feet in length -- meaning the physically altered section was less than one-third of that road and the road remained useable and used.

In addition, Brandt has said nothing in his declarations about FDR 517 and the Second Kyhl Declaration makes clear that the part of FDR 517 which crosses Fox Park has been continually used by the public and was not the subject of the 1996 decision memo, the 1997 road closure order, or any similar Forest Service action.

In sum, there has been no termination from non-use, and summary judgment in the United States' favor on that issue remains appropriate because Brandt has raised no genuine issue of material fact precluding it.

E.    **Exercising jurisdiction over FDR 512 through Fox Park, the United States closed that road, a decision which is rescindable:  the United States did not abandon the easement for that road.**

The United States has already responded to Brandt's abandonment argument in its response brief.  The United States argued that the patent specified the two ways, and the only two ways, the road easement (or any segment of it) could cease to exist: the patent set forth precisely the two conditions that could constitute abandonment of the easement (or any segment of it) by the United States.  The United States also pointed out how the *Mueller* case

19

which Brandt relies on, even assuming *arguendo* it were to be applied, helps the United States' cause here, not Brandt's. *See* United States' response brief at 19-20.

In *Mueller,* the Wyoming Supreme Court said the burden to show abandonment of a road easement is high and the evidence must be strong and convincing. 887 P.2d at 506. The Court looked for evidence of permanent obstructions (buildings/structures) placed by the easement holder in the roadway. 887 P.2d at 505. Even though crops had been planted, fencing put up, and a well drilled –all within the road easement – and an alternate access route used, the Wyoming Supreme Court in *Mueller* did not find that a road easement had been abandoned.[7] See *id.*

Casey Hull, a long-time road crew foreman for the Forest Service, states that "[n]o rocks or other obstacles were placed on the closed section of the road." Hull Declaration ¶ 6. He says that the road had never been paved with concrete or asphalt, is still visible on the ground, and that if the wood barricades were removed, it could be easily re-opened and used.

---

[7]Brandt argues that the 1996 decision memo, 1997 road closure order, and "actions obliterating a portion of FSR 512" are the requisite evidence of abandonment. Brandt's response brief at 32. The United States disagrees. Each of those three events pertained to a different segment of FDR 512 through Fox Park. The 1996 decision memo pertained to .2 miles of it. The 1997 road closure order pertained to the entire segment (about a .33 mile stretch). The Forest Service physically altered only .1 mile of it. Three disparate events, pertaining to three different parts of FDR 512 through Fox Park, are not strong and convincing evidence of abandonment of the easement.

*Id.* ¶¶ 5, 6.  Hull further states that only a .1 mile segment of FDR 512 through Fox Park was physically altered by the Forest Service.  The rest of the road remained unchanged and open. *Id.* ¶ 7.  According to Hull, it is a common practice for the Forest Service to close roads on national forests. *Id.* ¶ 10.  "On the National Forests, there are five levels of maintenance for roads ranging from Level 1, which is essentially a closed road, to Level 5 which are normally double lane paved facilities . . . On the Laramie District of the Medicine Bow National Forest we have over 163 miles of Level 1 roads." *Id.* ¶¶ 11, 12.  The fact that the Forest Service may close roads to public use does not mean those roads will never be used again in the future if needed.  *Id.* ¶ 10.

Attached to the Hull Declaration are photographs of the segment of FDR 512 at issue that speak for themselves.  These photographs belie Brandt's exaggerated assertions about the road, e.g., that "for one to travel that segment would require an off-road adventure through the existing tall grasses and over, or around, the trees planted by the Forest Service." Brandt's response brief at 24.  The photographs provided by road crew foreman Hull show a level road bed, some growth of grass, and a lack of permanent obstructions.  They also show a Forest Service vehicle on the subject road segment within Fox Park – nothing at all adventuresome about it.  Hull Declaration, Exhibits A & B.

In the present case, strong and convincing evidence of abandonment is lacking.

**F.     Estoppel does not lie against the United States.**

Brandt argues that the "United States is estopped from claiming a right to any right-of-way reserved in the Patent because the Trust relied upon the United States' conduct when it abandoned the right of way and acted accordingly." [8] Brandt's Opposition Brief, p. 32. Brandt argues that, in reliance on the United States' conduct, Mr. Brandt built a gate and constructed a fence.

