1

UNITED STATES COURT OF FEDERAL CLAIMS

MARVIN M. BRANDT, et al.,          )
                                   )
          Plaintiffs,              )
                                   )
v.                                 ) Docket No. 09-265L
                                   )
UNITED STATES,                     )
                                   )
          Defendant.               )

                              Tuesday,
                              November 22, 2011

                        Live Tape

          (The following transcript was transcribed from a
digital recording provided by the United States Court of
Federal Claims to Heritage Reporting Corporation on
December 27, 2011.)

                  BEFORE: EMILY C. HEWITT
                          CHIEF JUDGE

          APPEARANCES:

          On Behalf of Plaintiffs:

          STEVEN J. LECHNER, Esquire
          Mountain States Legal Foundation
          2596 South Lewis Way
          Lakewood, Colorado  80227
          (303) 292-2021

                  Heritage Reporting Corporation
                        (202) 628-4888

<u>P R O C E E D I N G S</u>

(2:59 p.m.)

MR. LECHNER:  Good afternoon, Your Honor.
This is Steven Lechner for the Plaintiffs, Marvin M.
Brandt and Marvin M. Brandt Revocable Trust.

THE COURT:  Thank you, sir.

MR. DOAN:  Good afternoon, Your Honor.
Joshua Doan for the United States from the Department
of Justice, and with me at counsel table is Kate
Schneider from the United States Department of
Agriculture.

THE COURT:  Good afternoon to all.  Counsel?

MR. DOAN:  Thank you.  So again, for
purposes of the record, this is Joshua Doan for the
United States.

THE COURT:  You passed.

MR. DOAN:  Thank you, Your Honor.  May it
please the Court.  We filed the pertinent motion to
dismiss that we're here to discuss today in light of
the Supreme Court's recent interpretation of 28 U.S.C.
§ 1500 in the <u>Tohono O'odham Nation</u> case, and in that
case the Court held that for purposes of § 1500 two
suits are for or in respect to the same claim
precluding jurisdiction in the CFC if they are based
on substantially the same operative facts regardless

4

1    of the relief sought in each suit.

2           The <u>Brandt</u> CFC lawsuit must be dismissed

3    under § 1500 and the <u>Tohono O'odham</u> decision for two

4    basic reasons.  First, the Brandts' District Court

5    counterclaim was still pending when the Brandts filed

6    their takings suit in this Court and, second, even if

7    the Brandts had not filed a takings counterclaim in

8    the District Court, their quiet title counterclaim in

9    the District Court is based upon substantially the

10   same operative facts as their takings suit in this

11   Court, thus triggering the bar of § 1500.

12          Now, to go through each of those in a little

13   more detail, in the District Court case, Your Honor,

14   the Brandts included a counterclaim for just

15   compensation both in their August 8, 2006, answer and

16   counterclaims and in their October 1, 2007, first

17   amended answer and counterclaims.  The Brandts then

18   brought a takings counterclaim seeking just

19   compensation in this Court on April 28, 2009.

20          Under the decisions by the Court of Federal

21   Claims in <u>Jachetta v. United States</u> -- I hope I'm

22   pronouncing it correctly, but for purposes of the

23   record, that's J-A-C-H-E-T-T-A -- 94 Fed. Cl. 277 from

24   2010, and several other cases, a claim is pending in

25   another Court for purposes of § 1500 until the time to

1      appeal from the dismissal of the claim in the other

2      Court has expired.

3              THE COURT:   That's one of the places where

4      there's authority on both sides, as you know.

5              MR. DOAN:   Yes.

6              THE COURT:   And I'll be asking the same

7      question of Plaintiff.   But can you cite any sort of

8      practical or common sense reasons why one or another

9      of these positions is favored?

10             MR. DOAN:   Well, I think that under a plain

11     reading of § 1500 there's no breakdown and there's no

12     limitation as to what pending means or should not mean

13     in the plain text of § 1500.   It's just if it's

14     pending, so the timing of the filing of an appeal

15     should not matter under the plain meaning of the

16     statute.

17             The other, I don't know if it's practical,

18     but the Supreme Court's instruction in Tohono O'odham

19     Nation on the purposes of § 1500 is to avoid

20     subjecting the United States to the burdens of

21     redundant litigation in multiple Courts at the same

22     time, and so the United States is forced to bear that

23     burden here because the Plaintiffs filed suit first in

24     the -- or Plaintiffs filed a counterclaim rather in

25     the District Court.

1      They filed a counterclaim both for takings
2   and for quiet title, and then they filed their takings
3   suit in this Court before the time had expired to
4   appeal the dismissal of their takings counterclaim in
5   the District Court.  To the best of my knowledge, they
6   did not actually appeal the dismissal of their takings
7   counterclaim.  They did, however, appeal the dismissal
8   of their quiet title counterclaim, and that goes to my
9   second point.

