# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

12-5050

**MARVIN M. BRANDT, and MARVIN M. BRANDT REVOCABLE TRUST,**
*Plaintiffs – Appellants,*

v.

**UNITED STATES,**
*Defendant – Appellee.*

Appeal from the United States Court of Federal Claims in case no. 09-CV-265 Chief Judge Emily C. Hewitt

## **MANDATE**

In accordance with the judgment of this Court, entered March 26, 2013, and pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure, the formal mandate is hereby issued.

FOR THE COURT

/s/ Daniel E. O'Toole
Daniel E. O'Toole
Clerk

cc: Clerk of Court, CFC
Steven J. Lechner
Brian C. Toth

**CERTIFIED COPY**
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

By: _____ Date: 9/24/13

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF
## JUDGMENT ACCOMPANIED BY OPINION

### OPINION FILED AND JUDGMENT ENTERED: 03/26/2013

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and suggestions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

Costs are taxed against the appellee in favor of the appellant under Rule 39. The party entitled to costs is provided a bill of costs form and an instruction sheet with this notice.

The parties are encouraged to stipulate to the costs. A bill of costs will be presumed correct in the absence of a timely filed objection.

Costs are payable to the party awarded costs. If costs are awarded to the government, they should be paid to the Treasurer of the United States. Where costs are awarded against the government, payment should be made to the person(s) designated under the governing statutes, the court's orders, and the parties' written settlement agreements. In cases between private parties, payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se. Payment of costs should not be sent to the court. Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise. Sanctions should be paid in the same way as costs.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

FOR THE COURT

/s/ Jan Horbaly

_____

Jan Horbaly
Clerk

Steven J. Lechner
Brian C. Toth
12-5050 - Marvin Brandt v. US
United States Court of Federal Claims, Court of Federal Claims, Case No. 09-CV-265

# United States Court of Appeals for the Federal Circuit

---

**MARVIN M. BRANDT** AND **MARVIN M. BRANDT REVOCABLE TRUST,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2012-5050

---

Appeal from the United States Court of Federal Claims in No. 09-CV-265, Chief Judge Emily C. Hewitt.

---

Decided: March 26, 2013

---

STEVEN J. LECHNER, Mountain States Legal Foundation, of Lakewood, Colorado, argued for plaintiffs-appellants.

BRIAN C. TOTH, Attorney, Environmental & Natural Resources Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief was IGNACIA S. MORENO, Assistant Attorney General.

---

2                                                    BRANDT v. US

Before PROST, O'MALLEY, and REYNA, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* O'MALLEY.
Concurring opinion filed by *Circuit Judge* PROST.

O'MALLEY, *Circuit Judge*.

Marvin M. Brandt and Marvin M. Brandt Revocable Trust (collectively, "Brandt" or "plaintiffs") appeal from the final decision of the United States Court of Federal Claims dismissing their takings claim for lack of jurisdiction under 28 U.S.C. § 1500. *Brandt v. United States*, 102 Fed. Cl. 72 (2011). Because we find that § 1500 does not bar Brandt's complaint, we reverse and remand the case to the Court of Federal Claims for further proceedings consistent with this opinion.

BACKGROUND

This case involves an alleged taking of Brandt's property interests in a railroad right-of-way that traverses his property. In 1908, the United States granted the railroad right-of-way at issue to the Laramie, Hahn's Peak, and Pacific Railroad Company for railroad purposes. In 1976, the government conveyed 83.32 acres of land partially burdened by the railroad right-of-way to Melvin M. Brandt and Lula M. Brandt – the parents of Marvin M. Brandt. The land patent conveyed the property in fee simple and stated that it was subject to the right-of-way. The property was placed into a family trust, which Brandt acquired in 2002.

In 1987, the Wyoming and Colorado Railroad Company, Inc. ("WYCO") acquired the railroad right-of-way and operated the rail line for a number of years. In May 1996, WYCO filed a Notice of Intent to Abandon Rail Service with the Surface Transportation Board ("STB"). The STB approved abandonment of the rail line in December 2003, and, in January 2004, WYCO notified the STB that it had completed its abandonment of the railroad right-of-way.

BRANDT v. US                                                3

### A. District Court Litigation

In July 2006, the United States filed suit in the United States District Court for the District of Wyoming seeking declaratory judgment that title to the abandoned right-of-way had vested in the government.  Specifically, the United States alleged that, "[u]nder the National Trails System Improvements Act of 1988, 16 U.S.C. § 1248(c), any and all right, title, and interest in rights-of-way of the type described in the Abandoned Railroad Right-of-Way Act of 1922 (43 U.S.C. § 912) are retained by the United States upon a judicial decree of abandonment."  Amended Compl. for Decl. Judgment of Abandonment and Quiet Title, *United States v. Wyoming and Colorado Railroad Co.*, No. 2:06-cv-184 (D. Wyo. Mar. 9, 2007), ECF 105, ¶ 31.

On August 8, 2006, Marvin M. Brandt filed an answer and counterclaims asserting that the court should quiet title in his favor.[1]  In a separate counterclaim, Brandt alleged that, to the extent the government acquired some interest in the portion of the land formerly occupied by the railroad easement, that interest would constitute a taking for which just compensation is owed.  Recognizing the district court's jurisdictional limitations, and because the value of the land at issue exceeded $10,000, Brandt requested that the district court transfer his takings counterclaim to the Court of Federal Claims.  By agreement of the parties, the district court bifurcated the case,

---

[1]  On October 1, 2007, Marvin M. Brandt Revocable Trust and Marvin M. Brandt, Trustee filed a First Amended Answer and Counterclaims, substituting themselves as the real parties in interest.  First Amended Answer and Counterclaims, *United States v. Wyoming and Colorado Railroad Co.*, No. 2:06-cv-184 (D. Wyo. Oct. 1, 2007), ECF 137-2.  The substance of the answer and counterclaims remained unchanged.

staying the takings counterclaim while it resolved the quiet title claims.