Equitable estoppel against the government is an extraordinary remedy and the Government may not be estopped on the same terms as other litigants. *Board of County Comm'rs v. Isaac*, 18 F.3d 1492, 1498 (10th Cir. 1994). Indeed, "it is far from clear that the Supreme Court would ever allow an estoppel against the government under any set of circumstances." *DePaolo v. United States ex rel. IRS* (*In re DePaolo*), 45 F.3d 373, 376 (10th Cir. 1995); *see also FDIC v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994). In addition to the usual criteria for estoppel,[9]  to apply estoppel to the Government requires a showing

---

[8]This quote from Brandt's response brief shows Brandt is trying to bring FDR 517 into his estoppel argument.   As noted in Section A above of this brief, Brandt cannot bring a new road claim into this case at this time in this manner. In addition, none of the Forest Service actions pertaining to FDR 512, which have been discussed at length in the various briefs, had anything to do with FDR 517.   Brandt's claim regarding FDR 517 is both belated and unfounded in fact or in law.

[9]     The ordinary elements of estoppel are: (1) The party to be estopped must know the facts; (2) He must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) The latter must be ignorant of

of affirmative misconduct or concealment of a material fact. *Sweeten v. U.S. Dep't of Agriculture*, 684 F.2d 679, 682 (10th Cir. 1982); *DePaolo*, 45 F.3d at 377. Affirmative misconduct is a high hurdle for the asserting party to overcome. *Id.*

Brandt's estoppel argument fails on its face. Brandt argues only about reliance. He fails to make any mention of the "affirmative misconduct or concealment of a material fact" requirement and makes absolutely no attempt to apply that requirement to this case. Clearly, it does not and cannot apply here. There was no misconduct or concealment by the Forest Service. The agency was under no legal or equitable obligation to close the road segment through Fox Park, yet it did so at Brandt's request and did it at public expense. The Forest Service substantially fulfilled its project objectives in closing the road through Fox Park and rerouting traffic. Brandt's building the fence and gate was not consideration for the government's action, nor in detrimental reliance on it, but rather was Brandt's taking full advantage of the benefits bestowed on him by the project.

If there was any error by the Forest Service in this entire matter, it was in the District Ranger's erroneous belief that closing the road and rerouting traffic around Fox Park necessitated termination of the reserved easement, and that his re-route decision would, in

---

the true facts; and (4) He must rely on the former's conduct to his injury. *DePaolo*, 45 F.3d at 377; see also, *U.S. v. Ruby*, 588 F.2d 697, 703 (9th Cir. 1978).

fact, effect such a termination.   While that was a mistaken belief, it was not misconduct nor
concealment of material facts. "Mere negligence, delay, inaction, or failure to follow agency
guidelines does not constitute affirmative misconduct." *DePaolo,* 45 F.3d at 377; *Isaac,* 18
F.3d at 1498.

There is no evidence of an intent to deceive or conceal facts, and none occurred. The
patent's termination requirements are a matter of public record. To terminate the reserved
easement requires an action by the Regional Forester to be recorded in the county land
records. That such action did not take place was clearly ascertainable by anyone, including
Brandt. Subsequent actions by the Forest Service - i.e., using the disputed segment of FDR
512 - were done openly and in the normal course of business. *See* Orde & Winters
Declarations.

Brandt benefitted substantially from the Forest Service's actions closing the segment
of FDR 512 through Fox Park and rerouting traffic around Fox Park. He was not harmed by
the non-termination of the reserved easement, because he never had a right to termination in
the first place. Therefore, this Court should decline to apply equitable estoppel in this case.

## Conclusion

For the reasons set forth above and in the United States' summary judgment

submissions as a whole, the United States respectfully requests that summary judgment be entered in its favor and that the Court enter an order declaring the right-of-way abandoned and quieting title to the right-of-way in the United States.  The United States further requests that summary judgment be entered in its favor quieting title to the road easement, FDR 512, in the United States.[10]

Respectfully submitted this 4th day of December, 2007.