10      But as to the first point, their takings
11   counterclaim, they were still within the 60 days in
12   which they could appeal the dismissal of their takings
13   counterclaim under Federal Rule of Appellate Procedure
14   4(a)(1)(B) when they brought suit in this Court.  So
15   under the Jachetta decision, which has been followed
16   by other decisions of the Court of Federal Claims in
17   more recent years, their takings counterclaim is still
18   technically pending when they filed suit here.

19      THE COURT:  One of the sensitivities in the
20   Tohono aftermath is the possibility that a plaintiff
21   with a complaint against the United States is going to
22   be timed out under the statute of limitations.

23      Could a plaintiff who's in the situation of
24   the counterclaimed Plaintiffs here, the Plaintiffs in
25   this case but counterclaimed elsewhere, is it possible

1  under the rules for them to file some paperwork with

2  the Appeals Court that stated that they would not

3  appeal that would then be binding on them?  Is there

4  any way to rescue that 60 days?

5          MR. DOAN:  So I'm trying to make sure I

6  understand your question correctly.  If they wanted to

7  waive their right to appeal you're asking?

8          THE COURT:  Exactly.

9          MR. DOAN:  I guess they could file something

10  with the Court in which the other suit had been

11  pending.  I think they could also plead in their

12  complaint in this Court, for example, that there was a

13  prior case here in the United States District Court

14  for the District of Wyoming.  Although the Plaintiffs

15  had the right to appeal from the adverse decision,

16  they renounced their right to do so.

17          I don't see why they couldn't say something

18  in their filing actually in this Court that they were

19  renouncing their right because it's this Court that

20  has to determine whether or not § 1500 is available.

21          THE COURT:  I'm not aware of any authority

22  on this.  Are you?

23          MR. DOAN:  I can't say that I am, Your

24  Honor.

25          THE COURT:  Thank you.

1          MR. DOAN:  It's also important to remember

2    that here the six-year time bar exception, 2501, is

3    not an issue.  The Brandts allege that their takings

4    claim accrued when the District Court entered its

5    judgment on March I believe 2, 2009, so we're still

6    years away.  We were years away when they brought suit

7    in this Court and we're still years away now, so I

8    don't think that there's any real risk here of a bar.

9          THE COURT:  Maybe not to them, but the

10   policies are certainly.  These various policies are at

11   issue here.

12         MR. DOAN:  So that's the takings

13   counterclaim.  As to the quiet title counterclaim, the

14   quiet title counterclaim and the takings claim in this

15   Court arise from the same set of operative facts.

16         In both cases we're talking about the same

17   railroad right-of-way on which the same railroad

18   stopped offering rail service traversing the same

19   property owned by the Brandts and that was acquired,

20   the same property that was acquired under the same

21   patent from the United States.  So we're really

22   talking about the same factual circumstances in both

23   cases.

24         It's a threshold issue in any takings claim

25   whether the plaintiff owned the property interest

1    allegedly taken on the date of the alleged taking, and

2    that's exactly the issue that was in dispute in the

3    quiet title case on their quiet title counterclaim, so

4    we'd submit that even if they had not filed a takings

5    claim in the District Court, strictly by filing a

6    quiet title counterclaim based on again the same

7    property, the same railroad with the same railroad

8    offering service and the same patent having granted

9    the property interest to the Brandts and pointing to

10    the same patent for purposes of arguing that they own

11    the reversionary interest rather than the United

12    States, we're talking about the same set of operative

13    facts here.

14         THE COURT:  So no matter which counterclaim

15    we compare.

16         MR. DOAN:  That's right.  And they did.  In

17    the District Court they incorporated by reference the

18    allegations regarding their quiet title counterclaim

19    into their takings counterclaim.  The takings

20    counterclaim was the third counterclaim in the

21    District Court and they incorporated all the preceding

22    paragraphs, so all the allegations related to the

23    takings counterclaim or, I'm sorry, all the

24    allegations related to the quiet title counterclaim

25    were incorporated into the takings counterclaim.

1          So just in summary, again to allow the

2     Brandts to proceed here while they also chose to

3     proceed on appeal to the United States Court of

4     Appeals for the Tenth Circuit while their Tenth

5     Circuit appeal remains to be decided violates the

6     purposes of § 1500, as made clear by the Supreme Court

7     in Tohono O'odham, which is to avoid subjecting the

8     United States to redundant burdens or to the burdens

9     of redundant litigation rather.  So unless the Court

10    has further questions?

11          THE COURT:  Well, I want to just chat with

12    you a little bit --

13          MR. DOAN:  Sure.

14          THE COURT:  -- about the argument that the

15    United States is making that the application of 1500

16    does not lead to absurd, inequitable or

17    unconstitutional results.  And this is not the most

18    difficult case for the reasons that you mentioned in

19    terms of timing.

20          MR. DOAN:  Right.

21          THE COURT:  But the truth is, and Plaintiffs

22    certainly say, that under FRCP 13(a) or RCFC 13(a)

23    both Courts would require them to raise their

24    compulsory counterclaims in that forum in a situation

25    or risk waiver and so they really don't have the same

1   possibility to elect forum that a plaintiff normally

2   would have.