In April 2008, after the parties filed cross-motions for summary judgment, the district court granted summary judgment in favor of the government, finding that it retained a reversionary interest in the railroad right-of-way. *United States v. Brandt*, No. 06-cv-184, 2008 U.S. Dist. LEXIS 111935, *26-27 (D. Wyo. Apr. 8, 2008). In that decision, the court noted that, if Brandt decided to pursue a takings claim in excess of $10,000, the Court of Federal Claims would have exclusive jurisdiction over that claim and thus "any takings issues brought before this Court would be dismissed for want of subject matter jurisdiction." *Id.* at *27.

Brandt subsequently moved to transfer his takings claim to the Court of Federal Claims pursuant to 28 U.S.C. § 1631. In response, the government asked the court to deny the motion to transfer and dismiss the takings counterclaim for lack of subject matter jurisdiction. In its motion to dismiss, the government indicated that "[d]ismissal of the claim upon entry of this Court's judgment will appropriately require the Trust to file a new, current pleading in the Court of Federal Claims which recognizes the Judgment entered by this Court. It is, after all, this Court's Judgment which allegedly forms the basis of the Trust's taking claim." United States' Motion to Dismiss Third Counterclaim, *United States v. Wyoming and Colorado R.R. Co.*, No. 2:06-cv-184 (D. Wyo. Apr. 18, 2008), ECF 173, ¶ 10.

Almost one year later, in March 2009, the district court entered judgment in favor of the United States and against Brandt. In relevant part, the court declared and decreed that: (1) WYCO abandoned the railroad right-of-way "for all purposes including the National Trails System Improvements Act of 1988, 16 U.S.C. § 1248(c), and the Abandoned Railroad Right-of-Way Act of 1922 (43

U.S.C. § 912);" (2) the government retained a reversionary
interest in the railroad right-of-way; (3) "as a result of the
abandonment by WYCO, title to the railroad right-of-way
is hereby vested and quieted in the United States, and the
United States is entitled to the quiet and peaceful use and
possession of the railroad right-of-way;" and (4) the inter-
est vested in the government includes the right to con-
struct and operate a recreational trail. Judgment, *United
States v. Wyoming and Colorado R.R. Co.*, No. 2:06-cv-184
(D. Wyo. Mar. 2, 2009), ECF 200, ¶¶ 3-6. Two days later,
the court denied Brandt's motion to transfer and granted
the government's motion to dismiss Brandt's takings
counterclaim without prejudice.

On April 29, 2009, Brandt appealed the district
court's judgment quieting title in favor of the government
to the Tenth Circuit Court of Appeals. In a decision dated
September 11, 2012, the Tenth Circuit affirmed, conclud-
ing that the "district court correctly held that the interest
in the abandoned railroad right-of-way belongs to the
United States." *United States v. Brandt*, No. 09-8047,
2012 U.S. App. LEXIS 19058, *6 (10th Cir. 2012).[2]

---

[2] In reaching this conclusion, the Tenth Circuit rec-
ognized that "[m]uch of the trust's argument is foreclosed
by circuit precedent which we are bound to follow."
*Brandt*, 2012 U.S. App. LEXIS 19058, at *5 (citation
omitted). Specifically, the court acknowledged that,
although "the Seventh Circuit, the Federal Circuit and
the Court of Federal Claims have concluded that the
United States did not retain any reversionary interest in
these railroad rights-of-way, we are bound by our prece-
dent." *Id.* at *6 (citing *Samuel C. Johnson 1988 Tr. v.
Bayfield County*, 649 F.3d 799, 803-04 (7th Cir. 2011);
*Hash v. United States*, 403 F.3d 1308, 1317 (Fed. Cir.
2005); *Beres v. United States*, 64 Fed. Cl. 403, 427-28
(2005)).

## B. Court of Federal Claims Proceedings

On April 28, 2009 – one day before he appealed the district court's decisions to the Tenth Circuit – Brandt filed the instant takings claim in the Court of Federal Claims. In the complaint, Brandt alleged that the district court's decree of abandonment with respect to the railroad easement and decision quieting title in favor of the government effectuated a taking in violation of the Fifth Amendment. Specifically, Brandt alleged that, but for the court's application of 16 U.S.C. § 1248(c), the easement would have terminated upon abandonment and no longer would have burdened his property. Brandt argued that the court had jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), because: (1) the case is a suit against the government seeking just compensation; and (2) as of the date of filing, "Plaintiffs have no claims for or in respect to this claim pending in any other court." Complaint, *Brandt v. United States*, No. 09-cv-265 (Fed. Cl. Apr. 28, 2009), ECF 1, ¶ 2.

In response, the government moved to either dismiss Brandt's complaint for failure to state a claim or stay proceedings pending resolution of Brandt's appeal to the Tenth Circuit. In a decision dated October 27, 2009, the Court of Federal Claims chose to stay proceedings. In June 2011, following the Supreme Court's decision in *United States v. Tohono O'odham Nation* ("*Tohono*"), 131 S. Ct. 1723 (2011), the government moved to lift the stay and dismiss Brandt's takings claim for lack of subject matter jurisdiction under 28 U.S.C. § 1500. In *Tohono*, the Supreme Court clarified that two suits "are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Id.* at 1731. Given this language, the government argued that, because Brandt's takings claim in the Court of Federal Claims and his counterclaim in the district court

BRANDT v. US                                            7

were based on substantially the same operative facts, the
court lacked jurisdiction under § 1500.