JOHN R. GREEN
Acting United States Attorney

**Carol A. Statkus**
Digitally signed by Carol A. Statkus
DN: cn=Carol A. Statkus, c=US, o=United States Attorney's Office, ou=Assistant United States Attorney
Date: 2007.12.04 08:43:30 -07'00'

By:

CAROL A. STATKUS
NICHOLAS VASSALLO
Assistant United States Attorneys

---

[10]If Brandt is allowed to raise a new claim pertaining to the portion of FDR 517 that goes through Fox Park, then title to the easement for that road reserved to the United States in the patent should also be quieted in the United States through the entry of summary judgment.

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2007, I served the Foregoing **UNITED STATES'
REPLY BRIEF** upon the following by the methods indicated below:

Charles Michael (Steve) Aron                       [ ] By Facsimile
Aron and Henning, LLP                              [ ] By U.S. Mail - postage prepaid
1427 North Fifth Street, Suite 201                 [ ] By Hand Delivery
Laramie, WY 82072                                  [ ] By Overnight Courier
cma@a-hlaw.com                                     [X] By Electronic Filing
*Attorney for Lawrence and Ginny Otterstein*

William Perry Pendley                              [ ] By Facsimile
Joshua D. McMahon                                  [ ] By U.S. Mail - postage prepaid
Mountain States Legal Foundation                   [ ] By Hand Delivery
2596 South Lewis Way                               [ ] By Overnight Courier
Lakewood, CO 80227                                 [X] By Electronic Filing
wppendley@mountainstateslegal.com
*Attorney for Marvin M. Brandt*

Richard C. Bohling                                 [ ] By Facsimile
Albany County Attorney's Office                    [ ] By U.S. Mail - postage prepaid
525 Grand Avenue, Suite 304                        [ ] By Hand Delivery
Laramie, WY 82070                                  [ ] By Overnight Courier
rbohling@co.albany.wy.us                           [X] By Electronic Filing
*Attorney for Albany County Commissioners*

James P. Schermetzler                              [ ] By Facsimile
Albany County Attorney's Office                    [ ] By U.S. Mail - postage prepaid
525 Grand Avenue, Suite 100                        [ ] By Hand Delivery
Laramie, WY 82070                                  [ ] By Overnight Courier
jschermetzler@co.albany.wy.us                      [X] By Electronic Filing
*Attorney for Albany County Commissioner*

Karen J.Budd-Falen                                  [  ] By Facsimile
Brandon Lee Jensen                                  [  ] By U.S. Mail - postage prepaid
Budd-Falen Law Offices LLC                          [  ] By Hand Delivery
P.O. Box 346                                        [  ] By Overnight Courier
Cheyenne, WY 82003-0346                             [X] By Electronic Filing
main@buddfalen.com
*Attorney for Roger L. Morgan;*
*Marilyn & David Yeutter; and Ronald B. and*
*Helen D. Yeutter*

Philip A. Nicholas                                  [  ] By Facsimile
Anthony, Nicholas, Goodrich & Tangeman              [  ] By U.S. Mail - postage prepaid
P.O. Box 928                                        [  ] By Hand Delivery
Laramie, WY 82073                                   [  ] By Overnight Courier
nicholas@wyolegal.com                               [X] By Electronic Filing
*Attorney for Daniel & Susan McNierney and*
*Breazeale Revocable Trust*

Theodore C. Preston                                 [  ] By Facsimile
Prehoda, Leonard & Hanack, LLC                      [  ] By U.S. Mail - postage prepaid
P.O. Box 789                                        [  ] By Hand Delivery
Laramie, WY 82073-0789                              [  ] By Overnight Courier
tpreston@laramielaw.com                             [X] By Electronic Filing
*Attorney for Patrick R. and Lynda L. Rinker;*
*and Patricia A. Rinker Flanigin*
*DuWayne & Elizabeth Keeney*
*Kenneth R. Lankford Sr.*
*Kenneth R. Lankford, II*

Mason F. Skiles                                     [  ] By Facsimile
Skiles & Rodriguez                                  [  ] By U.S. Mail - postage prepaid
502 South 4th Street                                [  ] By Hand Delivery
Laramie, WY 82070                                   [  ] By Overnight Courier
*Attorney for Gary & June Williams and*             [X] By Electronic Filing
*Edmund L. and Donna Ellen Gruber*