3         MR. DOAN:  Well, I mean, I don't understand

4   why they can't just defend the quiet title claim

5   brought by the United States and then they could have

6   filed -- even if they had lost, if they had strictly

7   defended and not filed a counterclaim, they could have

8   filed their case in this Court even while pursuing

9   their appeal.  They could have also just waited, as

10  Your Honor suggested.  They could have just waited

11  until their appeal had been decided before they filed

12  suit in this Court.

13        I mean, this goes back to the motion that

14  the United States filed a couple years ago, but maybe

15  the case is if the Tenth Circuit agrees with the

16  Plaintiff they won't even have a takings claim in this

17  Court because it was predicated upon the District

18  Court's judgment.  So, if the District Court's

19  judgment is reversed, then there was never any reason

20  for us to have been here, so they could have waited

21  for the decision there.

22        They could have waited until they had

23  exhausted all their appeals from the adverse judgment

24  there before they came into this Court.  They didn't

25  have to bring their takings counterclaim, I don't

1   believe, in the District Court.  They may have had to

2   file a quiet title counterclaim if they were going to

3   file one, but they did not have to file a takings

4   counterclaim.

5          THE COURT:  Because of the overlapping

6   jurisdiction?

7          MR. DOAN:  Well, because they're seeking

8   more than $10,000 and because the District Court is

9   not a Court of competent jurisdiction to hear a

10  takings counterclaim in that amount.

11         THE COURT:  Thank you.

12         MR. DOAN:  Thank you, Your Honor.

13         MR. LECHNER:  May it please the Court.  My

14  name is Steve Lechner, and I represent Plaintiffs

15  Marvin M. Brandt and Marvin M. Brandt Revocable Trust.

16  I want to thank Your Honor for scheduling these

17  arguments.

18         Before I get into my spiel so to speak, I

19  want to address some of the Court's questions

20  regarding the statute of limitations.  The government

21  kind of says that we don't have a statute of

22  limitations under our theory of the case, but they

23  don't agree with our theory of the case of when the

24  taking occurred, and therefore it's possible that they

25  could raise a statute of limitations based on some

1   other reason as they've done several times in other

2   Rails to Trails cases.

3          So they haven't stipulated that our take

4   occurred or statute of limitations began running on

5   March 2, 2009, so they still have other available

6   arguments regarding the running of the statute of

7   limitations.

8          THE COURT:  I don't know if I've had those

9   cases, so tell me what the scenario would be that

10  would turn out to be a late hit from your point of

11  view.

12         MR. LECHNER:  Well, in the run of the mill

13  Rails to Trails case, and it's under a different

14  section than what we're faced with here, but the

15  question is whether if the railroad issues a notice of

16  intent to abandon and the Surface Transportation Board

17  issues a NITU, there's some cases that suggest that

18  starts the running of the statement of limitations

19  even though the railroad has not been formally

20  abandoned, nor has the railroad been turned over to a

21  rail provider.

22         So there's other litigation going on about

23  when does the statute of limitations really run, so I

24  am certainly worried about other arguments the

25  government could raise regarding when the statute of

1       limitations for a taking claim may have started.

2               With respect to us defending the United

3       States' case, if we hadn't filed a counterclaim, a

4       Quiet Title Act counterclaim --

5               THE COURT:  This is in Wyoming?

6               MR. LECHNER:  Right.  In Wyoming.  If we

7       hadn't filed, even though we think it's compulsory and

8       all that good stuff, but if we hadn't filed and we had

9       merely defended against the United States' assertion

10      of title and we were successful, we wouldn't get

11      title.

12              We would have to bring another Quiet Title

13      Act case to get title quieted in our favor, so that

14      would have caused redundant litigation there, and it

15      will certainly go to waste a huge amount of judicial

16      resources to bring another quiet title to actually get

17      the title vested in us because if the United States

18      loses title, the issue is still up in the air who owns

19      it, so that's one of the reasons why we filed the

20      quiet title counterclaim.

21              I'd like to address first the takings

22      counterclaim, and I submit that that takings

23      counterclaim that was filed in the Wyoming District

24      Court was irrelevant for purposes of § 1500.  It was

25      never litigated.

    1            THE COURT:  How come, as I say?

    2            MR. LECHNER:  Oh, I'm sorry.  I didn't hear

    3    you.  Okay.  It was never litigated.  The takings

    4    counterclaim was bifurcated and stayed by agreement of

    5    the parties, and as the United States admits --

    6    admitted -- the takings counterclaim was clearly

    7    premature when it was filed because it was conditioned

    8    on a possible future ruling by the District Court.

    9            The United States also admitted, and I think

   10    they just admitted it here, that the District Court

   11    lacked jurisdiction because the Brandts sought more

   12    than $10,000.  As a result, the District Court granted

   13    the United States' motion to dismiss the taking claims

   14    in the Wyoming case, and we submit that a claim for

   15    which a Court has no jurisdiction over cannot be a

   16    claim pending for purposes of § 1500.