In the November 30, 2011 decision at issue on appeal,
the Court of Federal Claims granted the government's
motion and dismissed Brandt's takings claim on grounds
that § 1500 precluded jurisdiction. Specifically, the court
found that: (1) Brandt's case was "pending" within the
meaning of § 1500 when he filed in the Court of Federal
Claims because the time for filing a notice of appeal to the
Tenth Circuit had not yet expired; and (2) Brandt's tak-
ings claim filed in the Court of Federal Claims was "for or
in respect to" the claims filed in Wyoming district court
because they shared "substantially the same operative
facts." *Brandt*, 102 Fed. Cl. at 76. Brandt timely ap-
pealed those issues to this court, and we have jurisdiction
pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review the Court of Federal Claims' decision to
dismiss a case for lack of subject matter jurisdiction de
novo. *Trusted Integration, Inc. v. United States*, 659 F.3d
1159, 1163 (Fed. Cir. 2011). It is well-established that the
plaintiff bears the burden of establishing the court's
jurisdiction by a preponderance of the evidence. *Taylor v.
United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

While the Tucker Act, 28 U.S.C. § 1491(a)(1), grants
the Court of Federal Claims jurisdiction over "any claim
against the United States founded either upon the Consti-
tution, or any Act of Congress or any regulation of an
executive department, or upon any express or implied
contract with the United States, or for liquidated or
unliquidated damages in cases not sounding in tort,"
§ 1500 divests the court of jurisdiction when a related
action is pending in another court. Specifically, § 1500
provides, in relevant part, that the Court of Federal
Claims "shall not have jurisdiction of any claim for or in
respect to which the plaintiff or his assignee has pending

in any other court any suit or process against the United
States . . . ." 28 U.S.C. § 1500.  As the Supreme Court
recently explained, § 1500 "effects a significant jurisdic-
tional limitation" and was designed to "save the Govern-
ment from burdens of redundant litigation." *Tohono*, 131
S. Ct. at 1729-30.  Where § 1500 applies, the Court of
Federal Claims lacks subject matter jurisdiction and must
dismiss the complaint. *Id.* at 1727.

To determine whether § 1500 applies, a court must
make two inquiries: (1) whether there is an earlier-filed
"suit or process" pending in another court, and, if so,
(2) whether the claims asserted in the earlier-filed case
are "for or in respect to" the same claim(s) asserted in the
later-filed Court of Federal Claims action. *Trusted Inte-
gration*, 659 F.3d at 1163-64 (citing *Tohono*, 131 S. Ct. at
1727).  If the answer to either of these questions is nega-
tive, then the Court of Federal Claims retains jurisdiction.
*Id.*  As to the first inquiry, it is undisputed that a counter-
claim – such as the quiet title counterclaim Brandt as-
serted in the district court action – is a "suit or process"
within the meaning of § 1500.  *See Frantz Equip. Co. v.
United States*, 98 F. Supp. 579, 580 (Ct. Cl. 1951).  As to
the second, two suits are "for or in respect to" the same
claim "if they are based on substantially the same opera-
tive facts, regardless of the relief sought." *Tohono*, 131 S.
Ct. at 1731.  Importantly, the legal theories underlying
the asserted claims are irrelevant to this inquiry. *Trusted
Integration*, 659 F.3d at 1164 (citing *Keene Corp. v. United
States*, 508 U.S. 200, 212 (1993) ("That the two actions
were based on different legal theories [does] not mat-
ter.")).

Brandt argues that the Court of Federal Claims erred
in dismissing his takings complaint for two separate and
independently sufficient reasons.  First, Brandt argues
that, at the time plaintiffs filed the Court of Federal
Claims complaint, the district court counterclaims were
no longer "pending" within the meaning of § 1500.  Sec-

ond, Brandt contends that the district court counterclaims and later-filed takings action do not share the same operative facts because the takings claim asserted here arises from the district court's March 2, 2009 judgment quieting title in the government.[3]  According to Brandt, either of these factors, standing alone, is sufficient to show that jurisdiction was proper in the Court of Federal Claims.  Because we agree with Brandt on the first issue, we need not address the second.   For the reasons explained below, we conclude that the Court of Federal Claims erred in dismissing Brandt's takings claim for lack of jurisdiction under § 1500.

On appeal, the parties dispute whether the district court case was "pending" when plaintiffs filed their takings complaint in the Court of Federal Claims.  Whether an earlier-filed "suit or process" is "pending" for § 1500 purposes is determined at the time the complaint is filed with the Court of Federal Claims.  *See Keene*, 508 U.S. at

---

[3] As to the second issue – whether the claims asserted involve substantially the same operative facts – the parties disagree as to which claims the court should compare.  Specifically, they disagree on the question of whether the § 1500 analysis applies to claims over which the district court concludes that it lacks jurisdiction.  According to Brandt, because the district court lacked jurisdiction over his takings counterclaim, that claim is irrelevant for § 1500 purposes, and we should compare his district court quiet title counterclaim to the Court of Federal Claims takings complaint.  In contrast, the government maintains that, after *Tohono*, the question of "whether the district court had jurisdiction to provide the relief that Brandt sought in his counterclaim makes no difference."  Appellee's Br. 43.  Because we agree with Brandt that his earlier-filed district court counterclaims were not "pending" at the time he filed this action, we need not resolve this complex question.

BRANDT v. US

207 (noting that jurisdiction "depends upon the state of
things at the time of the action brought") (citation omit-
ted)).