Gay Vanderpoel Woodhouse                [ ] By Facsimile
Gay Woodhouse Law Office                [ ] By U.S. Mail - postage prepaid
211 West 19th Street, Suite 308         [ ] By Hand Delivery
Cheyenne, WY 82001                      [ ] By Overnight Courier
gaywoodhouselaw@aol.com                 [X] By Electronic Filing
*Attorney for Donald & Wanda Graff*

Karl Morell                             [ ] By Facsimile
Ball Janik, LLP                         [ ] By U.S. Mail - postage prepaid
1455 F Street N.W., Suite 225           [ ] By Hand Delivery
Washington, D.C. 20005                  [ ] By Overnight Courier
kmorell@dc.bjllp.com                    [X] By Electronic Filing
*Attorney for Wyoming & Colorado Railroad*
*Company, Inc.*

Juan and Susan Torres                   [ ] By Facsimile
3513 Linestone Court                    [X] By U.S. Mail - postage prepaid
Fort Collins, CO 80525                  [ ] By Hand Delivery
                                        [ ] By Overnight Courier
                                        [ ] By Electronic Filing

Bunn Family Trust                       [ ] By Facsimile
Debra R. Hinkel, Trustee                [X] By U.S. Mail - postage prepaid
P.O. Box 1010                           [ ] By Hand Delivery
Laramie, WY 82073                       [ ] By Overnight Courier
                                        [ ] By Electronic Filing

Ralph L. Lockhart                       [ ] By Facsimile
P.O. Box 36                             [X] By U.S. Mail - postage prepaid
Laramie, WY 82073                       [ ] By Hand Delivery
                                        [ ] By Overnight Courier
                                        [ ] By Electronic Filing

Duane and Patricia King                 [ ] By Facsimile
1802 Arnold Street                      [X] By U.S. Mail - postage prepaid
Laramie, WY 82070                       [ ] By Hand Delivery
                                        [ ] By Overnight Courier
                                        [ ] By Electronic Filing

Marilyn Flint and Marjorie Secrest          [ ] By Facsimile
17200 West Bell Road, Lot 2146              [X] By U.S. Mail - postage prepaid
Surprise, AZ 85374                          [ ] By Hand Delivery
                                            [ ] By Overnight Courier
                                            [ ] By Electronic Filing


Glenna Louise Marrs Trust                   [ ] By Facsimile
Glenna Marrs and Rondal Wayne, Trustees     [X] By U.S. Mail - postage prepaid
376 Gilmore Gulch                           [ ] By Hand Delivery
Laramie, WY 82070                           [ ] By Overnight Courier
                                            [ ] By Electronic Filing


Ray L. Waits                                [ ] By Facsimile
8736 S. Carr Street                         [X] By U.S. Mail - postage prepaid
Littleton, CO 80128-6914                    [ ] By Hand Delivery
                                            [ ] By Overnight Courier
                                            [ ] By Electronic Filing


Michael and Sally Palmer                    [ ] By Facsimile
715 S. 11th Street                          [X] By U.S. Mail - postage prepaid
Laramie, WY 82070                           [ ] By Hand Delivery
                                            [ ] By Overnight Courier
                                            [ ] By Electronic Filing


Robert S. and Dorothy M. Pearce             [ ] By Facsimile
David M. Pearce, Steve M. Pearce and        [X] By U.S. Mail - postage prepaid
Kathlynn A. Lambert                         [ ] By Hand Delivery
2990 Plateau Drive                          [ ] By Overnight Courier
Salt Lake City, UT 84109                    [ ] By Electronic Filing


Steven P. And Janis A. Taffe                [ ] By Facsimile
4062 Hwy 230                                [X] By U.S. Mail - postage prepaid
Laramie, WY 82070                           [ ] By Hand Delivery
                                            [ ] By Overnight Courier
                                            [ ] By Electronic Filing

29

Billy M. and Tobin L. Ratliff                [  ] By Facsimile
719 South 4th Street                         [X] By U.S. Mail - postage prepaid
Laramie, WY 82070                            [  ] By Hand Delivery
                                             [  ] By Overnight Courier
                                             [  ] By Electronic Filing


**Melody**    Digitally signed by Melody Morse
              DN: cn=Melody Morse, c=US,
**Morse**     o=United States Attorney's Office,
              ou=Legal Assistant
              Date: 2007.12.04 08:43:42 -07'00'

For   the   United   States   Attorney's   Office