   17            And our support for that is Vero Technical

   18    Support, which I think the government cited with

   19    respect to the question of pending, which we disagree

   20    with, but that's at 94 Fed. Cl. 78, Judge Horn's

   21    decision, and also Loveladies Harbor, 27 F.3d 1545.

   22            Even though Loveladies has been reversed on

   23    other grounds by Tohono, it still stands for the

   24    proposition that if a claim is pending in another

   25    Court, but that Court does not have jurisdiction over

1    that claim, that claim is not held against the Court

2    of Federal Claims litigant plaintiff.

3           THE COURT:  Is it your view that the

4    subsequent developments that have affected Loveladies

5    don't touch that aspect of it?

6           MR. LECHNER:  I think, well, Vero Technical

7    came down -- well, no.  I don't think they touched

8    that part of the ruling, and I think -- oh, I can't

9    remember.  I think Nez Perce recently talked about it

10    also, but I'm not sure, so don't quote me on that, but

11    I think that proposition still stands.

12           THE COURT:  Point me to that argument in

13    briefing if it's in briefing.

14           MR. LECHNER:  Pardon me?

15           THE COURT:  Could you point me to this

16    argument in briefing that we're now discussing?

17           MR. LECHNER:  Well, we didn't brief it

18    because, based on the government's motion to dismiss,

19    it appeared like they were only going after the quiet

20    title counterclaim.  It was not apparent to me that

21    they were going after a takings counterclaim until

22    their reply brief was filed with respect to this

23    motion to dismiss, so I didn't have the opportunity to

24    brief it.  I'd be glad to brief it if the Court would

25    like after the hearing.

1        Going on to the merits or going on to the
2    motion to dismiss, this Court should deny the United
3    States' motion to dismiss for three reasons.   First,
4    the Brandts didn't have a claim pending for purposes
5    of § 1500 when they filed this case in this Court, and
6    the Brandts' quiet title counterclaim and the taking
7    claims are not based upon the same operative facts.
8    And finally, the purpose of § 1500 would not be
9    violated by denying the government's motion.

10        With respect to pending, as the Court knows,
11   there's cases going on both sides of this, but we
12   submit that Judge Wolski had it right in <u>Young v.</u>
13   <u>United States</u>, 60 Fed. Cl. 418, where he looked at the
14   plain meaning of the word pending as to mean not yet
15   decided, remaining undecided, awaiting decision.

16        And then based on the plain meaning of the
17   word pending, he ruled that the Court of Federal
18   Claims is not precluded from exercising jurisdiction
19   over a claim against the United States that had been
20   dismissed by a District Court but not yet appealed.
21   And he also cited a line of cases like <u>Boston Five</u>
22   <u>Cents Savings Bank</u>, 864 F.2d 137, for this proposition
23   and several other Court of Federal Claims cases.
24   <u>Young</u> was also followed by Judge Smith in <u>Fire-Trol</u>
25   <u>Holdings, LLC v. United States</u>, 65 Fed. Cl. 32.

1              And we submit that the cases relied on by

2      the United States are not persuasive or can be

3      distinguished.   The United States here mentioned, and

4      I probably can't pronounce it either, Jachetta v.

5      United States.

6              THE COURT:   It starts with J.   We've got it.

7              MR. LECHNER:   Yes.   Well, in that case the

8      plaintiff filed both cases.   It wasn't like this case

9      where the Brandts were dragged into Wyoming District

10     Court by the United States, and in that case the

11     plaintiff's motion to amend the District Court

12     judgment was still pending at the time the plaintiff

13     filed the suit, so clearly that case was still pending

14     as here, which we had a final judgment before we filed

15     our complaint in this Court.

16             Vero Technical, again, the plaintiffs filed

17     both cases and simply followed that case of Judge Horn

18     in Jachetta, but that case was also unique because

19     there the plaintiff took the I submit strange position

20     that § 1500 would operate to divest the Court of

21     Federal Claims of jurisdiction once the plaintiff

22     filed its notice of appeal in a District Court action.

23     I don't think that position is --

24             THE COURT:   So there's a gap period?

25             MR. LECHNER:   Yes.   He conceded that once he

1    did file his planned appeal then jurisdiction in this

2    Court would vanish, which I don't think is right

3    because it's sort of inconsistent with the order of

4    filing rule, which is as long as the case is filed

5    here even minutes or days before the District Court

6    case then this Court has jurisdiction.  So I'm not

7    sure why the plaintiff took that position.

8            Anyway, the Brandts haven't taken a similar

9    position here, so I think that while there's certainly

10   cases on both sides I think _Young_ had the best of it

11   with respect to pending, plus to interpret pending as

12   it's used in § 1500 to include the time to appeal

13   would require adding terms to the statute.

14           Section 1500 would have to be amended to

15   provide as pending in any other Court or for which the

16   time to appeal has not expired.  I mean, the statute

17   doesn't say that, and I don't think the framers of

18   this or the Congress intended pending to mean during

19   the time the appeals were ripe.  Pending has got to be

20   interpreted at the time Congress passed § 1500.