The relevant question on appeal is whether a claim or
counterclaim is "pending" under § 1500 after judgment is
entered but before the time for filing an appeal has ex-
pired. We have not addressed this question previously,
and there is a split of authority on it in the Court of
Federal Claims. *Compare Vero Technical Support, Inc. v.
United States*, 94 Fed. Cl. 784, 795 (2010) ("The right to
an appeal, if still available and not renounced by plaintiff,
is part of an ongoing suit or process initiated by plaintiff
in the District Court, for which reason, plaintiff's claim is
still 'pending' for purposes of a section 1500 analysis.");
*and Jachetta v. United States*, 94 Fed. Cl. 277, 283 (2010)
(holding that "a suit is pending for purposes of section
1500 until its final adjudication on appeal or until the
time for appeal has run"); *with Young v. United States*, 60
Fed. Cl. 418, 425 (2004) ("The Court concludes that, once
a claim is dismissed or denied, it is no longer pending in
another court, for purposes of Section 1500, until a motion
for reconsideration or notice of appeal is filed."); *and
Bolduc v. United States*, 72 Fed. Cl. 187, 196 (2006) ("Mr.
Bolduc could have filed a claim here in the weeks between
July 8, 2003 and August 1, 2003 – the time between the
entry of judgment in the district court and the plaintiff's
filing of the notice of appeal to the First Circuit.").

Brandt argues that, at the time plaintiffs filed their
complaint in the Court of Federal Claims, they had no
suit or process against the United States pending in any
court because: (1) on March 2, 2009, the Wyoming district
court entered judgment in favor of the United States and
against Brandt on the quiet title issue; (2) the district
court dismissed Brandt's takings counterclaim on March
4, 2009 for lack of jurisdiction; (3) Brandt filed the instant
takings action on April 28, 2009; and (4) Brandt did not
appeal any aspect of the district court's decision until

April 29, 2009.[4]  According to Brandt, "because all litiga-
tion in the District Court had concluded at the time the
Brandts filed their Complaint in the instant case, the
Brandts had no 'suit or process against the United States'
pending in any court." Appellants' Br. 18.

In support of his position, Brandt relies primarily on
two cases: this court's prior decision in *Boston Five Cents
Savings Bank, FSB v. United States* ("*Boston Bank*"), 864
F.2d 137 (Fed. Cir. 1988), and the Court of Federal
Claims' decision in *Young*, which cites to *Boston Bank*.  In
*Boston Bank*, the plaintiff filed suit in district court
seeking a declaratory judgment.  Although the district
court granted summary judgment against the plaintiff,
the First Circuit vacated that judgment on appeal and
remanded the case for further proceedings.  *Id.* at 138.
On remand, the plaintiff moved to amend the complaint to
add a claim for money damages.  That motion was denied
"on the basis of inexcusable delay."  *Id.*  The plaintiff
subsequently filed suit in the Claims Court of seeking
monetary damages.  Although the Claims Court dis-
missed the plaintiff's complaint for lack of jurisdiction
under § 1500, this court reversed, finding that, "at the
time the Claims Court action was filed, no money claim
was pending in the district court within the purview of
section 1500." *Id.* at 139.  In reaching this conclusion, we
rejected the government's argument that, "until the
damage claim raised in the district court is resolved on
appeal, that claim is pending." *Id.*  In other words, even
though the plaintiff might have appealed the denial of its
motion to amend after judgment was entered in the

---

[4]   Importantly, Brandt did not appeal the district
court's conclusion that it lacked jurisdiction over his
takings claim; he only appealed "the district court's judg-
ment quieting title in the United States." *Brandt*, 2012
U.S. App. LEXIS 19058, at *2.

district court, the possibility of appeal did not make that claim "pending" for § 1500 purposes.

In *Young*, the Court of Federal Claims cited *Boston Bank* to support its conclusion that it "can exercise jurisdiction over claims that have been dismissed by another court and not yet appealed." *Young*, 60 Fed. Cl. at 424 ("Although the denial of the motion to add the money damage claim [in *Boston Bank*] could have been subsequently appealed once a judgment was entered in the district court (the trial had at that time not yet started), this prospective event did not make that claim 'pending' for purposes of Section 1500."). The court also cited its own earlier decisions for the proposition that, "if a claim filed here had already been dismissed or rejected by another court, it is the actual filing of a notice of appeal of that other court's decision that would make the claim 'pending,' and not the mere fact that the time to appeal it has yet to run." *Id.* (citations omitted). Given this authority, the court in *Young* concluded that, "between the time of dismissal or judgment and the filing of a notice of appeal, there was no legal action pending for Section 1500 purposes." *Id.* at 425.

The government argues that Brandt's reliance on *Boston Bank* is misplaced because there, the district court denied the plaintiff's motion to amend and thus the claim for money damages was never added to the plaintiff's district court complaint. Here, in contrast, Brandt's quiet title and takings counterclaims were added to the district court litigation when he asserted them in his answer. The government further argues that, unlike the situation here, the Claims Court complaint in *Boston Bank* was not filed during the time frame between the entry of judgment and the notice of appeal. While the government is correct that the precise factual scenario in *Boston Bank* is not identical to that presented here, it nevertheless supports the idea that a dismissed or denied claim is no longer pending for § 1500 purposes until a notice of appeal or

motion for reconsideration is filed. *See Young*, 60 Fed. Cl. at 425.