21           And also the order of filing rule, which I

22   mentioned earlier, also kind of supports this

23   interpretation because, as I said, if we file here a

24   day early before we file in District Court,

25   jurisdiction is good here.  Here the government's

1     conceded that we filed our taking claim in this Court

2     one day before we filed our appeal of the District

3     Court's final judgment.

4             And if under the order of filing rule

5     pending does not include an identical case that is

6     filed minutes after a case is filed here, then pending

7     should not include a notice of appeal that is filed

8     one day after a complaint is filed in this Court,

9     especially when the complaint filed in this Court

10    contains a distinct and separate claim as we have

11    here.  Therefore, any claim --

12            THE COURT:  There's an assertion there's a

13    distinct and separate claim, but aren't we talking

14    about the same piece of property?

15            MR. LECHNER:  It is the same piece of

16    property.

17            THE COURT:  And who has rights in it.

18            MR. LECHNER:  And who has rights in it.  And

19    this segues into the issue of operative facts of

20    course.

21            THE COURT:  It is the issue of operative

22    facts.

23            MR. LECHNER:  And operative fact means a

24    fact that constitutes the transaction or event on

25    which a claim is based, and that's from *Black's Law*

1    *Dictionary.*

2         Here, and I'm only focusing on the Brandts'

3    quiet title counterclaim because I think that the

4    takings counterclaim is irrelevant for this purpose,

5    but the Brandts' quiet title counterclaim and their

6    takings claim are separate and distinct because the

7    operative facts are different.

8         The operative facts for the quiet title

9    counterclaim -- the operative fact, and that is the

10   event on which the claim is based for the quiet title

11   counterclaim -- occurred on January 15, 2004, and that

12   is when the railroad consummated abandonment of its

13   railroad easement.  On that date, the Brandts'

14   property became unburdened by the railroad easement,

15   so for the Quiet Title Act that is the operative fact,

16   what occurred on that date.

17        In contrast, the operative fact for the

18   takings claim occurred almost five years later on

19   March 2, 2009, when the District Court first issued a

20   judicial decree of abandonment, which was necessary

21   for the operation of 43 U.S.C. 912 and 16 U.S.C.

22   1248(c), the Rails to Trails provision.

23        On that date, the District Court also

24   quieted title in the railroad easement in favor of the

25   United States, and then he went even further and he

1    held that the scope of the railroad easement included

2    the right to construct and operate a recreational

3    trail.  So those are the operative facts or that

4    March 2 order was the operative facts with respect to

5    the takings claim because that is when the taking is

6    effective.

7         Granted, for a taking claim a necessary

8    component is ownership of property, but that's not the

9    operative fact for the taking because I think the

10   caselaw is well established that the operative fact

11   for a takings claim is when did the taking occur.

12   What were the actions, the government actions, that

13   effectuated the taking?  And we think those are the

14   actions that occurred on March 2.

15        So since the operative facts occurred five

16   years apart between the two claims, the operative

17   facts are different for this case and therefore Tohono

18   and § 1500 do not divest this Court of jurisdiction.

19   Granted, we allege similar background facts regarding

20   the history of the railroad easement, but background

21   facts are not operative facts.

22        This interpretation of the term operative

23   facts is supported by again Judge Smith in Fire-Trol

24   Holdings, LLC v. United States, 65 Fed. Cl. 32.  There

25   plaintiff filed a District Court case challenging new

1    procurement regulations.  The District Court dismissed

2    that case for lack of jurisdiction.  The plaintiff

3    appealed to the Ninth Circuit.

4         The plaintiff then filed a prebid complaint

5    in the Court of Federal Claims, and Judge Smith held

6    that the two cases did not have the same operative

7    facts because the rulemaking, which was the subject of

8    the District Court case, occurred before the

9    solicitation for bids that was the subject of the

10   Court of Federal Claims case, and therefore they

11   didn't have the same operative facts.

12        Also, I suggest that Your Honor's decision

13   in Ak-Chin Indian Community v. United States, 80 Fed.

14   Cl. 305, supports my interpretation of the term

15   operative facts.  Although in that case Your Honor

16   found that the claims were based on the same operative

17   facts, Your Honor noted that the operative facts are

18   not the same if the claims are based upon different

19   conduct or events.

20        So this brings me back to what I'm referring

21   to as the operative facts, the January 15, 2004,

22   abandonment for the quiet title and the March 2, 2009,

23   order by the Wyoming District Court Judge for the

24   takings claim.  Moreover, the Federal Circuit's recent

25   decision in Trusted Integration, Inc. v. United

1    _States_, 659 F.3d 1159, supports this theory.

2         There the Federal Circuit held that the

3    claim for breach of a license agreement that had been

4    filed in this Court was not barred by § 1500 because

5    it was based upon an agreement separate from the

6    related agreements that were at issue in the pending

7    District Court case.  So even though they're in

8    related agreements, the District Court had these

9    agreements and this Court had the license agreement,

10   and the Federal Circuit said that those were not based

11   on the same operative facts.