In the decision currently on appeal, the Court of Federal Claims relied on *Vero Technical* and *Jachetta* in concluding that a suit is pending for § 1500 purposes "until it is finally adjudicated on appeal or until the time to file an appeal has expired." *Brandt*, 102 Fed. Cl. at 79 (citing *Jachetta*, 94 Fed. Cl. at 283; *Vero Technical*, 94 Fed. Cl. at 795). Those cases – neither of which is binding on this court – are not particularly helpful here because, as discussed below, they relied primarily on the Supreme Court's interpretation of the word "pending" in *Carey v. Saffold*, 536 U.S. 214 (2002), without recognizing the specialized nature of the statute at issue in that case. In addition, *Vero Technical* and *Jachetta* are factually distinguishable because: (1) in *Jachetta*, the plaintiff had a Rule 60(a) motion to correct the judgment pending in the district court at the time he filed suit in the Court of Federal Claims[5]; and (2) both cases emphasized that the plaintiff chose to file first in the district court, whereas in this case, it was the government that initiated proceedings by filing its declaratory judgment action in district court. *See Jachetta*, 94 Fed. Cl. at 283 ("By commencing a suit in the district court, plaintiff engaged a process that carries with it a right to an appeal. So long as that right remains exercisable, the process of which it is a part is

---

[5] Indeed, the *Jachetta* court pointed to the plaintiff's Rule 60(a) motion as an alternative ground supporting its decision to dismiss the plaintiff's complaint under § 1500: "even if the facts of *Carey* are found to be sufficiently distinguishable to limit the applicability of the Court's analysis therein, we cannot accept plaintiff's construction of section 1500. . . . Plaintiff's Rule 60(a) motion was therefore a pending process within the meaning of section 1500 and jurisdiction is consequently lacking on that ground." *Jachetta*, 94 Fed. Cl. at 283-84.

properly regarded as pending.") (internal citation omit-
ted)); *Vero Technical*, 94 Fed. Cl. at 795 ("The right to an
appeal, if still available and not renounced by plaintiff, is
part of an ongoing suit or process initiated by plaintiff in
the District Court, for which reason, plaintiff's claim is
still 'pending' for purposes of a section 1500 analysis.").

   In *Carey*, which the government cites on appeal, the
Supreme Court interpreted the word "pending" in the
context of the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"). AEDPA "requires a state prisoner
seeking a federal habeas corpus remedy to file his federal
petition within one year after his state conviction has
become 'final.'" *Carey*, 536 U.S. at 216 (citing 28 U.S.C.
§ 2244(d)(1)(A)). The statute also provides that the one
year period "does not include the time during which an
application for state collateral review is 'pending' in the
state courts." *Id.* (citing 28 U.S.C. § 2244(d)(2)). At the
outset of its analysis, the Supreme Court noted that the
dictionary defines "pending" as "in continuance" or "not
yet decided." *Id.* at 219. Applying those definitions in the
§ 2244(d) context, the Court concluded that an application
for state post-conviction review is "pending" "until the
application has achieved final resolution through the
State's post-conviction procedures." *Id.* at 220. In reach-
ing this conclusion, the Court emphasized that a "federal
habeas petitioner must exhaust state remedies before he
can obtain federal habeas relief," which requires the
petitioner to "invoke one complete round of the State's
established appellate review process." *Id.* (citation omit-
ted). Given these circumstances, the Court concluded
that the word "pending," in the context of AEDPA, includ-
ed the time between a lower state court's decision and the
filing of a notice of appeal to a higher state court.

   In *Jachetta*, the Court of Federal Claims concluded
that the *Carey* "analysis fits the present case" because,
"[b]y commencing a suit in the district court, plaintiff
engaged a process that carries with it a right to an ap-

peal." *Jachetta*, 94 Fed. Cl. at 283.  Although the court generally acknowledged the factual differences in *Carey*, it nonetheless adopted the definition of "pending" set forth therein without any explanation as to why that definition would apply outside of the AEDPA context, and concluded that "a suit is pending for purposes of section 1500 until its final adjudication on appeal or until the time for appeal has run." *Jachetta*, 94 Fed. Cl. at 283.  Likewise, in *Vero Technical*, the court agreed with the analysis set forth in *Jachetta* and concluded that a case is still "pending" in the district court if the right to appeal is available and "not renounced by plaintiff." *Vero Technical*, 94 Fed. Cl. at 795.

We conclude that the government and the Court of Federal Claims' reliance on *Carey* in the § 1500 context is misplaced.  While AEDPA requires exhaustion of state remedies prior to filing for federal habeas relief, there is no similar requirement in § 1500.  Indeed, as Brandt points out, application of *Carey*'s exhaustion requirement in the § 1500 context would mean that a litigant must seek and litigate an appeal prior to filing suit in the Court of Federal Claims.  There is no such requirement in the statute and we decline to impose one.  Because AEDPA is a specialized statute dealing with a narrow area of the law, we conclude that it is inapplicable here.[6]

---

[6]   The government also cites *Eikenberry v. Callahan*, 653 F.2d 632 (D.C. Cir. 1981) and *Winkler v. Andrus*, 614 F.2d 707 (10th Cir. 1980) – both of which are readily distinguishable.  For example, in *Eikenberry*, the appellee argued that a case could only be "pending" when it was being heard in district court. 653 F.2d at 635.  The court rejected this argument, finding that the "ordinary meaning of 'pending' includes cases pending on appeal" and that "certainly a statute which specifies that it shall apply to any pending civil action must apply to a case pending on direct appeal from the District Court." *Id.*  There,

The text of § 1500 refers to a claim "which the plaintiff . . . has pending in any other court." 28 U.S.C. § 1500. Black's Law Dictionary defines "pending" as "[r]emaining undecided; awaiting decision <a pending case>." *Black's Law Dictionary* 1248 (9th ed. 2009). Although the parties agree that a claim is pending when a notice of appeal is filed and docketed, they disagree as to whether a dismissed claim is a "pending" claim under the statute. The government argues that it is, and that a suit is "pending" in another court for purposes of § 1500 until it is no longer appealable. We disagree.