12        And more recently, Judge Miller in _Stockton_

13   _East Water District v. United States_ on October 31,

14   2011, 2011 Westlaw 5154463, ruled that the operative

15   facts in the Court of Federal Claims case were not

16   substantially the same as the operative facts in the

17   pending District Court case because the Court of

18   Federal Claims case raised breach of contract claims

19   that arose after the District Court case was filed.

20        And that's much similar to what we have here

21   with our takings claims that we filed in this Court

22   because the event of the taking occurred after the

23   counterclaim had been filed in the District Court and

24   frankly occurred on the date the District Court

25   quieted title in favor of the United States.

1          We anticipate that the government may rely

2    on Central Pines Land Company v. United States, 99

3    Fed. Cl. 394.  They haven't mentioned it, but I'm sure

4    they'll find it.  There the plaintiff chose to file a

5    Quiet Title Act case in District Court and shortly

6    thereafter a takings case in this Court.  Of course

7    the plaintiff there filed the cases, so therefore he

8    failed to elect what Court to litigate in as Tohono

9    has interpreted § 1500 to require plaintiffs to elect.

10          There the plaintiff didn't elect, and in

11   that case, even though Judge Firestone found that the

12   cases were based on the same operative facts, the

13   taking had occurred.  The alleged taking was based on

14   events that occurred before the plaintiff filed its

15   Quiet Title Act case.

16          THE COURT:  Has that been appealed by the

17   way?

18          MR. LECHNER:  Central Pines?

19          THE COURT:  Yes.  Yes.  If you know.

20          MR. LECHNER:  I didn't see it had been

21   appealed, but I didn't check the docket.

22          THE COURT:  The Judge thought that was a

23   harsh result.

24          MR. LECHNER:  It was very harsh because the

25   Judge had already awarded just compensation, but there

1    again the taking had occurred at the time that the

2    quiet title case had been filed, and that is not the

3    case here.

4          In that decision, Judge Firestone also ruled

5    that two cases must stem from the same events.  Here

6    the operative facts, like I talked about, do not stem

7    from the same events because the quiet title

8    counterclaim stems from the 2004 abandonment by the

9    railroad and the takings claim stems from the 2009

10   judicial decree of abandonment and order quieting

11   title in favor of the United States.  Therefore,

12   because the claims are not based on the same operative

13   facts, the government's motion should be denied.

14         And finally, the purpose of 1500 would not

15   be violated by denying the United States' motion.  The

16   purpose of § 1500 is to save the government from

17   redundant and duplicative litigation, in other words,

18   to make the plaintiff elect where to litigate.  The

19   predecessor statute to § 1500 was passed to prevent

20   the Kaufman claimants from suing for statutory damages

21   here and suing for tort-based damages in District

22   Court.

23         Here the Brandts' quiet title counterclaim

24   and taking claims are neither redundant nor

25   duplicative.  Instead, they are essentially mutually

1    exclusive.   If the Tenth Circuit quiets title in favor

2    of the Brandts based on their counterclaim, the

3    takings claim here will disappear.

4         Also here we have the Brandts here

5    essentially because the Brandts were dragged into

6    District Court.   The United States elected where to

7    litigate, not the Plaintiff.   Granted, the Brandts

8    filed their quiet title counterclaim, but to hold that

9    the quiet title counterclaim triggers 1500 would be

10   fundamentally unfair because if we hadn't raised it we

11   wouldn't have title, like I mentioned earlier.   We'd

12   have to file a new lawsuit seeking quiet title

13   ourselves.

14        And once we did file that case, then we know

15   what the United States would do, and they would move

16   to dismiss saying that the quiet title counterclaim

17   was a compulsory counterclaim and therefore under res

18   judicata grounds they would move to dismiss that.

19   Thus, under that theory, heads the United States wins,

20   tails the Brandts lose.

21        Also, to adopt the government's rationale

22   here will allow the United States to preempt takings

23   claims by simply filing quiet title actions in

24   District Court because under the United States'

25   rationale, the defendant in such a suit should not

1    file a counterclaim because the counterclaim could bar

2    the filing of a takings claim in this Court, yet if

3    the United States' Quiet Title Act case lasts more

4    than six years, the statute of limitations would have

5    run, and I don't know how we would prevent that.

6         Neither the framers nor Congress could have

7    intended such an absurd result.  Therefore, I

8    respectfully request that the Court deny the United

9    States' motion.

10        THE COURT:  I can imagine the United States

11   wanting to responde to some of that, but before you

12   sit down, let me just make sure that I understand your

13   view about at least one of the authorities that could

14   be viewed as affecting the interpretation of pending.

15   The 2002 <u>Carey v. Saffold</u>, the U.S. Supreme Court

16   case, has that crossed your radar?  This is a state

17   post conviction that then went up on review.

18        MR. LECHNER:  Well, they were interpreting

19   pending in a completely different context.