From a statutory interpretation standpoint, the problem with reading "pending" in § 1500 to include the time after judgment is entered but before an appeal is filed is that it reads the words "in any other court" out of the statute. If, as the government submits, a case is pending during that interim period, in which court is it pending? The government fails to acknowledge that: (1) when a district court enters judgment and that judgment becomes

---

however, there was no question that the appeal was noticed and active when described as "pending." In *Winkler*, the Tenth Circuit indicated that: (1) "one who deals with property while it is in litigation does so at his own peril"; and (2) "[w]e have considered whether the presence of administrative proceedings is notice that a lawsuit is pending, and the majority rule is that a lawsuit is determined pending throughout the time in which appellate review of the original judgment may be taken." 614 F.2d at 714. As Brandt points out, the cited language is largely dicta and the narrow issue in *Winkler* was whether constructive notice of administrative proceedings would destroy bona fide purchaser status under the Mineral Leasing Act. Importantly, neither case addressed the central issue here: whether a dismissed claim is a "pending" claim within the meaning of § 1500 *before* a notice of appeal is filed.

BRANDT v. US                                          17

final, the case is closed on the court's docket; and (2) if a party files an appeal, a new case is opened on the Court of Appeal's docket.  And, as the court in *Young* recognized, it is the actual filing of the notice of appeal that makes the claim "pending" – "not the mere fact that the time to appeal it has yet to run."  60 Fed. Cl. at 424.  In other words, despite the government's assertions to the contrary, there is a period of time when a case is not, as the statute requires, "pending in any other court."[7]

The government further argues that "a strict construction of the term 'pending' is required because Section 1500 is a limitation on the congressional waiver of the United States' sovereign immunity."  Appellee's Br. 23. Because the plain language of the statute reveals that the case must actually be pending in another court for § 1500 to apply, resort to sovereign immunity principles is neither necessary nor proper.  *See Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 590 (2008) ("There is no need for

----

[7]  The government also argues that, if we find that Brandt's counterclaims were not "pending" at the time he filed suit in the Court of Federal Claims, the validity of the order-of-filing rule articulated in *Tecon Eng'rs, Inc. v. United States*, 343 F.2d 943 (Ct. Cl. 1965) would be at issue.  In *Tecon*, the court held that a later-filed action in another court does not divest the Court of Federal Claims of jurisdiction.  *Id.* at 949.  Because Brandt filed his takings complaint in the Court of Federal Claims before he filed his appeal to the Tenth Circuit, the order-of-filing rule set forth in *Tecon*, which was not at issue in *Tohono*, and which remains the law of this circuit, is satisfied.  *See Hardwick Bros. Co. II v. United States*, 72 F.3d 883, 886 (Fed. Cir. 1995) (explaining that *Tecon*'s order-of-filing rule "remains good law and binding on this court"); *see also Tohono*, 131 S. Ct. at 1729-30 ("The *Tecon* holding is not presented in this case because the CFC action here was filed after the District Court suit.").

18                                        BRANDT v. US

us to resort to the sovereign immunity canon because
there is no ambiguity left for us to construe."). According-
ly, the government's reliance on the doctrine of sovereign
immunity is misplaced.

Finally, the government submits that interpreting the
term "pending" "to include the period before all appeal
rights have expired is consistent with Section 1500's
purpose of protecting the United States against redun-
dant litigation." Appellee's Br. 22-23. According to the
government, Brandt should have affirmatively waived his
right to appeal the district court's decision to signify that
the case was officially terminated. The government cites
no authority requiring a litigant to forgo its appellate
rights in these circumstances, and we have found none.
Although the government is correct that § 1500 "was
enacted to prevent a claimant from seeking recovery in
district court and the Court of Claims for the same con-
duct pleaded under different legal theories" and to pre-
vent the government from having to defend against
duplicative lawsuits, *Trusted Integration*, 659 F.3d at
1163, here, it was the government – not Brandt – that
affirmatively chose to file suit in district court. And, as
Brandt points out, once the government filed suit, he was
compelled to file counterclaims relating to the abandoned
railroad easement or risk waiving his right to do so. *See*
Fed. R. Civ. P. 13(a)(1)(A) ("A pleading must state as a
counterclaim any claim that – at the time of its service –
the pleader has against an opposing party if the claim:
arises out of the transaction or occurrence that is the
subject matter of the opposing party's claim"). [8]

---

[8] The government's argument that Brandt should
have affirmatively waived a right to appeal from the quiet
title determination is particularly strange given the
Tenth Circuit's concession that other courts to have
considered the government's retention of rights in these

Given the statutory text, we conclude that, once a claim is dismissed or denied, it is no longer "pending" for § 1500 purposes until a motion for reconsideration or notice of appeal is filed.  Here, the Wyoming district court entered judgment in favor of the government on March 2, 2009, and dismissed Brandt's takings counterclaim two days later.  In its March 4, 2009 order, the court stated that, "[i]n light of the dismissal of the final claim before this Court, this case is now fully adjudicated before this Court and no matters remain outstanding."  Order Granting Plaintiff's Motion to Dismiss the Third Counterclaim, *United States v. Wyoming and Colorado R.R. Co.*, No. 2:06-cv-184 (D. Wyo. Mar. 4, 2009), ECF 202, at 5.  It is undisputed that Brandt filed the takings complaint in the Court of Federal Claims on April 28, 2009, and his Notice of Appeal to the Tenth Circuit on April 29, 2009.  Accordingly, at the time Brandt filed the instant case, he had no "suit or process against the United States" pending in any other court.  Because Brandt did not have claims "pending" for purposes of § 1500 when he filed his takings complaint, we find that the Court of Federal Claims' dismissal for lack of jurisdiction was inappropriate.  In light of this conclusion, we need not and do not reach Brandt's alternative argument that the district court counterclaims and his takings complaint do not share the same operative facts.[9]

---

abandoned railroad rights-of-way, including this one, would have reversed the district court's judgment.

   [9] We also do not reach a related and complicated question which the parties debate at length in their briefs—whether "a § 1500 analysis is inapplicable to a claim over which the district court concludes it lacks jurisdiction." *E. Shawnee Tribe of Okla. v. United States*, 582 F.3d 1306, 1312 n. 4 (Fed. Cir. 2009) (vacated on other grounds by *Tohono*, 131 S.Ct. 1723) (citing *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554

20                                              BRANDT v. US

CONCLUSION

For the foregoing reasons, the final judgment of the Court of Federal Claims is reversed and remanded for further proceedings consistent with this opinion.