20        THE COURT:  All true.

21        MR. LECHNER:  And it had to do with habeas

22   corpus proceedings, which are completely different.  I

23   just don't think that the plain meaning of pending can

24   mean including the time for appeal.  I mean, I

25   recognize that that's what --

1    THE COURT:  That's kind of what the Supreme

2    Court said.  Kind of, kind of.

3    MR. LECHNER:  Well, yes.

4    THE COURT:  There's no accounting for taste.

5    I understand that.  It's a different context.

6    MR. LECHNER:  But you have to look at what

7    the drafters of § 1500 and even the drafters of

8    § 1500's predecessor statute were getting at, and I

9    don't think when they passed the original § 1500 to

10   bar the Kaufman claimants from seeking duplicative

11   relief, statutory damages and tort-based damages --

12   that was the whole purpose of § 1500's predecessor.

13   I don't think Congress then was thinking

14   about oh, the word pending includes the time for

15   filing appeals.  I just think that's a little

16   stretched there and there's no evidence that they were

17   thinking that that was how they interpreted pending.

18   So I recognize that that's what Jachetta cited --

19   THE COURT:  That's what they relied on.

20   MR. LECHNER:  Yes, that's what they relied

21   on.

22   THE COURT:  And it's hard for the Court to

23   understand depending on what one determines the modern

24   trend to be here.  Pending seems to be a word in

25   common enough usage like file that you'd like to know

1    what it meant.  You know, we ought to work toward that

2    in some fashion.

3               MR. LECHNER:  Well, I mean, I go back to the

4    order of filing rule.  With the order of filing rule,

5    which is still good law, then our interpretation of

6    pending should carry the day.

7               THE COURT:  Under the order of filing rule.

8               MR. LECHNER:  Well, our interpretation is no

9    more unusual than the order of filing rule.  If you

10   file it here minutes before you file it in District

11   Court, you're good to go.

12              THE COURT:  It's not a perfect world.

13              MR. LECHNER:  If you have no more questions?

14              THE COURT:  At the moment.  Thanks.

15              MR. LECHNER:  Thank you.

16              THE COURT:  Thank you.  Counsel for the

17   United States, anything in response?

18              MR. DOAN:  Thank you, Your Honor.

19              THE COURT:  Or a reply?

20              MR. DOAN:  A few brief comments.  Again,

21   Joshua Doan for the United States for purposes of the

22   record.

23              The main point I'd like to just reiterate is

24   that Plaintiff's counsel was talking about different

25   events, abandonment in the one case and the judgment

1    of the District of Wyoming in the other, as being an

2    irrelevant event for determining whether the claims

3    arise from the same or substantially the same

4    operative facts.

5         The threshold issue in any takings claim is

6    who owns the property allegedly taken on the date of

7    the alleged taking.  That has to be litigated.  And in

8    fact, it was litigated, and § 1500 is in many respects

9    a weaker test than the test we would have to satisfy

10   under our initial motion to dismiss on issue

11   preclusion grounds.

12        For the issue preclusion motion to dismiss

13   we actually had to show that there was a final

14   judgment in favor of the United States on the issue of

15   ownership.  Here we don't have to show that there's a

16   final judgment going our way.  We merely have to show

17   that the same issues are being litigated in both

18   cases, and they would have to be litigated here.

19        If there had been no litigation in the

20   District of Wyoming, the issue of ownership on the

21   date of the alleged taking would need to be litigated

22   here, so you can't have the litigation in the two

23   cases and not have the cases be based on substantially

24   the same operative facts, particularly where in both

25   cases the Brandts are pointing to the same land patent

1   and the language that was used in that patent and not

2   used in that patent as their evidence of whether or

3   not they own the reversionary interest in the 1875 Act

4   right-of-way.

5        Mr. Lechner was talking a bit about the

6   order of filing rule.  I just wanted to say for

7   purposes of the record we did not brief the Tecon

8   Engineers issue.  We had one footnote about it in our

9   opening brief.  We did not understand that the Tecon

10  issue was in play here, and we submit that it should

11  not be in play here.

12       I mean, there's no question that the

13  District Court case was filed years before the CFC

14  case was filed in this case, so there is no issue

15  under Tecon.  If the Court is inclined to think that

16  there might be, we would just ask for the opportunity

17  to submit further briefing as to whether or not Tecon

18  remains good law in light of the Supreme Court's

19  decision in Tohono O'odham.

20       I know that the United States has briefed

21  that in other cases before Your Honor, but Plaintiffs,

22  the Brandts, have not had the opportunity to respond

23  to that, so if it is an issue, we would like the

24  opportunity to brief it if Your Honor believes that

25  that would be useful.

1          As to the issue whether there's been no

2     stipulation as to the date on which the taking

3     allegedly occurred, the United States is the Defendant

4     here.   I mean, we have to go by what the Plaintiffs

5     allege, and as the Plaintiffs allege in their

6     complaint the claim did not accrue until the District

7     Court's judgment was issued in 2009.

8          Because they allege a 2009, a March 2009

9     accrual, there is no § 2501 issue here.   We're still

10    well within the six-year statute of limitations.   The

11    last time I checked there had been no decision by the

12    Tenth Circuit, so I don't have anything else to tell

13    Your Honor on that.  ·The case was argued over 18

14    months ago as I understand, so I don't know when it

15    will come out, but it has been a while.