**REVERSED**

---

(Fed. Cir. 1994) (en banc) (finding that where district court determined it lacked jurisdiction over a claim, that claim was "without legal significance" in a § 1500 analysis); *but see* Frantz, 98 F. Supp. at 580 (finding applicability of § 1500 "is not conditioned upon the question of whether the district court had jurisdiction of the claim asserted by the plaintiff herein.").

# United States Court of Appeals for the Federal Circuit

---

## MARVIN M. BRANDT AND MARVIN M. BRANDT REVOCABLE TRUST,
*Plaintiffs-Appellants,*

v.

## UNITED STATES,
*Defendant-Appellee.*

---

2012-5050

---

Appeal from the United States Court of Federal Claims in No. 09-CV-265, Chief Judge Emily C. Hewitt.

---

PROST, *Circuit Judge*, concurring.

I concur in the judgment of the court, but do so only because we are bound to follow the order-of-filing rule established by *Tecon Engineers, Inc., v. United States*, 343 F.3d 943 (Ct. Cl. 1965). The plaintiffs filed their case in the Court of Federal Claims one day prior to filing an appeal with the Tenth Circuit of a related district court judgment. The plain language of § 1500 divests the Court of Federal Claims of jurisdiction over a case when another suit—like the plaintiffs' appeal—is pending "in any other court."

However, as the majority notes, the order-of-filing rule created in *Tecon* restricts the applicability of § 1500 to the time a case is filed in the Court of Federal Claims.

2                                                    BRANDT v. US

Majority Op. at 17 n.7. Because the plaintiffs' appeal
became pending at the Tenth Circuit after their case was
filed with the Court of Federal Claims, the order-of-filing
rule requires us to hold that the Court of Federal Claims
was never divested of jurisdiction over the plaintiffs' case.
The result also would have been the same if the plaintiffs
had filed a second district court action instead. *See
Tohono O'Odham Nation v. United States*, 559 F.3d 1284,
1291 (Fed. Cir. 2009) (explaining that, because of the
order-of-filing rule, § 1500 "merely requires that the
plaintiff file its action in the Court of Federal Claims
*before* it files its district court complaint"), *rev'd on other
grounds and remanded*, 131 S. Ct. 1723 (2011).

The order-of-filing rule thus creates a virtual amnesty
period under § 1500 for cases in the Court of Federal
Claims filed before a related appeal or district court
action. But the existence of that amnesty period is con-
trary to the plain purpose and language of § 1500. The
Supreme Court has held that Congress's "clear" purpose
for § 1500 was "to save the Government from burdens of
redundant litigation." *United States v. Tohono O'Odham
Nation*, 131 S. Ct. 1723, 1730. Because of the order-of-
filing rule, complainants can easily subvert that purpose
and avoid the jurisdictional restrictions in § 1500 by
simply filing first in the Court of Federal Claims and then
in another court. By merely delaying filing of a second
related suit by only a day—as the plaintiffs did here—
complainants can force the government to defend itself in
the Court of Federal Claims and another court in redun-
dant co-pending suits. *See also Kaw Nation of Okla. v.
United States*, 103 Fed. Cl. 613, 615 (Fed. Cl. 2012) (de-
laying filing of second related suit by mere hours avoided
§ 1500). That is clearly not how Congress envisioned
§ 1500 would restrict access to the Court of Federal
Claims.

We have even overruled *Tecon* on those grounds while
sitting en banc. *UNR Indus., Inc. v. United States*, 962

BRANDT v. US                                                    3

F.2d 1013, 1022-23 (Fed. Cir. 1992) (en banc), *aff'd sub. nom.*, *Keene*, 508 U.S. at 216; [1] *but see Hardwick Bros. Co. II v. United States,* 72 F.3d 883, 886 (Fed. Cir. 1995) (holding that *Tecon* survived *UNR* because of *Keene*). Although the Supreme Court found the relevant portion of that decision to be beyond the merits of the appeal, the logical force of our reasoning to dispense with the order-of-filing rule remains.

> Section 1500 states that the "[Court of Federal Claims] shall not have jurisdiction of any claim . . . in respect to which the plaintiff . . . has pending in any other court *any suit or process.*" A case filed subsequent to a [Court of Federal Claims] complaint is clearly a "pending . . . suit or process." Thus, by the command that the [Court of Federal Claims] "shall not have jurisdiction," upon the occurrence of the triggering event, the filing of suit in another court, the [Court of Federal Claims] is automatically divested of jurisdiction. Congress wanted not to dictate the order in which a claimant files suits in the [Court of Federal Claims] and another court on the same claim, but to discourage him from doing so altogether. Otherwise the purpose of saving the government from defending the same claim in two courts at the same time would be defeated.

*UNR*, 962 F.2d at 1022-23.

---

[1]    The Supreme Court has never addressed our holding in *Tecon*. *See Tohono*, 131 S. Ct. at 1729 ("The *Tecon* holding is not presented in this case . . . ."); *Keene Corp. v. United States*, 508 U.S. 200, 222 n.4 (1993) ("We do not decide whether [§ 1500] also continues to bar a plaintiff from prosecuting a claim . . . .").

4                                                    BRANDT v. US

In light of recent Supreme Court guidance on § 1500, we should revisit *Tecon* once again and dispose of the order-of-filing rule. The Supreme Court admonished us in *Tohono* for narrowing the scope of § 1500 and feeling "bound by Circuit precedent that left [§ 1500] without meaningful force." *Tohono*, 131 S. Ct. at 1729-30. The Court expressly stated that we were "wrong to allow [our] precedent to suppress [§ 1500]'s aims" because we "should not render statutes nugatory through construction." *Id.* Continuing to apply the order-of-filing rule does just that.