16         The one point about whether the lack of

17    jurisdiction over a claim arising from the same or

18    substantially the same operative facts in the other

19    Court has any implication in the § 1500 analysis here,

20    I think the answer to that question is no.   Regardless

21    of whether the other Court has jurisdiction, if

22    jurisdiction has been asserted, subject matter

23    jurisdiction has been asserted at the time that the

24    case is brought here, then § 1500 applies.

25         And the two cases that I could cite for that

1    proposition I believe would be I believe in the

2    Supreme Court's decision in Keene v. United States at

3    508 U.S. 200, and I think the pin cite would be 204 to

4    205, there was a dismissal of the case in the Southern

5    District of New York I believe five days after the

6    case was filed in the Court of Federal Claims.

7            The quote I'm looking at right now says,

8    "Only five days before the Southern District's

9    dismissal of that omnibus action, Keene returned to

10   the Court of Federal Claims with the second of the

11   complaints at issue here," and also on page 204 the

12   Court refers to a suit that was a summary dismissal on

13   the basis of sovereign immunity.

14           So I think that's one of the cases that

15   answers the question.  Another is a case which I'll

16   acknowledge we did not cite in our brief, but it's a

17   decision by the Federal Circuit in Trusted

18   Integration, Inc. v. United States.  There's only a

19   Westlaw cite at least in the copy I'm holding right

20   now.  It's 2011 Westlaw 4888787.  It was decided on

21   October 14, 2011.

22           THE COURT:  We have it, and I understand the

23   Plaintiffs do as well.

24           MR. DOAN:  Okay.  And I believe in that case

25   the Court in a footnote at the end, Footnote 2, says,

1      "We hold that the fact that the District Court

2      dismissed some of the counts of Trusted Integration's

3      District Court complaint has no effect on our analysis

4      of each of the counts in the CFC complaint.  We apply

5      § 1500's jurisdictional bar by looking at the facts

6      existing when Trusted Integration filed each of its

7      complaints following the longstanding principle of

8      jurisdiction of the Court depends upon the state of

9      things at the time of the action brought."

10           And if you look at page Star 3 in the

11     decision, the dismissals in the District Court were

12     based on lack of subject matter jurisdiction.  So I

13     believe that those cases do shed some light on the

14     question whether the other Court's lack of

15     jurisdiction has any implications for § 1500 purposes.

16     Of course there's nothing in § 1500 itself that says

17     pending in a Court of competent jurisdiction.  It just

18     says pending.  So I think that's the most natural

19     reading of the statute.

20           So I think those are the only points that I

21     wanted to make in reply unless Your Honor has further

22     questions.  I'd be happy to answer them.

23           THE COURT:  Possibly after I hear again from

24     Plaintiff.

25           MR. DOAN:  Okay.  Thank you, Your Honor.

1          THE COURT:  Thank you.

2          Would you like to comment more on anything,

3     Mr. Lechner?  Thank you.  You did mention I think the

4     Trusted Integration in your presentation.

5          MR. LECHNER:  Well, yes.  I'm familiar with

6     that case, and it looks to me like that footnote talks

7     about the Court of Federal Claims acquiring

8     jurisdiction retroactively.

9          And I still think that the Vero Technical

10    case that I mentioned, which the government relies on

11    with respect to the issue of pending, deals more

12    directly with the issue of claims upon which the

13    Court, the District Court doesn't have jurisdiction.

14    If it pleases Your Honor, I'd be glad to brief this

15    issue more since the parties really didn't brief it in

16    their earlier papers if that would be beneficial.

17         THE COURT:  Well, why don't we wrestle with

18    it and let you know?

19         MR. LECHNER:  Okay.  Okay.  Any more

20    questions?

21         THE COURT:  No.  Thank you.

22         MR. LECHNER:  Thank you.

23         THE COURT:  Nothing further from the United

24    States?

25         MR. DOAN:  Nothing further from me, Your

Heritage Reporting Corporation
(202) 628-4888

1    Honor, unless Your Honor has some further questions.

2              THE COURT:   No.   We'll wrestle with the

3    contentions of oral argument and appreciate the help

4    that you've provided to the Court today and appreciate

5    the offer for more if necessary.

6              MR. LECHNER:   Thank you.

7              MR. DOAN:   Thank you, Your Honor.

8              THE COURT:   Thank you.

9              THE CLERK:   All rise.

10             THE COURT:   We're adjourned.

11             (Whereupon, at 3:45 p.m., the hearing in the

12   above-entitled matter was concluded.)

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

CERTIFICATE

DOCKET NO.: 09-265L
CASE TITLE: Brandt et al v. US (Live)
HEARING DATE: Washington DC, 11/22/11

        I certify that the foregoing is a true and
correct transcript made to the best of our ability from a
copy of the official electronic digital recording
provided by the United States Court of Federal Claims in
the above-entitled matter.

Date 12/27/11

Karen Levandowski

Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C.   20005-4018