It cannot be reasonably questioned that cabining the jurisdictionally restrictive reach of § 1500 to only the time of filing a complaint with the Court of Federal Claims and never thereafter defeats Congress's unequivocally clear purpose for the statute. The plain language of § 1500 removes jurisdiction from the Court of Federal Claims over "any claim" that a plaintiff also has "pending in any other court." 28 U.S.C. § 1500. There is no language in the statute that restricts its application to the time a case is filed in the Court of Federal Claims; the statute's applicability persists throughout a suit. Any doubts to the contrary should fall to Congress's clear intent—especially because § 1500 effects a restriction on Congress's waiver of sovereign immunity. *See, e.g., Smith v. United States*, 507 U.S. 197, 201-03 (1993); *Ardestani v. INS*, 502 U.S. 129, 137 (1991).

The Supreme Court warned us against relying on our precedent to transform § 1500 into a hollow jurisdictional restriction "without meaningful force." *See Tohono*, 131 S. Ct. at 1729-30. Our continued acquiescence to the order-of-filing rule established in *Tecon* does just that. As argued by the government, the propriety of the order-of-filing rule is directly raised in this appeal because the parties agree that the plaintiffs' Tenth Circuit appeal was pending under § 1500 at the time the Court of Federal Claims dismissed this case under the statute for lack of jurisdiction. We should take this opportunity to overrule

BRANDT v. US                                              5

*Tecon* and finally dispense with the ill-conceived order-of-filing rule.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## *Questions and Answers*

### Petitions for Rehearing (Fed. Cir. R. 40)
### and
### Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)

---

*Q. When is a petition for rehearing appropriate?*

A. Petitions for rehearing are rarely considered meritorious. Consequently, it is easiest to first answer when a petition for rehearing is not appropriate. A petition for rehearing should not be used to reargue issues already briefed and orally argued. If a party failed to persuade the court on an issue in the first instance, they do not get a second chance. This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36, as a disposition of this nature is used only when the appellant has utterly failed to raise any issues in the appeal that require an opinion to be written in support of the court's judgment of affirmance.

Thus, as a usual prerequisite, the court must have filed an opinion in support of its judgment for a petition for rehearing to be appropriate. Counsel seeking rehearing must be able to identify in the court's opinion a material error of fact or law, the correction of which would require a different judgment on appeal.

*Q. When is a petition for hearing or rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merit panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a suggestion for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow identifiable decisions of the U.S. Supreme Court or

Federal Circuit precedential opinions or that the merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

*Q. How frequently are petitions for rehearing granted by merits panels or petitions for rehearing en banc accepted by the court?*

A. The data regarding petitions for rehearing since 1982 shows that merits panels granted some relief in only three percent of the more than 1900 petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions were accepted less frequently, in only 16 of more than 1100 requests. Historically, the court itself initiated en banc review in more than half (21 of 37) of the very few appeals decided en banc since 1982. This sua sponte, en banc review is a by-product of the court's practice of circulating every precedential panel decision to all the judges of the Federal Circuit before it is published. No count is kept of sua sponte, en banc polls that fail to carry enough judges, but one of the reasons that virtually all of the more than 1100 petitions made by the parties since 1982 have been declined is that the court itself has already implicitly approved the precedential opinions before they are filed by the merits panel.

*Q. Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U.S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals. As a matter of interest, very few petitions for certiorari from Federal Circuit decisions are granted. Since 1982, the U.S. Supreme Court has granted certiorari in only 31 appeals heard in the Federal Circuit. Almost 1000 petitions for certiorari have been filed in that period.

July 21, 2008

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## INFORMATION SHEET

## FILING A PETITION FOR A WRIT OF CERTIORARI

There is no automatic right of appeal to the Supreme Court of the United States from judgments of the Federal Circuit. You must file a petition for a writ of certiorari which the Supreme Court will grant only when there are compelling reasons. (See Rule 10 of the Rules of the Supreme Court of the United States, hereinafter called Rules.)

**Time.** The petition must be filed in the Supreme Court of the United States within 90 days of the entry of judgment in this Court or within 90 days of the denial of a timely petition for rehearing. The judgment is entered on the day the Federal Circuit issues a final decision in your case. [The time does not run from the issuance of the mandate, which has no effect on the right to petition.] (See Rule 13 of the Rules.)

**Fees.** Either the $300 docketing fee or a motion for leave to proceed in forma pauperis with an affidavit in support thereof must accompany the petition. (See Rules 38 and 39.)

**Authorized Filer.** The petition must be filed by a member of the bar of the Supreme Court of the United States or by the petitioner representing himself or herself.

**Format of a Petition.** The Rules are very specific about the order of the required information and should be consulted before you start drafting your petition. (See Rule 14.) Rules 33 and 34 should be consulted regarding type size and font, paper size, paper weight, margins, page limits, cover, etc.

**Number of Copies.** Forty copies of a petition must be filed unless the petitioner is proceeding in forma pauperis, in which case an original and ten copies of the petition for writ of certiorari and of the motion for leave to proceed in forma pauperis. (See Rule 12.)

**Where to File**. You must file your documents at the Supreme Court.

<div align="center">

**Clerk**
**Supreme Court of the United States**
**1 First Street, NE**
**Washington, DC 20543**
**(202) 479-3000**

</div>

No documents are filed at the Federal Circuit and the Federal Circuit provides no information to the Supreme Court unless the Supreme Court asks for the information.

**Access to the Rules.** The current rules can be found in Title 28 of the United States Code Annotated and other legal publications available in many public libraries.

Revised December 16, 1999